1  EDWARD P. DAVIS, JR. (STATE BAR NO. 56847)
       edavis@orrick.com
2  SUSAN D. RESLEY (STATE BAR NO. 161808)
       sresley@orrick.com
3  AMANDA PACKEL (STATE BAR NO. 218282)
       apackel@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, CA 94025
   Telephone:    650-614-7400
6  Facsimile:    650-614-7401

7  Attorneys for Defendant
   Kenneth E. Lonchar
8

9                 UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13  SECURITIES AND EXCHANGE          Case No. C 07-3444 JF
    COMMISSION,
14                                   **NOTICE AND MOTION OF**
                   Plaintiff,        **DEFENDANT KENNETH E.**
15                                   **LONCHAR TO DISMISS**
         v.                          **COMPLAINT; MEMORANDUM OF**
16                                   **POINTS AND AUTHORITIES IN**
    MARK LESLIE, et al,              **SUPPORT THEREOF**
17
                   Defendants.       Date:    January 18, 2008
18                                   Time:    9:00 a.m.
                                     Judge:   Hon. Jeremy Fogel
19                                            Courtroom No. 3

20

21

22

23

24

25

26

27

28

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

1

# TABLE OF CONTENTS

2

Page

3   I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 2

4   II.   THE COMPLAINT'S ALLEGATIONS ................................................................ 4

5         A.   Veritas ........................................................................................................ 4

          B.   The September 2000 AOL Transactions ................................................... 5

6         C.   Mr. Lonchar's Communications with Veritas' Auditors Regarding the AOL
               Transactions ............................................................................................... 6

7         D.   The SEC's Allegations Concerning the Certification of Veritas' Financial
8              Statements .................................................................................................. 7

          E.   Alleged Revenue "Smoothing" Practices by Mr. Lonchar and Others ................. 7

9         F.   Mr. Lonchar's Communications with Veritas' Auditors Regarding the
               Alleged Non-GAAP Practices .................................................................... 9
10

    III.  EACH OF THE SEC'S ALLEGATIONS AGAINST MR. LONCHAR FAILS TO
11        MEET THE PLEADING STANDARDS OF FED. R. CIV. P. 9(B) ................................. 9

12        A.   Each of the SEC's Claims is Subject to Rule 9(b) ..................................... 9

          B.   Heightened Pleading Standards Are Even More Applicable in This Case ........... 11
13

    IV.   THE COMMISSION FAILS TO ALLEGE SECTION 17(A) AND SECTION
14        10(B) / RULE 10B-5 CLAIMS AGAINST MR. LONCHAR .............................................. 12

15        A.   The SEC Has Not Adequately Alleged The Falsity Of Statements
               Concerning The AOL Transactions ......................................................... 12

16             1.   The SEC Has Not Sufficiently Described What Statements Were
                    False .............................................................................................. 12
17
               2.   The SEC has Not Pled Facts to Support an Inference that the
18                  Statements Were False When Made ............................................. 13

19        B.   The SEC's Bare Allegations that Mr. Lonchar Manipulated Veritas'
               Financial Statements Fail ......................................................................... 16

20             1.   The SEC's General Allegations of Improper "Practices" are
                    Insufficient ................................................................................... 16
21
               2.   The SEC Fails to Allege Why These Statements were False ................. 17

22   V.    THE COMMISSION'S SECTION 13 CLAIMS FOR RECORD KEEPING AND
          INTERNAL CONTROLS VIOLATIONS AND LYING TO AUDITORS ARE
23        NOT PLEADED WITH ADEQUATE PARTICULARITY ..................................... 19

24        A.   The Internal Controls and Books and Records Claims are Inadequately
               Pled .......................................................................................................... 19

25        B.   The Rule 13b2-2 Claim Is Not Plead With the Requisite Particularity ............... 20

               1.   Vague Allegations of Communications with Auditors Are
26                  Insufficient ................................................................................... 20

27             2.   The Management Representation Letter Allegations are Insufficient ...... 21

          C.   The Complaint's Aiding and Abetting Allegations Are Inadequate ............... 22
28             1.   Rule 9(b) Applies to Aiding and Abetting Claims ........................... 22

**TABLE OF CONTENTS**
**(continued)**

Page

    2.    The SEC Fails to Sufficiently Allege that Mr. Lonchar Aided and Abetted Violations of the Securities Laws................................................. 23

VI.    MOST OF THE SEC'S REQUESTS FOR RELIEF IN THE COMPLAINT ARE TIME-BARRED ........................................................................................ 24

VII.    CONCLUSION ......................................................................................... 25

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aaron* v. *SEC*,
446 U.S. 680 (1980) ............................................................................................ 12

*Bell Atlantic Corp.* v. *Twombly*,
127 S. Ct. 1955 (2007) ....................................................................................... 10

*Clegg* v. *Cult Awareness Network*,
18 F.3d 752 (9th Cir. 1994) ............................................................................... 14

*DSAM Global Value Fund* v. *Altris Software. Inc.*,
288 F.3d 385 (9th Cir. 2002) ............................................................................. 16

*Ernst & Ernst* v. *Hochfelder*,
425 U.S. 185 (1976) ........................................................................................... 11

*Gompper* v. *VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ............................................................................. 15

*Howard* v. *SEC*,
376 F.3d 1136 (D.C. Cir. 2004) ......................................................................... 23

*In re AOL Time Warner, Inc, Sec. & ERISA Litig.*,
No. 1500, 02 Civ. 5575 SWK, 2006 U.S. Dist. 17588 (S.D.N.Y. Apr. 6,2006) ...... 15

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y 2004) ................................................................ 15

*In re Daou Systems, Inc.*,
411 F.3d 1006 (9th Cir. 2005) ...................................................................... 19, 23

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ....................................................................... *passim*

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ............................................................ 17, 21

*In re Meris Labs., Inc.*,
57 SEC D 1994 WL. 523841 (SEC Sept. 26, 1994 ) ..................................... 17-18

*In re Metricom Sec. Litig.*,
No. C01-4085, PJH (N.D. cal. Apr. 29, 2004) ............................................. 13, 14

*In re Syntex Corp.  Sec. Litig.*,
855 F. Supp. 1086 (N.D. Cal. 1994) .................................................................. 18

*In re Vantive Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ........................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

*In re VeriFone Sec. Litig.,*
    11 F.3d 865 (9th Cir. 1993)..................................................................... 9, 14

*In re Watchguard Sec. Litig., No. C05- 678LJR,*
    2006 U.S. Dist. LEXIS 27217 (W.D. Wash. Apr. 21, 2006) ................................. 16

*Johnson v. SEC,*
    87 F.3d 484 (D.C. Cir. 1996) ................................................................ 25

*May v. Borick, No. CV 95-8407 LGB (EX),*
    1997 WL. 314166 (C.D. Cal. Mar. 3, 1997) ................................................. 22

*Morgan v. Prudential Group, Inc.,*
    81 F.R.D. 418 (S.D.N.Y. 1978) .............................................................. 17

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993)..................................................................... 10

*Ponce v. SEC,*
    345 F.3d 722 (9th Cir. 2003)................................................................... 23

*SEC v. Autocorp Equities, Inc.,*
    292 F. Supp. 2d 1310 (D. Utah 2003) ................................................ 20, 21,22

*SEC v. Baxter,*
    No. C-05-03843 RMW 2007 WL. 2013958 (N.D. Cal. July 11, 2007)..................... 10, 20, 23

*SEC v. Cedric Kushner Promotions, Inc.,*
    417 F. Supp. 2d 326 (S.D.N.Y. 2006) ........................................................ 23

*SEC v. DiBella,*
    409 F. Supp. 2d 122 (D. Conn. 2006) ........................................................ 25

*SEC v. Durgarian,*
    477 F. Supp. 2d 342 (D. Mass. 2007) ........................................................ 11

*SEC v. Fehn,*
    97 F.3d 1276 (9th Cir. 1996).................................................................. 23

*SEC v. GSC Enterprises, Inc.,*
    469 F. Supp. 907 (N.D. Ill. 1979) ............................................................ 12

*SEC v. ICN Pharms.,*
    84 F. Supp. 2d 1097 (C.D. Cal. 2000)......................................................... 11

*SEC v. Jones,*
    476 F. Supp. 2d 374 (S.D.N.Y. 2007).......................................................... 25

*SEC v. Kahn,*
    No. 99C 6343, 2002 WL. 1163723 (N.D. Ill. May 31, 2002)................................. 20

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

**TABLE OF AUTHORITIES**
(continued)

Page

*SEC* v. *Lucent Techs., Inc.*,
    363 F. Supp. 2d 708 (D.N.J. 2005) ............................................................. 19, 23

*SEC* v. *Lucent Techs., Inc.*,
    2005 WL. 1206841 (D.N.J. May 20, 2005) ................................................. 11

*SEC* v. *Parnes*,
    No. 01 CIV 0763 LLS THK, 2001 WL. 1658275 (S.D.N.Y. Dec. 26, 2001) ........... 11, 12, 20

*SEC v. Roanoke Tech. Corp.*,
No. 6:05-cv-1880-Orl-31-KRS, 2006 WL. 2470329 (M. D. Fla. Aug. 24, 2006).................11

*SEC* v. *Rana Research, Inc.*,
    8 F.3d 1358 (9th Cir. 1993).......................................................................... 12

*SEC* v. *Republic Nat'l Life Ins. Co.*,
    378 F. Supp. 430 (S.D.N.Y. 1974)................................................................ 11

*SEC* v. *Scrushy*,
    No. CV-03-J-615S, 2005 WL. 3279894 (N.D. Ala. Nov. 29, 2005) .................... 25

*SEC* v. *Tambone*,
    417 F. Supp. 2d 127 (D. Mass. 2006) ........................................................ 11

*SEC v. Todd*,
    No. 03CV2230BEN (WMC), 2006 WL. 1564892 (S.D. Cal. May 30, 2006)........................ 22

*SEC* v. *Yuen*,
    221 F.R.D. 631 (C.D. Cal. 2004) .............................................................. 9, 14

*Simpson* v. *AOL Time Warner Inc.*,
    452 F.3d 1040 (9th Cir. 2006)...................................................................... 15

*Teachers' Ret. Sys.* v. *Hunter*,
    477 F.3d 162 (4th Cir. 2007)....................................................................... 15

*Tellabs* v. *Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) .............................................................................. 16

*Vess* v. *Ciba-Geigy Corp., USA*,
    317 F.3d 1097 (9th Cir. 1986)..................................................................... 10

*Wenger* v. *Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) ......................................................... 13, 17

*Yourish* v. *California Amplifier*,
    191 F.3d 983 (9th Cir. 1999)...................................................................... 18, 21

**FEDERAL STATUTES AND RULES**

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

28 U.S.C. § 2462 ............................................................................................................. 4, 24

4

Section 10(b) of Securities Exchange Act of 1934 ........................................................ 1, 13, 14

5

Section 13 of Securities Exchange Act of 1934 ............................................................ 20, 22

6

Section 17(a) of Securities Exchange Act of 1934 ........................................................ 1, 13, 14

7

Section 13(b)(5) of Securities Exchange Act of 1934 ................................................... 1, 21

8

SEC Rule 10b-5 ............................................................................................................. 1, 12

9

SEC Rule 13b2-2 ........................................................................................................... 1, 20

10

Fed. R. Civ. P. 9(b) ......................................................................................................... *passim*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

**NOTICE OF MOTION AND MOTION OF DEFENDANT KENNETH E. LONCHAR TO DISMISS COMPLAINT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 18, 2008 at 9:00 a.m., in the Courtroom of the Honorable Jeremy Fogel, Courtroom 3, Fifth Floor, United States District Court, 280 South First Street, San Jose, California 95113, defendant Kenneth E. Lonchar will, and hereby does, move the Court, pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for an order dismissing the claims against him on the grounds that the allegations, and each claim upon which they are based, fail to state a claim upon which relief can be granted. Additionally, certain remedies sought against Mr. Lonchar, including injunctive relief, civil monetary penalties, and the officer and director bar, are time barred, and the SEC's requests for such remedies must be dismissed.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support of the Motion; the Request for Judicial Notice; the Declaration of Susan D. Resley and attached Exhibits; other pleadings and papers comprising the record in this Action; and such other matters and arguments as may come before the Court, including reply briefing and oral argument.

**ISSUES TO BE DECIDED (Local Rule 7-4(a)(3))**

1. Whether the First and Second Claims for Relief fail to state a claim upon which relief can be granted against defendant Kenneth Lonchar under Section 17(a) of the Securities Act of 1933 ("1933 Act") and Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and SEC Rule 10b-5 thereunder when the Complaint fails to allege the falsity of statements made about Veritas Software Corporation ("Veritas" or "Company") with the level of particularity demanded by Rule 9(b) of the Federal Rules of Civil Procedure.

2. Whether the Third and Fourth Claims for Relief fail to state a claim for which relief can be granted under Section 13(b)(5) of the 1934 Act and SEC Rule 13b2-1 when the Complaint fails to allege with particularity (1) what internal controls were allegedly inadequate or circumvented by Mr. Lonchar or (2) what books and records were knowingly falsified by Mr. Lonchar.

3. Whether the Fifth Claim for Relief fails to state a claim for which relief can be granted under SEC Rule 13b2-2 when the Complaint fails to allege that Mr. Lonchar knowingly made materially false statements to Veritas' outside auditors.

4. Whether the Fourth and Sixth Claims for Relief state a claim for which relief can be granted when the Complaint fails to allege with the requisite particularity that Mr. Lonchar

knowingly and substantially assisted Veritas' violations of the books and records provisions of the securities laws, namely Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the 1934 Act and SEC Rules 12b-20, 13a-1, 13a-11, 13a-13 and 13b2-1.

5.  Whether the SEC's claims for civil penalties, disgorgement and an officer and director bar are time-barred.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF KENNETH E. LONCHAR'S MOTION TO DISMISS THE COMPLAINT**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Despite its extensive five year pre-litigation investigation, Plaintiff Securities and Exchange Commission ("SEC" or the "Commission") does not state any legally adequate claims for relief against Kenneth E. Lonchar, Veritas' former CFO.  The SEC alleges that Mr. Lonchar participated in a fraudulent scheme to artificially inflate or "gross up" Veritas' revenues in connection with Veritas' sale of software to AOL, Inc. ("AOL").  At the same time that the SEC asserts Mr. Lonchar was purposefully artificially inflating revenue and earnings with the AOL transactions, it claims that he participated in practices that had the effect of lowering or "smoothing" revenue.  Not only do these competing theories lack common sense, the Commission fails to support its contradictory allegations with the particularity mandated by Rule 9(b).

The SEC alleges that in September 2000, Veritas sold $50 million worth of software to AOL and purchased $20 million in advertising from AOL.  The Commission then concludes that Mr. Lonchar knew that the transactions were "contingent" or "roundtrip."  This theory fails for several reasons.  First and foremost, the SEC never alleges facts demonstrating that the transactions were fraudulent "round trip" deals.  To plead and prove the existence of a true "round trip" transaction, the SEC must show that the software and advertising transactions provided *no* economic substance to AOL or Veritas.  The SEC has not and cannot make such an allegation. The SEC's assertions of "11th hour" negotiations and "simultaneous wire transfers" are hardly sinister and do not substitute for facts showing that the transactions were, in fact, impermissible "round trips."  And no facts tie Mr. Lonchar to any negotiations or conversations suggesting that

- 2 -

1    he was aware that the transactions were anything but legitimate. Indeed, one of the few facts that

2    the SEC does allege as to Mr. Lonchar—that he insisted the transactions be documented in two

3    different agreements—supports the inference that AOL and Veritas entered into two different

4    agreements with economic value.

5        According to the SEC, Mr. Lonchar knew the transactions were fraudulent when he signed

6    management representation letters and SEC filings and participated in analyst calls and press

7    releases. Yet the SEC never even identifies which press release, analyst call or statement by Mr.

8    Lonchar was false. Nor does the Commission allege when the press releases and analyst calls

9    took place. Additionally, the SEC claims that Mr. Lonchar's August 2002 certifications of

10   Veritas' financial statements were false because he never disclosed that the September 2000

11   negotiations changed or that the transactions were part of a purported single "arrangement." Yet

12   no facts show that, two years after the AOL transactions, Mr. Lonchar learned any new facts

13   suggesting that the original accounting for those transactions was improper.

14       The Commission also alleges that at the time of the AOL transactions, Mr. Lonchar was

15   simultaneously engaging in certain practices to "smooth" revenue and earnings either upwards or

16   downwards. While the SEC generally alleges that between 2000 and 2002 Veritas improperly

17   accrued liability balances and prematurely cut off service revenue, it fails to allege particularized

18   facts as to what conduct occurred, when the conduct occurred, which financial statements were

19   false, by how much, and why they were false. The SEC also claims that deferred revenue was

20   manipulated in the second quarter of 2002, but fails to adequately allege Mr. Lonchar's role in the

21   alleged practice.

22       Rather than supplying particularized, contemporaneous facts as required by Rule 9(b), the

23   SEC chooses to litter the Complaint with pejoratives such as "contingent," "round trip,"

24   "cushion" and "cookie jar reserves." In classic allegations of fraud by hindsight, it concludes that

25   Mr. Lonchar and others committed fraud because Veritas restated its financial statements in 2003

26   and 2004. Accordingly, the SEC's Complaint should be dismissed because:

27

28

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

- The Complaint fails to allege *facts* to support a showing that any statements made by Mr. Lonchar concerning the AOL transactions were false when made or that he knew that any such statements were false.

- The SEC does not adequately plead facts concerning the falsity of the 2000 to 2002 financial statements, including when efforts to "smooth" or manipulate revenues and earnings occurred or what specific conduct took place.

- The Complaint's allegations that Mr. Lonchar knowingly falsified books and records and that he knowingly circumvented or failed to implement a system of internal controls do not meet the particularity requirements of Rule 9(b).

- The SEC's claims that Mr. Lonchar deceived Veritas' independent auditors lack the factual specificity demanded by Rule 9(b).

- The aiding and abetting claims against Mr. Lonchar fail because the SEC alleges no facts to establish Mr. Lonchar's actual knowledge that he committed a violation or that he knowingly provided substantial assistance in furthering any violation.

- Virtually all the conduct that the SEC alleges falls outside of the 5-year statute of repose of 28 U.S.C. § 2462, and much of the relief sought by the SEC is time-barred.

The SEC's comprehensive five year investigation resulted in the testimonies of over 100 individuals and the collection and review of over 13 *million* pages of documents. Incredibly, with the benefit of this volume of evidence (including three days of testimony from Mr. Lonchar), the SEC can muster only generalized, conclusory allegations against Mr. Lonchar. Because the SEC cannot state a proper claim against Mr. Lonchar despite its massive pre-litigation investigation, there is no reason to believe it could ever state a proper claim against him and, therefore, Complaint should be dismissed with prejudice.

## II. THE COMPLAINT'S ALLEGATIONS

### A. Veritas

At the time of the acts alleged in the Complaint, Veritas was an independent supplier of storage management and data protection software. ¶ 14.[1]  (In July 2005, Veritas was acquired by Symantec Corporation.)  Mr. Lonchar served as Veritas' CFO from April 1997 until he left the Company in October 2002. ¶ 10. In 2000, the finance and administrative departments that Mr.

---

[1] All ¶ references are to the Complaint. The facts in this section are based on the allegations in the Complaint, as well as public documents and documents referenced in the Complaint. *See* Request for Judicial Notice ("RJN"), filed concurrently herewith. The Exhibits referenced in the RJN are attached to the Declaration of Susan D. Resley.

NOTICE AND MOTION OF DEFENDANT KENNETH E. LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

Lonchar oversaw employed 783 individuals worldwide. *See* RJN, Exh. A, at 13. Michael Cully, Veritas' controller, reported directly to Mr. Lonchar, and Douglas Newton, Veritas' assistant controller, reported to Mr. Cully. ¶¶12-13.

**B.  The September 2000 AOL Transactions**

The SEC challenges the accounting for two transactions pursuant to which Veritas sold a $50 million software license to AOL, and AOL sold $20 million of advertising to Veritas on September 29, 2000. ¶ 23. It attempts to depict these transactions as fraudulent by characterizing them as a single "round trip" transaction designed to artificially inflate the publicly reported revenues and earnings of Veritas and AOL. ¶ 1. The SEC characterizes the advertising deal as an "eleventh-hour" add-on to the software license agreement, whereby AOL agreed to pay an additional $20 million for the license (beyond the $30 million to which it initially had agreed) in exchange for Veritas' agreement to buy $20 million in advertising from AOL. ¶¶ 18, 20. The SEC alleges that Veritas had no budget or need for AOL's advertising (¶¶ 17, 21) and only agreed to buy the advertising "as a favor" to AOL. ¶ 20.

The SEC alleges that on September 29, 2000, Mr. Leslie authorized the transactions and directed Paul Sallaberry, Veritas' head of sales, to "negotiate the terms and execute the transaction documents." ¶ 2. It further alleges that, pursuant to a request by AOL, Mr. Leslie directed Mr. Sallaberry to work out the details of the advertising purchase agreement with AOL, which he did. ¶¶ 20-22.

Notably, the SEC *never* alleges that Mr. Lonchar participated in negotiating either the sale of the software license or the purchase of the AOL advertising. The SEC alleges no facts to show he was aware of the evolution of the negotiations or an "11th hour" request from AOL. Even more telling, the SEC never alleges facts that would demonstrate why such a request would support an allegation of fraud if, in fact, Mr. Lonchar was so informed. Mr. Lonchar's only alleged "role" in the transaction is described in two paragraphs: ¶ 23: "After consulting with Lonchar and Leslie, Sallaberry affirmed the AOL proposal"; and ¶ 25:  Mr. Lonchar told Mr. Sallaberry "to document the transaction as if it were two separately negotiated, *bona fide*,

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

contracts." However, the SEC nowhere alleges what was communicated to (or by) Mr. Lonchar in the "consultation" with Mr. Sallaberry and, more generally, it alleges no facts to suggest that Mr. Lonchar was aware that the deals were anything but separately negotiated and bona fide.

The SEC also alleges a "verbal side agreement" between Mr. Sallaberry and his AOL counterpart to arrange for "simultaneous wire transfers." ¶ 26. But again, it alleges no facts that would support a finding that Mr. Lonchar was aware of any such agreement – only that Mr. Lonchar learned that payments were made on December 1, 2000. ¶ 29. No inference of fraud can be drawn from this allegation, as it is hardly surprising that Veritas' CFO would be kept apprised of payments received and made as a result of the Company's largest single transaction. Indeed, such payments confirmed – and at a minimum support – a reasonable inference that the software transaction was bona fide.

From these innocuous facts, and because Veritas restated a portion of its revenue from that transaction 2-1/2 years later (in March 2003) the SEC concludes that Mr. Lonchar improperly and, indeed, fraudulently booked the entire $50 million as license and service revenue, in violation of Generally Accepted Accounting Principles ("GAAP"). ¶ 30. That allegation mischaracterizes Veritas' restatement, which stated that "Veritas was "restating its financial results to reflect a reduction of revenue and expenses by $20 million." *See* RJN, Exh. B, at 2.

**C. Mr. Lonchar's Communications with Veritas' Auditors Regarding the AOL Transactions**

The Commission contends that Mr. Lonchar failed to disclose to Veritas' auditors the "contingent nature" of the transactions, the last-minute negotiations that resulted in the addition of the advertising component of the deal, and the alleged agreement between Mr. Sallaberry and AOL to make simultaneous payments. ¶¶ 31, 33, 35, 46- 47. It alleges further that after the auditors "discovered" the purported concurrent nature of the transactions, Mr. Lonchar advised them that (1) the two transactions were entered into for valid reasons and were not part of one "overall arrangement," (2) executives in different functional organizations within Veritas took responsibility for negotiating each contract, (3) both contracts were fairly valued, and (4) the

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

software license deal was not linked to Veritas' agreement to enter into the advertising deal. ¶¶ 32, 34. The SEC also alleges that Mr. Lonchar signed a false management representation letter omitting the above "facts." ¶ 47. According to the SEC, these allegedly false statements and material omissions led the auditors to issue an unqualified audit report on Veritas' 2000 financial statements. ¶ 48.

Missing from these conclusory assertions are any facts demonstrating that any written or oral statement by Mr. Lonchar was false when made, or that Mr. Lonchar knew or recklessly disregarded the falsity of any such statement. The SEC pleads no facts to suggest that he was privy to negotiations with AOL or aware of who negotiated each part of the deal. Simply put, the SEC has not alleged facts to support an inference that when Mr. Lonchar spoke with outside auditors or signed management representation letters, he understood the deals were illegitimate and not properly accounted for.[2]

### D. The SEC's Allegations Concerning the Certification of Veritas' Financial Statements

The SEC alleges that in August 2002, Mr. Lonchar (among others) falsely certified the accuracy of Veritas' financial statements. ¶¶ 77, 80. The SEC's only supporting allegation is that Mr. Lonchar falsely claimed the auditors were aware of the movement in the price that AOL paid for Veritas' software license from $30 million to $50 million. ¶ 79. These allegations fail because the SEC pleads no facts to support an inference that, two years after the contracts were executed, Mr. Lonchar became aware of new details of the negotiations, including the price increase.[3]

---

[2] In a similar vein, the SEC coyly alleges that after Messrs. Leslie, Lonchar and Sallaberry "were consulted" in connection with the "Company's" efforts to avoid a story about the AOL transactions and that "[t]he Company" told the reporter that there were in fact two distinct transactions. ¶ 78. Even putting aside the absence of any allegation that Mr. Lonchar knew such statements were false when made, the SEC alleges no facts as to what he said during the purported "consultation," nor does it allege that he communicated with the press in any fashion.

[3] The certification signed on August 13, 2002 references "*covered reports*" for Veritas, i.e., the 10-K for the period ended December 31, 2001 and subsequent SEC filings. RJN, at Exh C. The certification dated August 14, 2002 attests to the accuracy of statements in the quarter ended June 30, 2002. RJN, at Ex D. While the Complaint's allegations concerning certifications are vague, they are irrelevant to the extent they refer to the AOL transactions.

- 7 -

1

2     Accordingly, as with the 2000 10-K, the SEC alleges no facts to suggest that Mr. Lonchar's

3     certifications were false when made.

4         **E.  Alleged Revenue "Smoothing" Practices by Mr. Lonchar and Others**

5             The SEC inconsistently claims that at the same time Mr. Lonchar was allegedly "grossing

6     up" revenues on the AOL transaction (¶ 50), he, Mr. Cully and Mr. Newton participated in three

7     alleged non-GAAP accounting practices that had the effect of "smoothing" or understating

8     revenue and earnings during unspecified periods in 2000 and 2002.  ¶¶ 52, 65.  As a result of

9     these asserted practices, which the SEC contends were concealed from the Company's auditors,

10    Veritas allegedly reported materially false financial results for 2000 to 2003.  ¶ 52.

11            According to the SEC, Mr. Lonchar "directed" the recording of excessive and/or

12    unsubstantiated accrued liabilities in violation of GAAP, and "directed" his "finance team" to

13    prepare cushion schedules with improper balances in order to achieve desired financial results. ¶¶

14    53-55.  Yet, the SEC pleads no facts to show when or to whom the directions were given.

15    Incredibly, it alleges no facts as to how much the earnings were overstated or understated or,

16    indeed, whether the amounts were material in any given period.  Instead, it asserts, without more,

17    that the cumulative balance of the overstated accrued liabilities fell within the range of $10

18    million to $21 million over a two-year period.  ¶ 55.

19            The SEC further alleges that in a number of quarters for which Veritas had reached its

20    revenue targets, Mr. Lonchar instructed the finance department to stop accruing and recognizing

21    earned revenue from technical consulting and training services delivered during the quarter, in

22    violation of GAAP.  ¶¶ 60-61.  Again, however, the SEC's bare allegations do not even identify

23    *which* quarters were affected, *how much* the service revenue was understated, or whether the

24    amounts were *material* in any period.

25            The SEC also asserts that at Mr. Lonchar's instruction, Mr. Newton (with Mr. Cully's

26    awareness) improperly manipulated Veritas' deferred revenue balance during the second quarter

27    of 2002, in violation of GAAP.  ¶ 67.  Mr. Newton purportedly instructed finance personnel not

28    to subtract from the deferred revenue balance amounts attributable to unpaid contracts.  ¶ 69.  The

SEC claims that this practice inflated Veritas' deferred revenue balance and created the false impression that the Company's new business had increased during the quarter. ¶¶ 68-69. But the SEC makes no allegations as to Mr. Lonchar's role in this purported scheme, except to refer in conclusory terms, without any of the required specifics, to Mr. Lonchar's "instructions."

As with the allegations concerning the AOL transaction, the SEC's sole factual support for the allegations concerning the challenged practices is Veritas' March 2004 announcement of a restatement of its financial statements. ¶¶ 58, 66, 72. The SEC ignores the fact that the 2004 restatement corrects errors resulting from challenged practices that occurred after Mr. Lonchar left Veritas and fails to adequately allege that the restated amounts were material. *See* RJN, Ex. E, at 19.

### F.    Mr. Lonchar's Communications with Veritas' Auditors Regarding the Alleged Non-GAAP Practices

The SEC alleges that Mr. Lonchar and Mr. Cully made material misrepresentations and omissions to Veritas' outside auditors concerning these alleged accounting practices. ¶¶ 70-71, 73-76. According to the Complaint, Mr. Lonchar and others failed to disclose the alleged non-GAAP accounting practices in discussions with the auditors or in management representation letters signed in 2001 and 2002. ¶¶ 73-76. The SEC fails to plead any facts as to why these statements were false when made. In addition, it alleges that when Veritas' outside auditors detected irregularities in the June 2002 deferred revenue balance, they were told by "Veritas finance personnel" that the errors were inadvertent. ¶70. The Complaint is silent as to who advised the auditors or whether Mr. Lonchar was even aware that a false account reconciliation schedule was provided to them. ¶ 70. In short, the necessary factual predicate for the SEC's conclusory allegations is absent.

### III.    EACH OF THE SEC'S ALLEGATIONS AGAINST MR. LONCHAR FAILS TO MEET THE PLEADING STANDARDS OF FED. R. CIV. P. 9(B)

#### A.  Each of the SEC's Claims is Subject to Rule 9(b)

While a court must accept as true all well-pled material allegations in the complaint on a motion to dismiss, a court may not consider unsupported, conclusory allegations, or factual

allegations based on unreasonable inferences. *See SEC v. Yuen*, 221 F.R.D. 631, 634 (C.D. Cal. 2004) (the court may not accept "legal conclusions cast in the form of factual allegations[,] if those conclusions cannot reasonably be drawn from the facts alleged").; *In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

The SEC has alleged that the defendants engaged in a "fraudulent scheme." ¶ 1. Thus, each of the SEC's claims is subject to the particularity requirements of Rule 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy Rule 9(b), the SEC "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends statements were fraudulent, state when and where the statements were made, and identify those responsible for the statement." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (citation omitted). This requires identification of the circumstances constituting fraud, so that a defendant may prepare an adequate answer to plaintiff's allegations and "not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).[4]

Rule 9(b) applies not only to the SEC's fraud claims, but to the SEC's claims for lying to auditors and claims for reporting, "books and records," internal controls violations (both primary violations and aiding and abetting claims). *SEC v. Baxter*, No. C-05-03843 RMW, 2007 WL 2013958, at *8 (N.D. Cal. July 11, 2007) ("heightened pleading standard" applies to claims under § 13 of the Exchange Act). This is because each of these claims is "grounded in fraud." *See Vess*

---

[4] It is impossible to determine what background allegations each of the SEC's five Claims for Relief encompasses, as the Claims contain only bare recitations of law and make no reference to any particular allegations. Accordingly, the SEC has left Mr. Lonchar to guess whether he should prepare a defense to all of the Claims with respect to both sets of allegations, or whether some of the Claims refer to only one set of alleged facts. In itself, this deficiency is ground for dismissal. *See Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions, and a forumulaic recitation of the elements of a cause of action will not do); *GlenFed,* 42 F.3d at 1554 ("A complaint is not a puzzle . . . and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint.").

*v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, at 1103-04 (9th Cir. 1986) (claim alleging a unified course of conduct and relying entirely on that course of conduct as the basis of the claim is "grounded" or "sounds in fraud").

## B. Heightened Pleading Standards Are Even More Applicable in This Case

Moreover, while scienter and falsity are distinct elements of a securities fraud claim, courts analyze the adequacy of their allegations as a "single inquiry." *Baxter*, 2007 WL 2013958, at *6.[5] Although the Private Securities Litigation Reform Act ("Reform Act") does not apply to SEC actions, (see *SEC v. ICN Pharms.*, 84 F. Supp. 2d 1097, 1099 (C.D. Cal. 2000)), numerous courts have determined, largely due to the SEC's extensive pre-litigation investigatory powers, that the SEC must plead facts that would demonstrate a strong inference of scienter. *See SEC v. Parnes*, No. 01 CIV 0763 LLS THK, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001) (requiring facts demonstrating strong inference of scienter where "SEC has had three years of discovery and access to documents and records").[6]

These heightened pleading standards are certainly applicable here, since the SEC has investigated the claims asserted in the Complaint for more than *five years*. During that time, the SEC reviewed millions of pages of documents, and took testimony from more than one hundred witnesses, including Mr. Lonchar.[7] *See, e.g., SEC v. Tambone*, 417 F. Supp. 2d 127, 131 (D. Mass. 2006) (in light of the SEC's extensive pre-litigation investigation, Rule 9(b)'s particularity

---

[5] Scienter is a "mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).

[6] *See also SEC v. Durgarian*, 477 F. Supp. 2d 342, 353 (D. Mass. 2007) (dismissal as to three of the six defendants, and stating that "with respect to alleged securities fraud violations, the SEC must also 'set forth facts giving rise to a 'strong inference' that the defendants acted with the required state of mind'")(quoting *In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 204 (1st Cir. 2005)); *SEC v. Roanoke Tech. Corp.*, No. 6:05-cv-1880-Orl-31KRS, 2006 WL 2470329, at *6 (M. D. Fla. Aug. 24, 2006) (dismissal because the facts alleged by the SEC were "not sufficient to raise a strong inference that [the defendant] intended to deceive, manipulate or defraud any investor"); *SEC v. Lucent Techs., Inc.*, 2005 WL 1206841, at *5 (D.N.J. May 20, 2005) (any plaintiff alleging securities law violations must plead facts raising a strong inference of scienter "regardless whether the PSLRA applies").

[7] Veritas first received SEC subpoenas relating to the AOL transactions during the third quarter of 2002. *See* RJN, Exh. F. In March 2005, the SEC charged AOL with securities fraud and made allegations about its transactions with Veritas. RJN, Exh. G. However, it was not until February 2007 that the SEC filed its complaint against Veritas. RJN, Exh. H.

requirements must be applied in a "rigorous manner"); *SEC v. Republic Nat'l Life Ins. Co.*, 378 F. Supp. 430, 439 (S.D.N.Y. 1974) (the standard of alleging fraud claims with particularity is "especially applicable in view of prior meetings" between the SEC and the defendant). Moreover, actions brought by the government are scrutinized with particular rigor under Rule 9(b) because the "adverse effects on an individual's standing in the community caused by allegations of fraud are, if anything, greater when the charges are made by a governmental agency than when they are brought by a private individual or concern . . . ." *SEC v. GSC Enterprises, Inc.*, 469 F. Supp. 907, 911 n.2 (N.D. Ill. 1979). Accordingly, the Court must apply Rule 9(b)'s particularity standard with unique stringency on this Motion

## IV.    THE COMMISSION FAILS TO ALLEGE SECTION 17(a) AND SECTION 10(b) / RULE 10b-5 CLAIMS AGAINST MR. LONCHAR

The Commission's First and Second Claims for Relief respectively allege violations of Section 17(a) of the Exchange Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. To survive a motion to dismiss, the SEC must plead facts showing: (1) a material misrepresentation, (2) in connection with a purchase or sale of a security, (3) with scienter. *See SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1364 (9th Cir. 1993).[8]

### A.    The SEC Has Not Adequately Alleged The Falsity Of Statements Concerning The AOL Transactions

#### 1.    The SEC Has Not Sufficiently Described What Statements Were False

In challenging the AOL transactions, the SEC alleges that the 2000 10-K "contained … artificially inflated results" and that "Leslie and Lonchar also approved false and misleading press releases and participated in earnings release teleconferences with analysts in which false and misleading disclosures were made." ¶ 49.[9] Noticeably missing are the dates and the substance of

---

[8] The requirements for establishing a violation of Section 17(a) are nearly the same as those for a Section 10(b)/Rule 10b-5; however, scienter is not an element of claims under Sections 17(a)(2) and 17(a)(3). *See Aaron v. SEC,* 446 U.S. 680, 681 (1980).

[9] The allegations that Mr. Leslie and Mr. Lonchar collectively approved press releases and participated in conference calls are patently deficient as they fail to plead the role of each in the alleged misrepresentations. *See, e.g., Parnes,* 2001 WL 1658275, at *4 (SEC "may not rely upon

these alleged releases and disclosures. The SEC does not describe Veritas' reported financials for fiscal year 2000. Rule 9(b) demands far more. A complaint must provide "specific references" to "specific facts" as the basis for an allegation that a statement is false or misleading. *Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1250 (N.D. Cal. 1998); *In re Metricom Sec. Litig.*, No. C01-4085 PJH, 2004 WL 966291, at *8 (N.D. Cal. Apr. 29, 2004) ("complaint must allege specific facts regarding the fraudulent representation, how or why the representation was false or misleading and, in some cases, the identity of the person engaged in the fraud").

**2. The SEC has Not Pled Facts to Support an Inference that the Statements Were False When Made**

The SEC must allege not only the "time, place and content of an alleged misrepresentation," but also the "circumstances indicating [the] falseness" of the alleged misrepresentation. *GlenFed,* 42 F.3d at 1548. In other words, it "must set forth *more* than the neutral facts necessary to identify the transaction . . . [It] must set forth an explanation as to why the statement or omission complained of was false or misleading." *Id.* at 1548 (emphasis in original). The SEC may not plead falsity with hindsight, but must allege sufficient facts to show that the allegedly fraudulent statement "was untrue or misleading *when made*." *Id.* at 1549 (emphasis in original). This "can be done most directly by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." *Id.*

The SEC's allegations against Mr. Lonchar fail to comply with this mandate. Although the SEC alleges that Mr. Lonchar advised Mr. Sallaberry "to document the transaction as if it were two separately negotiated, *bona fide*, contracts" (¶ 25), it pleads *no* facts to show that any information available to Mr. Lonchar at the time would tend to show that the two contracts were "contingent" or "round trip" as alleged by the SEC. The Complaint is devoid of any allegations indicating his role or participation in negotiating either transaction. The SEC claims only that

blanket references to acts or omissions by all of the defendants for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which it individually stands charged).

some unspecified time before Mr. Sallaberry finalized the deal, he "consult[ed]" with Mr. Lonchar and Mr. Leslie. ¶ 23. The Complaint is silent as to the nature of this alleged consultation. Similarly, the SEC does not allege that Mr. Lonchar received Mr. Leslie's email correspondence describing the deal as "grossed up." ¶ 27. In other words, the SEC alleges no facts to suggest that Mr. Lonchar was aware that the transactions were anything *but* bona fide. Absent such contemporaneous facts, the Complaint does not satisfy Rule 9(b). *See Metricom*, 2004 WL 966291, at *8.

The SEC claims that Mr. Lonchar learned on December 1, 2000 that payments under both agreements had occurred on that day. ¶ 29. This allegation is hardly sufficient to support a claim that any statement he made concerning the two transactions in Veritas' annual SEC filings or in press releases or analyst calls was false at the time he made it. The mere fact that payments under two of many contracts entered into by a busy public company happened to occur on the same day does not compel or even suggest the conclusion that the contracts were contingent or that they constituted a fraudulent "round trip" deal. *Yuen*, 221 F.R.D. at 634 (legal conclusions cast as facts not reasonably drawn from allegations may not be accepted). Moreover, it is certainly reasonable – as opposed to fraudulent – for the CFO to monitor the receipt and payment of a large transaction. *See Verifone*, 11 F.3d at 868 ("[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim").[10]

### a. Pejorative Characterizations and Conclusions of "Knowledge" Do Not Substitute For Facts

Rather than supplying the requisite facts to demonstrate falsity, the SEC resorts to name calling and concludes – with no factual support – that the AOL transactions were "contingent," ¶¶ 31, 33, 35, 38, 41, 42, 46, 47, or "round trip" and "fraudulent." ¶¶ 1, 51. However, pejoratives never substitute for facts. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55

---

[10] The SEC's ambiguous allegations concerning Veritas' August 2002 internal review of the AOL transaction and, in particular, its claims that Messrs. Lonchar, Leslie and Sallaberry "consulted" about a newspaper story are far too conclusory to demonstrate that the August 2002 certifications were false. ¶¶ 77, 78. Not surprisingly, the SEC fails to even allege the substance of these purported "consultations."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(9th Cir. 1994) (the court may not accept "legal conclusions cast in the form of factual allegations[,] if those conclusions cannot reasonably be drawn from the facts alleged"). The SEC's allegations *are* inconsistent with the facts and the case law. A true "round trip" or sham transaction lacks any economic substance. *See In re AOL Time Warner, Inc, Sec. & ERISA Litig.*, No. 1500, 02 Civ. 5575 SWK, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006). The SEC does not allege, nor could it, that the advertising deal between Veritas and AOL was completely devoid of economic substance. Though the SEC asserts in conclusory terms that Veritas did not need or want AOL's advertising, it pleads no facts to support this contention, and settled case law (including a recent Ninth Circuit decision) establishes that transactions substantially similar, if not identical, to the AOL transaction that the SEC challenges here *do* have economic substance. *See Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1053 (9th Cir. 2006) (where actual products are purchased and sold, the transaction cannot be said to lack legitimate economic value); *Teachers' Ret. Sys. v. Hunter,* 477 F.3d 162, 178 (4th Cir. 2007) (if either transaction has economic substance, the transactions cannot be a wash, and "the mere existence of reciprocal dealing does not suggest 'round-tripping'"). Nothing in Veritas' March 2003 restatement suggests that the transaction was a sham. Veritas merely stated that the fair value of the goods and services purchased and sold could not be reasonably determined and that Veritas was reducing revenue and expenses by $20 million. *See* RJN Ex. B, at 2.[11]

The SEC also attempts to skirt Rule 9(b)'s particularity requirement by alleging in most conclusory terms that Mr. Lonchar had "knowledge about the true nature of the AOL transaction" in 2000 and 2001. ¶ 30. But the SEC does not allege a single fact to tie Mr. Lonchar to any discussions, meetings or correspondence indicating that he was aware or recklessly disregarded that the transactions were not legitimate and bona fide. Absent this factual link, the single, bare allegation of Mr. Lonchar's knowledge is insufficient. *See Gompper v. VISX, Inc.*, 298 F.3d 893,

---

[11] The SEC's conclusions are immaterial in any case, because the relevant inquiry is whether Veritas purchased actual advertisements from AOL under the contract, which the SEC does not challenge. *See Hunter*, 477 F. 3d at 182 (sales were bona fide because "real products were shipped to [a] real customer [] who then paid with real money") (citing *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 566 (S.D.N.Y 2004)).

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

895-96 (9th Cir. 2002) (dismissal where complaint failed to plead a link between awareness of a patent claim and knowledge that the patent claims were invalid). Indeed, the only inferences to be drawn from the allegations are that (1) Mr. Lonchar believed the transactions were two distinct, legitimate transactions and (2) he was concerned about the receipt and payment of the funds related to those transactions. *See Tellabs v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (2007) (inference of scienter must be cogent, compelling and "*at least as compelling as any opposing inference*" one could draw from the facts alleged") (emphasis added).[12] Thus, the SEC's conclusory allegations of knowledge do not support a claim for a securities law violation.[13]

### b.  Allegations of Restatement and GAAP Violations Do Not Equate to Fraud

The SEC attempts to fill the factual void in its pleading by relying on Veritas' March 2003 restatement, concluding therefrom that "Mr. Lonchar's accounting for the transaction did not conform to GAAP." ¶¶ 30, 51. That is insufficient. It is well-settled that allegations of GAAP violations or restatements alone do not amount to fraud. *See, e.g., DSAM Global Value Fund v. Altris Software. Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *In re Watchguard Sec. Litig.,* No. C05-678LJR, 2006 U.S. Dist. LEXIS 27217, at * 37 (W.D. Wash. Apr. 21, 2006) ("[d]espite the admission of falsity that normally accompanies a restatement, nothing in any statute, reported case, or other authority transforms a restatement of earnings into securities fraud").

---

[12] While *Tellabs* addresses the Reform Act, the SEC in its amicus brief urged the Court to adopt this standard: "When the facts alleged in the complaint give rise to a substantial possibility that the defendant acted without scienter, the necessary 'strong inference' of scienter will be lacking, because there will be an insufficient likelihood that the conclusion that the defendant acted with scienter follows from the facts alleged in the complaint as a whole." *See* RJN, Exh. I at 25. While the SEC is not subject to the Reform Act, it would be, at best, ironic for the SEC to contend that this Court should not consider anti-scienter references from its allegations.

[13] Similarly, the SEC's bare allegations that Mr. Lonchar "profited" adds nothing. ¶83. No dates or amounts of stock sales or the amount of his bonus are pled. *See In re Vantive Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002) (stock sale allegations are relevant only when pled in context with the dates of the allegedly false statements).

1

**B.  The SEC's Bare Allegations that Mr. Lonchar Manipulated Veritas' Financial Statements Fail**

2

3

**1.  The SEC's General Allegations of Improper "Practices" are Insufficient**

4

The SEC alleges that Mr. Lonchar, Mr. Cully and Mr. Newton variously engaged in

5

non-GAAP practices.  The Complaint describes in most vague fashion that Mr. Lonchar

6

"directed" Veritas' practice of improperly recording accrued liabilities between 2000 and 2002.

7

¶¶ 53-56.  But the Complaint never alleges with appropriate particularity *which* accrued balances

8

were unsubstantiated or for which reported period(s).  The Complaint is silent as to what was

9

contained in the "accrual wish list" or "cushion schedule" or over which accounts they were

10

supposedly spread. ¶¶ 54-55, 57.  While the SEC states that the cumulative balances of over-

11

stated liabilities between 2000 and 2002 were between $10 million and $21 million, this is far too

12

broad and vague to identify what statement was false or *when* it was made.  *See Wenger*, 2 F.

13

Supp. 2d at 1251.

14

As to Mr. Lonchar's alleged deferral of Veritas' professional services revenue, the

15

Complaint similarly provides a general overview of the practice, but is devoid of sufficient

16

particulars to comply with Rule 9(b).  It does not provide dates, stating only that the practice

17

occurred "in a number of quarters" within some unnamed time period (¶ 60), and does not even

18

give an estimate as to the value of the allegedly deferred revenues.  These allegations fail to state

19

"precisely the time, place, and nature of the misleading statements, misrepresentations and

20

specific acts of fraud" Mr. Lonchar is alleged to have committed, thus dooming the SEC's fraud

21

claims.  *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994).[14]

22

Most critically, the SEC nowhere alleges that any misstatement was material in any

23

reporting period. This glaring failure guts not only its fraud claims, but also its claims under

24

---

25

[14] Although the SEC at least identifies the quarter in which the deferred revenue balance was allegedly manipulated (second quarter 2002), it provides no details about Mr. Lonchar's role in

26

the alleged practice, aside from his "instructions." *See Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418, 425 (S.D.N.Y. 1978) (allegations that defendants "participated in the drafting,

27

preparation . . . and, in particular, provided accounting and technical advice in connection with their preparation" failed to satisfy Rule 9(b)).

28

- 17 -

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

1    Section 13 of the 1934 Act.  *See, e.g., In re Meris Labs., Inc.*, 57 SEC Docket 1684, 1994 WL

2    523841, at *7 (SEC Sept. 26, 1994 ) (and cases cited therein).

3             **2.    The SEC Fails to Allege Why These Statements were False.**

4            As with its allegations concerning the AOL transactions, the SEC likewise fails in its

5    revenue manipulation charges to set forth facts showing why any statement by Mr. Lonchar in

6    Veritas' financial reports or elsewhere was false when made.  Once again, the SEC fails to cite

7    specific inconsistent information known to Mr. Lonchar that would explain *why* any of Mr.

8    Lonchar's statements was "untrue or misleading when made."  *GlenFed*, 42 F.3d at 1549.  The

9    SEC's vague references to undated, unspecified "requests" to his finance team (¶ 55), undated,

10   unspecified "quarter end revenue meetings" (¶ 62), and unspecified "schemes" (¶ 68) do not

11   satisfy Rule 9(b).  *Yourish v. California Amplifier,* 191 F.3d 983, 994 (9th Cir. 1999) ("If such

12   unsupported general claims were sufficient to satisfy Rule 9(b)'s particularity requirements,

13   plaintiffs could eliminate the falsity requirement entirely because they could merely identify a

14   given statement by the defendant and then simply allege that the substance of the statement was

15   contradicted by contemporaneous information contained in internal reports."); *In re Syntex Corp.*

16   *Sec. Litig.*, 855 F. Supp. 1086, 1095 (N.D. Cal. 1994) ("Plaintiffs' allegation that Defendants

17   possessed internal corporate data known only to them, comes nowhere close to satisfying Fed. R.

18   Civ. P. 9(b)").

19           As with its allegations concerning the AOL transaction, the SEC tries to sidestep the

20   particularity requirements with catch phrases and conclusory references to GAAP violations and

21   Veritas' restatement of its financials in 2004.  ¶¶ 53, 58, 61, 66 69, 72.  The SEC does not

22   quantify the restatement, and, with the exception of the alleged deferred revenue reclassification,

23   never quantifies the restatement amount for each period for the alleged improper "accrued

24   liabilities" and "improper cut off" of professional service revenues.  At the very least, the SEC

25   should state which GAAP provision it contends was violated by the alleged non-GAAP

26   accounting practice, and "must allege enough information so that 'a court can discern whether the

27   alleged GAAP violations were minor or technical in nature'. . . .[T]he plaintiff must show with

28

particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position." *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1017-1018 (9th Cir. 2005) (quotation omitted). Additionally, the Complaint fails to describe how the improper adjustments were material to each period in light of Veritas' overall financial condition from 2000 to 2002.[15]

## V. THE COMMISSION'S SECTION 13 CLAIMS FOR RECORD KEEPING AND INTERNAL CONTROLS VIOLATIONS AND LYING TO AUDITORS ARE NOT PLEADED WITH ADEQUATE PARTICULARITY

### A. The Internal Controls and Books and Records Claims are Inadequately Pled

The SEC's Third and Fourth Claims for Relief allege that the defendants, including Mr. Lonchar, knowingly falsified Veritas' books and records and circumvented or failed to implement a system of internal accounting controls at the Company. ¶¶ 93, 96. As discussed in Section III.A., the SEC's claims are grounded in fraud and Rule 9(b) applies. Moreover, as to the SEC's claim under § 13(b)(5) of the 1934 Act, the statute expressly requires a showing that defendant *knowingly* circumvented an existing system of accounting controls, failed to implement a system of accounting controls, or falsified a relevant corporate book or record.

The books and records and internal controls allegations do not come close to meeting the mandate of Rule 9(b). The SEC never indicates which of Veritas' books, records or accounts Mr. Lonchar allegedly caused to be falsified, or the manner in which he allegedly falsified them. Nor does it plead specific facts about which internal controls at Veritas were insufficient or circumvented. It fails to specify whether the alleged books and records or internal controls violations relate to the AOL transactions or the alleged non-GAAP practices, and it also fails to plead the factual predicate for any of its conclusions. *See, e.g., SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708 (D.N.J. 2005) (dismissing the SEC's § 13(b)(5) and Rule 13b2-2 claims because the

---

[15] The SEC asserts that Mr. Lonchar signed false certifications in August 2002 with knowledge or reckless disregard that the "Company's financial statements were not prepared in compliance with GAAP." ¶80. Nowhere do the allegations reference any conduct alleged concerning "smoothing." Because the SEC has been unable to adequately allege the purported scheme to manipulate Veritas' earnings from 2000 to 2002, the certification allegations must be dismissed.

1    SEC failed to allege when defendant learned of an illegal side agreement, and therefore failed to

2    plead with particularity facts giving rise to a strong inference that the defendant knowingly

3    falsified or caused to be falsified the company's books and records); *SEC v. Kahn*, No. 99C 6343,

4    2002 WL 1163723, at *14 (N.D. Ill. May 31, 2002) (while some acts "presumably violated some

5    internal accounting protocols, the fact[] remains that the SEC has not identified what controls

6    were circumvented").  Accordingly, the SEC's Third and Fourth Claims against Mr. Lonchar

7    must be dismissed, as it fails to adequately allege any internal accounting controls violations.

8        **B.  The Rule 13b2-2 Claim Is Not Plead With the Requisite Particularity**

9            **1.  Vague Allegations of Communications with Auditors Are Insufficient**

10           The particularity requirements of Rule 9(b) equally apply to the SEC's Fifth Claim for

11   alleged lying to auditors because the Complaint is grounded in fraud.  *See* Section III.A. Rule

12   9(b) also applies because scienter is an implied element of a 13b2-2 allegation.  *See SEC v.*

13   *Autocorp Equities, Inc.*, 292 F. Supp. 2d 1310, 1332 (D. Utah 2003) ("the antifraud policies

14   behind federal securities law suggest that enforcement of this rule requires intent to mislead or

15   recklessness); *Baxter*, 2007 WL 2013958, at * 8 ("Rule 13b2-2 appears to also impose a scienter

16   requirement").

17           The SEC does not come close to meeting the mandates of Rule 9(b).  For example, the

18   Complaint alleges no dates or circumstances surrounding the discussions between Mr. Lonchar

19   and the auditors.  ¶¶ 31-36.  The Complaint alleges that Messrs. Lonchar, Leslie, and Sallaberry

20   made essentially the same statements to the auditors about the AOL transactions, but it fails to

21   differentiate Mr. Lonchar's statements with any specific allegations as to his discussions with the

22   auditors.  ¶¶ 31-48.  Rule 9(b) demands more.  *See Parnes,* 2001 WL 1658275, at * 4 (each

23   defendant must be apprised of specific conduct he is alleged to have committed).

24           Further, the SEC charges Mr. Lonchar with having "participated in preparing and

25   submitting to Veritas' auditors paperwork that justified the license price and concealed the true

26   nature of the AOL transaction," while offering no detailed facts to support this contention.  ¶ 36.

27   For example, the SEC contends that Mr. Lonchar failed to disclose to the auditors the alleged

28

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

"contingent nature" of the transactions, the so-called eleventh hour negotiations that resulted in the addition of the advertising component of the AOL deal, and the purported side agreement to make payments simultaneously. ¶¶ 31, 33, 34, 35, 46- 47, 79. It further alleges that Mr. Lonchar affirmatively advised the auditors that the two transactions were entered into for valid reasons and were not part of one "overall arrangement," they were fairly valued, the advertising deal was meant to strengthen Veritas' brand recognition, executives in different functional organizations within the Company took responsibility for their negotiation, both contracts were fairly valued, and the software license agreement was not contingent on Veritas' consent to enter into the advertising deal. ¶ 34. Yet, the SEC's failure to allege any contemporaneous facts demonstrating the falsity of these statements is fatal to its claims. *See Yourish*, 191 F.3d at 994.

The Complaint also refers generally to a failure to disclose the alleged non-GAAP accounting practices in "discussions with the Company's internal and independent auditors." ¶ 74. Unnamed "finance personnel" are alleged to have provided a falsified reconciliation schedule. ¶ 70. Tellingly, Mr. Lonchar is not even mentioned. With the exception of ¶ 71, which refers to discussions with the auditors regarding the deferred revenue, the Complaint provides no additional information about any discussions in which Mr. Lonchar allegedly made false or misleading statements to the auditors about Veritas' accounting practices or specific accounting entries. The SEC's failure to allege any specifics regarding the dates or circumstances of these alleged discussions, or Mr. Lonchar's role in them, does not meet the requirements of particularity of Rule 9(b). *See Gupta*, 900 F. Supp. at 1229.

### 2. The Management Representation Letter Allegations are Insufficient

The Complaint alleges also that Mr. Lonchar signed false and misleading management representation letters in January 2001 and January 2002 that failed to disclose "the non-GAAP accounting practices concerning [Veritas'] excess and unsubstantiated accruals, professional service revenues, and deferred revenues." ¶ 74. The SEC also alleges that the 2001 representation letter failed to disclose the nature of the AOL transaction. Although the Complaint lists several allegedly false and misleading statements from each management representation

letter, the SEC fails to plead any specific facts that, if proven, would demonstrate that Mr. Lonchar knew or believed these representations to be false. *See Autocorp Equities*, 292 F. Supp. 2d at 1332. The Complaint fails to point to any specific accrual entries or entries for professional service revenue that did not conform to GAAP and that may have formed the basis of material misrepresentations to the auditors. ¶¶ 52-72. Instead, the SEC relies solely on hindsight based on later announcements, citing a later restatement with no reference to specific corrected entries or amounts. *See GlenFed*, 42 F.3d at 1548; ¶¶ 58, 66, 72. The SEC cannot cure its defective pleading by citing to management representation letters and recasting its fraud claims by asserting that Mr. Lonchar lied to the Company's auditors in violation of Rule 13b2-2. *See SEC v. Todd*, No. 03CV2230BEN (WMC), 2006 WL 1564892, at *10 (S.D. Cal. May 30, 2006) (Rule 13b2-2 requires that defendant "knew or was reckless in not knowing that the statements in the management representation letters were false").

In addition to its other defects, the Complaint's allegations regarding the excess accruals and professional services revenue do not include any specific dates of allegedly false entries in Veritas' financial statements. ¶¶ 53-58, 59-66. The allegations regarding the deferred revenue occurred in June 2002, after Mr. Lonchar signed the management representation letters cited in the Complaint. ¶¶ 67-72. Thus, the Complaint's allegations regarding these practices in 2002 cannot support the conclusion that Mr. Lonchar made false or misleading representations to the auditors in management representation letters.

## C. The Complaint's Aiding and Abetting Allegations Are Inadequate

The Commission's Fourth and Sixth Claims for Relief charge Mr. Lonchar and others with aiding and abetting Veritas' alleged (1) failure to devise and maintain an adequate system of internal controls; (2) violations of SEC reporting requirements; and (3) failure to maintain adequate books and records. *See* ¶¶ 95-97, 101-02.[16] These claims, too, are deficient.

[16] The aiding and abetting claims are set forth in a confusing manner, burdening Mr. Lonchar with the task of deciphering the Complaint and the allegations against him. In particular, the SEC's Sixth Claim for Relief, titled "Reporting Violations," actually contains statutory citations for both SEC reporting violations and books and records violations. Despite the misleading title of the Claim, Mr. Lonchar is forced to assume, without really knowing, that the SEC alleges him

1

### 1.  Rule 9(b) Applies to Aiding and Abetting Claims

Aiding and abetting allegations are subject to the particularity requirements of Rule 9(b). *See Lucent*, 363 F. Supp. 2d at 727-28 (Rule 9(b) is applicable to Section 13(a) and 13(b) aiding and abetting violations); *Baxter*, 2007 WL 2013958, at *10 (applying Rule 9(b) to analysis).  The SEC specifically references and relies upon the fraud allegations as a factual basis for the aiding and abetting claims.  ¶¶ 95, 101.  Accordingly, based on this "wholesale adoption" of the fraud allegations, the aiding and abetting claims "sound in fraud," and Rule 9(b) applies. *Daou*, 411 F.3d at 1028.

### 2.  The SEC Fails to Sufficiently Allege that Mr. Lonchar Aided and Abetted Violations of the Securities Laws

To survive a motion to dismiss, the SEC must plead particular facts under Rule 9(b) that demonstrate (1) the existence of a primary violation of the securities laws, (2) that the defendant provided substantial assistance in the alleged violation; and (3) that he had knowledge of both the primary violation and his role in furthering it. *See Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); *SEC v. Fehn*, 97 F.3d 1276, 1288-95 (9th Cir. 1996).  A showing of constructive knowledge or recklessness is inadequate – the SEC must allege facts giving rise to the inference that the defendant *actually knew* of the primary violation. *Fehn*, 97 F.3d at 1295; *SEC v. Cedric Kushner Promotions, Inc.*, 417 F. Supp. 2d 326, 334-35 (S.D.N.Y. 2006) ("recklessness, even for fiduciaries, is no longer sufficient"; "knowing misconduct must now be shown" to establish aiding and abetting liability).  This is true even where scienter is not an element of the primary violation. *See Ponce*, 345 F.3d at 737; *Cedric Kushner Promotions*, 417 F. Supp. 2d at 336-37; *Lucent*, 2005 WL 1206841, at *8.  Likewise, a defendant must be shown to have actual knowledge of his role in furthering the alleged primary violation. *See Howard v. SEC*, 376 F.3d 1136, 1142-43 (D.C. Cir. 2004) ("aiding and abetting liability cannot rest on the proposition that the person 'should have known' he was assisting violations of the securities laws").

---

to have aided and abetted not only reporting violations, but also books and records violations allegedly committed by Veritas. *See May v. Borick,* No. CV 95-8407 LGB (EX), 1997 WL 314166, at * 8 (C.D. Cal. Mar. 3, 1997) (allegations which "obfuscate, rather than clarify" are impermissible).

NOTICE AND MOTION OF DEFENDANT KENNETH E.
LONCHAR TO DISMISS COMPLAINT
- MASTER FILE NO. C 07 3444 JF

1

2    Here, the SEC has not sufficiently pled that Mr. Lonchar had actual knowledge of any of

3    Veritas' alleged primary violations. The SEC has pled no facts that, if proven, would support a

     finding that Mr. Lonchar actually knew that (1) Veritas was circumventing or failing to

4    implement an adequate system of internal accounting controls; (2) Veritas was filing materially

5    false and misleading reports with the SEC; or (3) Veritas was not making and keeping accurate

6    books and records. Finally, it is not even clear from the Complaint which set of factual

7    allegations (the AOL transactions or the revenue smoothing practices) is meant to pertain to the

8    aiding and abetting claims. Accordingly, Mr. Lonchar once again is burdened with having to

9    defend against the charges without knowing what the SEC actually intended to plead. Nor does

10   the SEC allege that he knowingly assisted the Company in improperly accounting for the

11   transactions or in making SEC filings that inaccurately stated Veritas' earnings as a result of the

12   transactions. Accordingly, the Fourth and Sixth Claims must be dismissed.

13
     **VI.    MOST OF THE SEC'S REQUESTS FOR RELIEF IN THE COMPLAINT ARE**
14   **       TIME-BARRED**

15          The SEC seeks, among other forms of relief, civil monetary penalties, injunctive relief and

16   an officer and director bar against Mr. Lonchar. An action seeking civil penalties "shall not be

17   entertained unless commenced within five years from the date when the claim first accrued. 28

18   U.S.C. § 2462. The limitations period runs from the date of the conduct at issue, not the date that

19   the SEC discovers that the conduct occurred. *See FEC v. Williams*, 104 F.3d 237, 240 (9th Cir.

20   1996) (rejecting a discovery rule for actions covered by § 2462 and holding that a suit must

21   commence within five years of the date of the violation giving rise to the penalty).

22          Here, the AOL transaction occurred nearly *seven years* prior to the filing of the

23   Complaint. *See* ¶¶ 16-30. Likewise, the filing of the financial statements reporting the revenue

24   and expenses associated with the AOL transactions occurred outside of the five year period prior

25   to the Complaint's filing, ¶¶ 49-50, as did all of Mr. Lonchar's alleged communications with the

26   auditors, which took place in 2000 and 2001. ¶¶ 31-36, 75-76. Similarly, with respect to the

27   SEC's allegations concerning the purported manipulation of Veritas' financial statements, the

28

OHS West:260315225.3                          - 24 -                  NOTICE AND MOTION OF DEFENDANT KENNETH E.
                                                                      LONCHAR TO DISMISS COMPLAINT
                                                                      - MASTER FILE NO. C 07 3444 JF

Complaint fails to plead any specific acts by Mr. Lonchar that occurred within five years of the Complaint's filing. *See* ¶¶ 52-72. Thus, the SEC's claims for civil penalties must be dismissed. *SEC v. Scrushy*, No. CV-03-J-615S, 2005 WL 3279894, at *2 (N.D. Ala. Nov. 29, 2005) ("The appropriate start of the statute of limitations is the date of the violations for which the civil penalties are sought, not the discovery of such violations.").[17]

The claims for an officer and director bar and for injunctive relief also time-barred on the grounds that they are punitive and not remedial in nature, particularly since Mr. Lonchar's alleged conduct occurred more than five years ago and he has not been employed by a public company for more than 5 years. *SEC v. Jones*, 476 F. Supp. 2d 374, 381, 384 (S.D.N.Y. 2007) (§ 2462 applies to civil penalties and "equitable relief that seeks to punish" and "[E]xclusive reliance on Defendant's past conduct is insufficient to demonstrate the need for a permanent injunction."). *See also Johnson v. SEC*, 87 F. 3d 484, 488 (D.C. Cir. 1996) *and SEC v. DiBella*, 409 F. Supp. 2d 122, 127-28 (D. Conn. 2006) (five-year statute of limitations applies to the SEC's requests for a permanent injunction and an officer and director bar). Accordingly, the Commission's requests for civil penalties, injunctive relief and an officer and director bar are untimely.

## VII.    CONCLUSION

For the foregoing reasons, the SEC's Complaint against Mr. Lonchar should be dismissed with prejudice.

Dated: October 5, 2007

Respectfully submitted,
ORRICK, HERRINGTON & SUTCLIFFE LLP

_____/S/_____
EDWARD P. DAVIS, JR.
SUSAN D. RESLEY
AMANDA PACKEL

*Attorneys for Defendant, Kenneth E. Lonchar*

---

[17] Mr. Lonchar signed certifications on August 13 and 14, 2002 which the SEC alleges are false and misleading. ¶80 He acknowledges that the claims challenging certification allegation fall within the statutory five-year period.