Not Reported in F.Supp.2d                                                                                                        Page 1
Not Reported in F.Supp.2d, 2005 WL 3279894 (N.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

S.E.C. v. Scrushy
N.D.Ala.,2005.
Only the Westlaw citation is currently available.
United States District Court,N.D. Alabama, Southern Division.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,
v.
Richard SCRUSHY, Defendant.
**No. CV-03-J-615S.**

Nov. 29, 2005.

John D. Worland, Jr., Alan M. Lieberman, H. Michael Semler, Washington, DC; Alex Rue, William P. Hicks, Madison Graham Loomis, US Securities & Exchange Commission, Atlanta, GA, for Plaintiff.
Arthur W. Leach, Kile T. Turner, Norman, Wood, Kendrick & Turner, Leslie V. Moore, Moore & Associates LLC, Donald V. Watkins, Donald V. Watkins, PC, Edward E. Angwin, Cochran, Cherry, Givens, Smith, Gulas & Stuckey, Birmingham, AL; David G. Russell, J. Marbury Rainer, Parker, Hudson, Rainer & Dobbs, LLP, Atlanta, GA; Gary H. Baise, Kilpatrick, Stockton, LLP, Washington, DC; and H. Lewis Gillis, Thomas, Means, Gillis & Seay, PC, Montgomery, AL, for Defendant.

JOHNSON, J.
**\*1** Pending before the court is defendant Scrushy's motion to dismiss (doc. 184) the plaintiff's second amended complaint and brief in support of motion to dismiss (doc. 185). The plaintiff filed a response in opposition to the defendant's motion (doc. 188) FN1 and the defendant filed a reply (doc. 189). Having considered said second amended complaint, motion, and briefs, the court is of the opinion that the defendant's motion to dismiss is due to be granted in part and denied in part, as set forth below:

> FN1. The parties are instructed to cite to the Acts in question by their United States Code citation (i.e., 15 U.S.C. § ___) and NOT by the sections of the Act (i.e., Section 20(a) of the Securities Exchange Act).

In ruling on a motion to dismiss the court must view the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief.*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."*Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir.2003). Additionally, on a motion to dismiss securities claims, the court may consider "evidence outside the pleadings that is undisputedly authentic and on which the plaintiff specifically has relied in the complaint[,]" as well as "any relevant documents legally required by and publicly filed with the SEC."*In re CNL Hotels & Resorts, Inc. Securities Litigation,* 2005 WL 1126561, \*5 n. 13 (M.D.Fla.2005), quoting *In re JDN Realty Corp. Sec. Litig.,* 182 F.Supp.2d 1230, 1239 (N.D.Ga.2002)

The second amended complaint contains argument, speculations, hypotheticals, and perhaps an outline of closing statements, none of which are appropriate in a complaint. *See*Rule 8(a), Fed.R.Civ.Pro. ("A pleading which sets forth a claim for relief ... shall contain (2) a short and plain statement of the claim showing that the pleader is entitled to relief ..."). The court is of the opinion that the second amended complaint fails to conform to this basic tenet of pleading.

HealthSouth Corporation is no longer a party to this litigation. Therefore, all references to HealthSouth Corporation, where there is no specific allegation that defendant Scrushy was acting on behalf of and for said corporation, are improper.

The second amended complaint contains numerous

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 24-15   Filed 10/05/2007   Page 2 of 6

Not Reported in F.Supp.2d                                                                                                Page 2
Not Reported in F.Supp.2d, 2005 WL 3279894 (N.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

vague allegations from which the court cannot determine whether the plaintiff is attempting to allege fraud or not. Should the plaintiff intend to state a "fraudulent misrepresentation" claim, the plaintiff must comply with Rule 9(b), Fed.R.Civ.Pro., which requires said the circumstances of said claims to be stated with particularity, namely to allege the proverbial "who, when, where and what" for each allegation of wrongdoing by this defendant. As recently as October 20, 2005, the Eleventh Circuit has held that "[u]nder Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." *Corsello v. Lincare, Inc.,*-F.3d-, 428 F.3d 1008, 2005 WL 2663288 (11th Cir.2005); citing Fed.R.Civ.P. 9(b). Although considering a claim under the False Claims Act, the Court laid forth the basics that a complaint must allege: " 'facts as to time, place, and substance of the defendant's alleged fraud,' [and] 'the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.' " *Id.,* citing *Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1310 (11th Cir.2002)(quoting *Cooper v. Blue Cross & Blue Shield of Fla., Inc.,* 19 F.3d 562, 567-68 (11th Cir.1994)). The Court also noted that "failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Id.* These principles of pleading undoubtedly apply to claims by the SEC. See e.g., *Bellocco v. Curd,* 2005 WL 2675022, *4 (M.D.Fla.2005) ( "Defendants correctly argue that allegations of GAAP violations, standing alone, do not satisfy the particularity requirement of Rule 9(b). 'Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim'.*Ziemba v. Cascade International, Inc.,* 256 F.3d 1194, 1208 (11th Cir.2001) (citing *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 270 (2d Cir.1996))"); *In re Sawtek, Inc. Securities Litigation,* 2005 WL 2465041, *3 (M.D.Fla.2005) (Traditionally, courts measured the sufficiency of a plaintiff's allegations of securities fraud against the requirements of Federal Rule of Civil Procedure 9(b)").

**\*2** "The requirements of Rule 9(b) are met where the plaintiff sets forth: (1) the content of the precise statement or omission; (2) who made, or failed to make, the statement; (3) where the statement was, or should have been, made; (4) when the statement was, or should have been, made; and (5) what the defendants gained as a consequence."*In re Sawtek, Inc. Securities Litigation,* 2005 WL 2465041, *3 (M.D.Fla.,2005); citing *Brooks v. Blue Cross and Blue Shield of Fla.,* 116 F.3d 1364, 1371 (11th Cir.1997). See also *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001).

Due to the vagueness of the second amended complaint, specifically the factual allegations underlying Counts I and II of that pleading, the court ORDERS that Counts I and II of the second amended complaint be and hereby are DISMISSED WITHOUT PREJUDICE. The plaintiff is allowed fifteen (15) days from today's date to file an amended complaint which complies with Rules 8 and 9, Fed.R.Civ.Pro., as set forth above.

The court has also considered the defendant's argument that some of the plaintiff's claims are barred by the applicable statute of limitations. The general statute of limitations, 28 U.S.C. § 2462, is applicable to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise. *3M Company v. Browner,* 17 F.3d 1453, 1461 (D.C.Cir.1994).

Section 2462 provides:
Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

According to Section 2462, civil penalties may not be sought outside five years "from the date when the claim first accrued ..."28 U.S.C. § 2462. Plaintiff contends that the "discovery rule" governs any accrual statute of limitations in federal litiga-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tion involving fraud. Pl. Br. at 33. However, 28 U.S.C. § 2462, has been interpreted not to incorporate a discovery rule. In *3M,* the D.C. Circuit held that "an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty."*3M,* 17 F.3d at 1463. In *3M,* the EPA advanced the "discovery rule" and the court explicitly rejected it as "unworkable; outside the language of the statute; inconsistent with judicial interpretations of § 2462; unsupported by the discovery of injury rule adopted in non-enforcement, remedial cases; and incompatible with the functions served by a statute of limitations in penalty cases."17 F.3d at 1462-1463.

The Eleventh Circuit has adopted the holding of *3M.*In *Trawinski,* the Eleventh Circuit held that the "discovery rule, which might be applicable to statutes of limitations in state tort actions, has no place in a proceeding to enforce a civil penalty under a federal statute. In the Eleventh Circuit, the statute of limitations begins with the violation itself-it is upon violation, and not discovery of harm, that the claim is complete and the clock is ticking."*Trawinski v. United Technologies,* 313 F.3d 1295, 1298 (11th Cir.2002).

**\*3** Therefore, under Eleventh Circuit precedent, which is binding on this court, the appropriate start of the statute of limitations is the date of the violations for which the civil penalties are sought, not the discovery of such violations. Thus, any claim for civil penalties for violations occurring prior to March 19, 1998, are time-barred. It is therefore ORDERED by the court that the defendant's motion to dismiss any claim for civil penalties based on violations prior to March 19, 1998 is GRANTED.

Beginning in paragraph 83, the plaintiff discusses the "Transmittal 1753 Ruse." In its memorandum opinion issued May 7, 2003, this court found that there was no evidence of any "ruse" involving Transmittal 1753. Relevant to the allegations of paragraphs 83-84, the court previously found as follows: FN2

FN2."H.R. references are to the hearing record from the testimony this court heard on the plaintiff's motion for a preliminary injunction, which was denied.

... [O]n May 17, 2002, the Centers for Medicare and Medicaid Services ("CMS") issued Transmittal Letter 1753 regarding Medicare reimbursement provisions for group versus individual physical therapy. HealthSouth did not get a copy of this Transmittal Letter. An attorney working for HealthSouth had seen a copy of it and asked other HealthSouth employees if they had seen it. Upon informing the attorney that they had not, HealthSouth, through Susan Smith, Director of Reimbursement, followed up with Blue Cross Blue Shield. Defendant Exhibit 31. Blue Cross Blue Shield was ambiguous as to the Transmittal Letter's application to HealthSouth. H.R. 1174, 1175. William Horton, corporate counsel for HealthSouth, testified that he could not determine the applicability of Transmittal 1753 just by reading the Transmittal Letter. H.R. 1173. He stated 1753 was a directive to Medicare Part B carriers and its applicability to HealthSouth was unclear. *Id.*

In early June, 2002, Susan Smith received a copy of Transmittal Letter 1753. Defendant Exhibit 31. Later that same month, Blue Cross Blue Shield notified HealthSouth that Transmittal Letter 1753 did not apply to HealthSouth. Defendant Exhibit 31; *see also* Defendant Exhibit 8K. On July 18, 2002, representatives of HealthSouth met with representatives for CMS in Washington D.C. for the purpose of determining whether Transmittal Letter 1753 applied to HealthSouth. CMS was not sure if it applied either and wanted to study the applicability issue further. H.R. 1156; Defendant Exhibits 31 and 8K. On July 30, 2002, certain provisions of the Sarbanes-Oxley Act became effective....

On August 6, 2002, Owens told defendant Scrushy that the impact of Transmittal Letter 1753 would be only 15 to 20 million dollars. H.R. 802-03. In its Amended Complaint, the SEC asserts that 20 million dollars was indeed the impact Transmittal 1753 would have on HealthSouth's profits. Amended Complaint, ¶¶ 35-37. The evidence before the court establishes otherwise. Patrick Foster, President of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF     Document 24-15     Filed 10/05/2007     Page 4 of 6

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 3279894 (N.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

the Inpatient Division, testified that his initial projection of the impact of Transmittal 1753 on solely his division was 22 million dollars. H.R. 856, 909. Larry Taylor, President of the Surgery Centers Division, testified that his projection of the impact of Transmittal 1753 on his division alone was approximately 30 million dollars. H.R. 1004.

**\*4** On August 8, 2002, the Board of Directors met and agreed that management should meet again with CMS in Washington as soon as possible to obtain further clarification and assess the impact on HealthSouth. Defendant Exhibit 8K. As of that date, the impact of Transmittal 1753 was still undetermined. H.R. 1171.

On August 14, 2002, forms 10-Q and 8-K were filed with the SEC. Said forms were signed by defendant Scrushy as CEO and CFO Weston Smith. [FN45] Plaintiff Exhibits 7 and 8.

FN45. Although William Owens had been promoted to CEO on August 8, 2002, his promotion as CEO of HealthSouth did not become effective until the Board of Directors' meeting August 26, 2002. Defendant Exhibit 8M. Thus, defendant Scrushy signed the certification on Form 10-Q filed August 14, 2002.

On August 15, 2002, management representatives from HealthSouth met with representatives from CMS in Washington D.C. again. H.R. 1171, 1176. At that meeting Tom Grissom, author of Transmittal Letter 1753, was present and CMS informed HealthSouth that the guideline did apply to HealthSouth. Defendant Exhibit 31; *see also* H.R. 1169-1178. Mr. Horton advised HealthSouth management that, since there was no definitive information regarding the impact of Transmittal 1753 until August 15, 2002, the lack of 10-Q disclosure regarding this event was merely lack of disclosure of something management did not know and therefore could not disclose. Defendant Exhibit 31; H.R. 1180-1181.

During the following two weeks in August 2002, HealthSouth determined that the financial impact of Transmittal Letter 1753 would be 175 million dollars per year. Defendant Exhibits 31 and 8M. *See also* H.R. 1176-1178. Owens and Susan Smith were involved in calculating this impact. H.R. 1177.

On August 27, 2002, HealthSouth issued a press release regarding this impact. H.R. 1177.

In September, 2002, HealthSouth retained FTI to confirm its analysis of the impact of Transmittal 1753. FTI's initial analysis, although not completed, fully supported HealthSouth's analysis of the impact being 175 million dollars per year. Defendant Exhibit 42. *See also* H.R. 1182. On October 30, 2002, William Owens as CEO of HealthSouth issued a press release that defendant Scrushy was cleared, through an outside investigation by a national law firm, Fulbright & Jaworski L.L.P., of any allegations of inside knowledge concerning the impact of Transmittal 1753. Defendant Exhibit 8R. The Fulbright report concluded:

Fulbright & Jaworski L.L.P .... has uncovered no oral interview or written document (including electronic data) that establishes that Mr. Scrushy knew prior to the time of the transfer by Mr. Scrushy of HEALTHSOUTH common stock to HEALTHSOUTH on or about July 31, 2002, in satisfaction of the principal amount of loan made to him by HEALTHSOUTH under its 1999 Executive Loan Plan of: (I) Transmittal 1753 [the Medicare reimbursement rule change]; (ii) the application of Transmittal 1753 [the reimbursement rule change] to the Company's various outpatient therapy services; or (iii) the Transmittal's potential effect on the Company. *Id.*

**\*5** *S.E.C. v. Healthsouth,* 261 F.Supp.2d 1298, 1320-1322 (N.D.Ala.2003). This court specifically found as follows:No evidence was presented by the SEC during its case in chief regarding Transmittal 1753 although the SEC specifically alleged that "Scrushy authorized a scheme to blame a May 2002 Medicare billing guidance referred to as Transmittal 1753, for reduced future earning...."*See* Amended Complaint §§ 35-39 (doc. 21). As a matter of fact, when defense counsel first elicited evidence regarding this Transmittal at the presentation of Scrushy's case, counsel for the SEC objected. H.R. 880, 1045. However, defendant Scrushy, through corporate counsel Horton, presented uncontradicted evidence that Transmittal 1753 and its effect on HealthSouth was a real problem dealt with as expeditiously as possible and not merely a con-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 24-15   Filed 10/05/2007   Page 5 of 6

Not Reported in F.Supp.2d	Page 5
Not Reported in F.Supp.2d, 2005 WL 3279894 (N.D.Ala.)
**(Cite as: Not Reported in F.Supp.2d)**

venient, imaginary means to offset fictitious profits....

*S.E.C. v. Healthsouth,* 261 F.Supp.2d at 1322-23. Although the court found no evidence to support these allegations the first time the court heard the evidence regarding Transmittal 1753, the identical allegations are repeated in the second amended complaint. *See* Amended Complaint (doc. 21) at ¶¶ 35-37, and Second Amended Complaint, at ¶¶ 83-84. Being of the opinion that this court has already concluded that these allegations fail to state a claim upon which relief may be granted, and further being of the opinion that the plaintiff has included no new allegations concerning Transmittal 1753, the court ORDERS that any claim based on paragraphs 83-84 of the second amended complaint is DISMISSED.[FN3]

> FN3. The court does not find that any specific claim for relief in the second amended complaint is based on these allegations. Therefore, the removal of these allegations from any future amended complaint is not prejudicial to the plaintiff.

Defendant further argues that plaintiff lacks standing to sue under 15 U.S.C. § 78t(a). Defendant's brief in support, at 16. This claim, found for the first time as Count VI of the second amended complaint, asserts that defendant Scrushy was a "control person" of HealthSouth, as defined by the Exchange Act. Second Amended Complaint, ¶ 133.

"The history of the interpretation of section 20 in the courts has hardly been a history of consistency, especially in the context of SEC enforcement actions."*SEC v. Savoy Industries,* 587 F.2d 1149, 1169 (D.C.Cir.1978). By way of an alternative holding, the Sixth Circuit indicated that, in its view, section 20(a) (15 U.S.C. § 78t(a)) was not available to the SEC in an injunctive action because it found the SEC was not a "person" and because section 20(a) was intended to be used solely in the context of private actions. *Id.* See *SEC v. Coffey,* 493 F.2d, 493 F.2d 1304, 1318 (6th Cir.1974).

One year after *Coffey,* the Securities Acts Amendments of 1975 changed § 3(a)(9) of the Act to provide that "[t]he term 'person' means a natural person, company, government, or *political subdivision, agency, or instrumentality of a government."SEC v. First Jersey Securities, Inc.,* 876 F.Supp. 488, 489-490 (S.D.N.Y.1994)(*First Jersey I* ) (emphasis in original). In *First Jersey I,* the court noted that "Section 20(a) contemplates liability to a "person," which according to the current definition, includes the SEC."*First Jersey,* 876 F.Supp. at 490. Furthermore, the statutory language of 15 U.S.C. § 78t(a) characterizes the conduct from the point of view of an enforcement agency such as the SEC. *Id.*

**\*6** The Second Circuit has adopted the view that 15 U.S.C. § 78t(a) is available to the SEC in enforcement proceedings. *SEC v. Savoy,* 587 F.2d at 1170;*SEC v. First Jersey Securities, Inc.,* 101 F.3d 1450 (2d Cir.1996).

Adding weight to this view is an opinion of the Southern District of Ohio, issued three days before defendant presented his motion to dismiss to this court. It held:

Initially, the Court must determine whether the SEC may assert that Smith violated Section 20(a) while also seeking injunctive relief in light of the Sixth Circuit's holding in *SEC v. Coffey,* 493 F.2d 1304 (6th Cir.1974). In that case, the Sixth Circuit held that "Section 20(a) of the 1934 Act may not be relied upon by the SEC in an injunctive enforcement action" because that section "makes a controlling person liable 'to any person to whom such controlled person is liable' and the SEC is not a person. *Id.* at 1318 (citing 15 U.S.C. § 78t(a)). After that decision, however, Congress amended the definition of "person" in the Exchange Act to specifically include governmental entities. 15 U.S.C. § 78(c)(a)(9). As a result, the Second Circuit held in *SEC v. First Jersey Sec., Inc.,* 101 F.3d 1450 (2nd Cir.1996), that "since § 20(a) is available as an enforcement mechanism to 'any person to whom such controlled person is liable,' and the 1934 Act includes government agencies in the definition of 'person,' *see*15 U.S.C. § 78c(a)(9), we have upheld the SEC's authority to pursue an en-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

forcement action under § 20(a)."*Id.* at 1472.The current weight of authority from courts around the country is that the Second Circuit's position on this issue is the correct one. *See, e.g., SEC v. Buntrock,*2004 U.S. Dist. LEXIS 9495, at 27-28 (D.Ill.2004); *SEC v. Enterprises Solutions, Inc.,* 142 F.Supp.2d 561, 575 (S.D.N.Y.2001); *SEC v. Fitzgerald,* 135 F.Supp.2d 992, 1029 (N.D.Cal.2001). In light of the congressional amendment to the definition of "person" and the Second Circuit's holding in *First Jersey,* the Court agrees with those courts and holds that the SEC may pursue an enforcement action pursuant to Section 20(a) against Smith.

According to the Sixth Circuit, the SEC must prove three elements to establish its Section 20(a) claim against Smith. First, Smith "must have committed an underlying violation of the securities laws or the rules and regulations promulgated thereunder."*PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 696-697 (6th Cir.2004). Second, Smith must have directly or indirectly controlled the entity liable for the securities law violation. *Id.* "Control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."17 C.F.R. § 240.12b-2. Third, and finally, because "controlling person" liability is derivative the SEC may hold Smith liable under this theory only if Smith controlled an entity that violated the Exchange Act. *Darby v. Century Bus. Servs.,* 96 Fed. Appx. 277, 286 (6th Cir.2004) (Exchange Act); see also *D.E. & J. Ltd. P'ship v. Conaway,* 133 Fed. Appx. 994, 1001 (6th Cir.2005) (Securities Act).

**\*7** *S.E.C. v. Smith,* 2005 WL 2373849, \*10 (Sept. 27, 2005, S.D.Ohio).

To date, the Eleventh Circuit has not spoken directly to this issue. However, the court finds the reasoning of the Southern District of Ohio to be persuasive. After the Sixth Circuit held that the SEC was not a "person" for § 20(a) purposes, the statute was amended by Congress to include "government, or political subdivision, agency, or instrumentality of a government."See *First Jersey,* 876 F.Supp. at 488-489;15 U.S.C. § 78(c)(a)(9). The SEC fits squarely within the amended definition of "person" under § 78(c)(a)(9).

It is therefore ORDERED by the court that the defendant's motion to dismiss Count VI of the second amended complaint is DENIED.

Inconsideration of the foregoing, the court ORDERS as follows: The court being of the opinion that the complaint fails to set forth its allegations of fraud with the specificity required by Rule 9(b), Fed.R.Civ.Pro., the defendant's motion to dismiss is due to be granted on Counts I and II of the second amended complaint. It is therefore ORDERED by the court that the defendant's motion to dismiss these counts of the complaint is GRANTED. The plaintiff is allowed fifteen (15) days to amend its complaint to set forth its allegations of fraud with particularity.

Having considered defendant's motion to dismiss Counts III, IV, V and VI, and the court being of the opinion that this portion of defendant's motion is due to be denied;

It is therefore ORDERED by the court that said motion is DENIED as to Counts III, IV, V and VI of the second amended complaint.

DONE and ORDERED.

N.D.Ala.,2005.
S.E.C. v. Scrushy
Not Reported in F.Supp.2d, 2005 WL 3279894 (N.D.Ala.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.