1   RICHARD HONG (Trial Counsel) (Admitted in New York)
    SCOTT W. FRIESTAD
2   MELISSA A. ROBERTSON
    JEFFREY B. FINNELL
3   THOMAS D. MANGANELLO

4   Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
5   100 F Street, N.E.
    Washington, DC  20549-4010-A
6   Telephone:  (202) 551-4431
    Facsimile:  (202) 772-9246
7   e-mail:  hongr@sec.gov

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12

13   SECURITIES AND EXCHANGE              Civil Action No.  C 07-3444 JF
     COMMISSION,

14            Plaintiff,                  **PLAINTIFF SECURITIES AND**
                                          **EXCHANGE COMMISSION'S**
15        vs.                             **COMBINED OPPOSITION TO**
                                          **DEFENDANTS LESLIE'S, LOCHAR'S**
16   MARK LESLIE, et al.,                 **AND SALLABERRY'S MOTIONS TO**
                                          **DISMISS THE COMPLAINT AND**
17            Defendants.                 **MOTIONS TO STRIKE**

18                                        Date: January 18, 2008
                                          Time: 9:00 a.m.
19                                        Location: Courtroom 3, 5th Floor
                                                   Hon. Jeremy Fogel
20

21

22

23

24

25

26

27

28   PLAINTIFF SECURITIES AND EXCHANGE
     COMMISSION'S COMBINED OPPOSITION TO
     DEFENDANTS'  MOTIONS TO DISMISS AND/OR
     MOTIONS TO STRIKE
     SEC v. MARK LESLIE, et al., Civil Action No. C 07-
     3444 -JF

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv.

ISSUES TO BE DECIDED ................................................................................. 2

STATEMENT OF THE CASE.............................................................................. 3

I.  Procedural History....................................................................................... 3

II. The Complaint's Allegations.......................................................................... 3

    A.  The AOL Transaction ............................................................................ 4

        1.  Leslie and Sallaberry Agreed to the AOL Round-trip Transaction
           and Lonchar Improperly Booked The Revenue From The Transaction........... 5

        2.  Leslie, Sallaberry And Lonchar Then Lied To And Withheld Material
           Information From Veritas' Independent Auditors About The AOL
           Transaction And Obtained An Unqualified Audit Report On The 2000
           Financial Statements From The Auditors .......................................... 7

              a.  Leslie misrepresented to the auditors .................................... 8

              b.  Sallaberry misrepresented to the auditors ............................. 9

              c.  Lonchar misrepresented to the auditors.............................. 10

              d.  Leslie and Lonchar gave a materially misleading representation
                 letter to the auditors .......................................................... 11

        3.  The Auditors Issued An Unqualified Audit Report Based Upon The False
           Representations Of Leslie, Lonchar, And Sallaberry..................... 12

        4.  Leslie And Lonchar Approved The Public Disclosures Of The False And
           Misleading Financial Results ....................................................... 12

        5.  The AOL Round-Trip Transaction Materially Distorted Veritas'
           Fourth Quarter 2000 Financial Results ........................................... 12

        6.  Lonchar, Sallaberry And Leslie Participated Or Consulted In Veritas'
           Effort To Quash A News Story About The AOL Transaction................. 12

        7.  Lonchar Gave A False Statement During An Internal Review Of The AOL
           Transaction....................................................................................... 13

i

8.   Veritas Announced In 2003 That It Would Re-State To Reverse The
Improperly Recognized Revenue From The AOL Transaction ....................13

B.   The "Smoothing" of Veritas' Financial Results from 2000 through 2002.................13

1.   Lonchar Improperly Recorded And Maintained Accrued Liabilities.............13

2.   Lonchar Improperly Cut Off Recognition Of Professional
Service Revenue.........................................................................................15

3.   Lonchar Improperly Manipulated Veritas' Deferred Revenue Balance.........16

4.   Lonchar Signed False And Misleading Representation Letters....................17

5.   Lonchar Falsely Certified Veritas' Covered Reports In August 2002 ...........19

III.   Violations Alleged Against Defendants Leslie, Lonchar and Sallaberry ...............................19

IV.   Relief Sought Against Defendants Leslie, Lonchar and Sallaberry.......................................21

ARGUMENT .................................................................................................................................21

I.   Standard of Review for a Rule 12(b)(6) Motion to Dismiss ....................................................21

II.   The *Scienter*-based Fraud Violations Against Leslie, Lonchar, and Sallaberry
Meet the Applicable Pleading Standards under Fed. R. Civ. P.  9(b) and 12(b)(6)...............22

A.   Leslie's Arguments ........................................................................................29

B.   Lonchar's Arguments .....................................................................................34

1.   As To The AOL Transaction ...........................................................35

2.   For the "smoothing" of Veritas' financial results in 2000-2002.......................38

C.   Sallaberry's Arguments..................................................................................40

III.   The Non-*Scienter* Based Securities Violations (Part Of The First, The Third And The
Fifth Claims) Against Leslie, Lonchar, And Sallaberry, Even Assuming *Arguendo*
That Rule 9(B) Is Applicable To Those Violations, Meet The Pleading Standards
Under Rule 12(b)(6) Motion...................................................................................42

IV.   The Aiding and Abetting Violations (Part of the Fourth  Claim) Against Lonchar
and the Aiding and Abetting Violations (the Sixth  Claim) Against Leslie,
Lonchar, and Sallaberry, Even Assuming *Arguendo* that Rule 9(b) Is Applicable
for All Those Violations, Meet the Pleading Standards under Rule 12(b)(6)........................44

V.   The Materiality Element With Respect to the AOL Transaction Has Been
     Sufficiently Alleged .................................................................................................47

VI.  Whether Any of the Remedies Challenged by Leslie, Lonchar, and Sallaberry
     Should be Stricken Under Fed. R. Civ. P. 12(f) or Dismissed Under Fed. R. Civ. P.
     12(b)(6) as Time-Barred .........................................................................................50

     A.   A Rule 12(F) Motion To Strike Is An Improper Vehicle To Consider For
          Striking Of Certain Remedies At This Pleading Stage ....................................51

     B.   A Rule 12(b)(6) Motion to Dismiss Is an Improper Vehicle to Consider
          Dismissing Certain Remedies at This Pleading Stage .................................53

     C.   There Appear to be Legal and Factual Issues Associated With the Defendants'
          Statute of Limitations Arguments ............................................................57

          1.   The Ninth Circuit Has Held that No Statute of Limitations Apply to SEC
               Enforcement Actions ..................................................................57

          2.   Even If 28 U.S.C. § 2462 Were Determined to Be Applicable to SEC
               Enforcement Actions in the Ninth Circuit, It Only Applies to One Remedy --
               Civil Penalties ...........................................................................59

          3.   The Commission's Complaint Has Alleged Defendants' Violations
               Occurred Within Five Years of the Filing of the Complaint .......................61

CONCLUSION...........................................................................................................66

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abrams v. Baker Hughes, Inc.,* 292 F.3d 424 (5th Cir. 2002).............................................38

*Adam v. Silicon Valley Bancshares,* 884 F. Supp. 1398 (N.D. Cal. 1995).......................... 22

*In re ATMEL Corp. Derivative Litig.,* 2007 WL 2070299 (N.D. Cal. 2007).......................64,65

*Augustus v. Board of Public Instruction of Escambia County, Florida,*
  306 F.2d 862 (5th Cir. 1962).............................................................................53

*Bailey v. Glover,* 88 U.S. 342 (1874).................................................................63

*Basic Inc. v. Levinson,* 485 U.S. 224 (1988) ......................................................47,49

*Burlington Coat Factory Sec. Litigation,* 114 F.3d 1410 (3d Cir. 1997) ............................ 49

*Capozzi v. United States,* 980 F.2d 872 (2d Cir. 1992).................................................58

*Carley Capital Group v. Deloitte & Touche, LLP,* 27 F. Supp. 2d 1324 (N.D. Ga. 1998)........... 50

*Colaprico v. Sun Microsystem, Inc.,* 758 F. Supp. 1335 (N.D. Cal. 1991)..................................51

*Conley v. Gibson,* 355 U.S. 41 (1957)................................................................... 22

*Continental Bank, Nat'l Ass'n v. Village of Ludlow,* 777 F. Supp. 92 (D. Mass 1991) ..........64, 65

*Cooper v. Pickett,* 137 F.3d 616 (9th Cir. 1997)....................................................24,39

*Duke Energy Corp. Sec. Litig.,* 282 F. Supp. 2d 158 (S.D.N.Y. 2003)....................................... 49

*Durning v. Citibank Int'l,* 990 F.2d 1133 (9th Cir. 1993)..............................................64, 65

*E.I. Dupont De Nemours & Co. v. Davis,* 264 U.S. 456 (1924)..................................................58

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185 (1976)...................................................... 24

*Exploration v. United States,* 247 U.S. 435 (1918).....................................................63

*FEC v. Williams,* 104 F.3d 237 (9th Cir.).........................................................55, 59,61,63

*Fecht v. Price Co.,* 70 F.3d 1078 (9th Cir. 1995)....................................................23, 47

PLAINTIFF SECURITIES AND EXCHANGE                    iv
COMMISSION'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
SEC v. MARK LESLIE, et al., Civil Action No. C 07-
3444 –JF

*Ganino v. Citizens Utilities Co.*, 228 F3d 154 (2d Cir. 2000)........................................ 49

*Glassman v. Computervision Corp.*, 90 F.3d 617 (lst Cir. 1996)....................................49

*Glenbrook Capital Limited Partnership v. Kuo*, 2007 WL 2601260 (N.D. Cal. 2007)......................61

*Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir.1990)(*en banc*)..........................................24

*Holmberg v. Arbrecht*, 327 U.S. 392 (1946)..........................................................58, 63

*In re AOL Time Warner, Inc. Sec. And "ERISA" Litigation*, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. 2006)..................................................................................49

*In re AOL Time Warner, Inc. Sec. Litig.*, 381 F. Supp.2d 192, 229-30 (S.D.N.Y. 2004)...............37

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005)...........................................47

*In re CornerStone Propane Partners, L.P. Securities Litig.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005)..........................................................30, 31

*In re Convergent Technologies Second Half 1984 Sec. Litig.*, 1990 WL 606271 (N.D. Cal. 1990)............................................................................. 49

*In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001)................................38

*In re Daou System, Inc.*, 411 F.3d 1006 (9th Cir. 2005)...........................................38,40

*In re Ditech Communications Corp. Securities Litig.*, 2007 WL 2990532 (N.D. Cal. 2007)...............61

*In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541 (9th Cir. 1994)..........................*passim*

*In re Silicon Storage Technology*, 2006 WL 648683 (N.D. Cal. 2006)............................... 30

*In re Syncor Intern'l Corp. Securities Litig.*, 327 F. Supp. 2d 1149 (C.D. Cal. 2004)......................30

*Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288 (9th Cir. 1997), *rev'd on other grounds*, 525 U.S. 432 (1999)........................................................................ 21,37,53

*Johnson v. SEC*, 87 F.3d 484 (D.C. Cir. 1996)...................................................... 58

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1995).................................................... 47

PLAINTIFF SECURITIES AND EXCHANGE                    v
COMMISSION'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
SEC v. MARK LESLIE, et al., Civil Action No. C 07-
3444 –JF

1    *Lampf, Pleva, Lipkin, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773
     (1991)..............................................................................................................................64

2    *Law v. Medco Research, Inc.*, 113 F.3d 781 (7th Cir. 1997)...........................................63

3    *Lucas v. Dept. of Corrections*, 66 F.3d 245 (9th Cir. 1995).......................................22,57

4    *NL Industries, Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986).........................................22

5    *Parnes v. Gateway*, 122 F.3d 539 (8th Cir. 1997).........................................................49

6    *Ponce v. SEC*, 345 F.3d 722 (9th Cir. 2003)..................................................................43

7    *PYR Energy Corp. v. Samson Resources Co.*, 2007 WL 858804 (E.D. Tex 2007).......32,33

8    *SEC v. Alexander*, 2007 WL 2816195 (E.D. N.Y. 2007)........................................54,56, 63

9    *SEC v. Baxter*, 2007 WL 2013958 (N.D. Cal. 2007) ..................................................34,43

10   *SEC v. Buntrock*, 2004 WL 1179423 (N.D. Ill. 2004)................................................53,63

11   *SEC v. C. Jones & Co.*, 312 F. Supp. 2d 1375 (D. Colo. 2004)......................................53

12   *SEC v. Calvo*, 378 F.3d 1211 (11th Cir. 2004)...............................................................58

13   *SEC v. Caserta*, 75 F. Supp. 2d at 92-93.......................................................................49

14   *SEC v. Cohen*, 2007 WL 1192438 (E.D. Mo. 2007).......................................................43

15   *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001)..........................................24,42

16   *SEC v. DiBella*, 409 F. Supp. 2d 122 (D. Conn. 2006)...................................................58

17   *SEC v. Fehn*, 97 F.3d 1276 (9th Cir. 1996)....................................................................44

18   *SEC v. Glick*, 1980 WL 1414 (D. Nev. 1980)................................................................60

19   *SEC v. ICN Pharmaceuticals, Inc.*, 84 F. Supp. 2d 1097 (C.D. Cal. 2000)...................22,30

20   *SEC v. Jones*, 476 F.Supp.2d 374 (S.D. N.Y. 2007)........................................................58

21   *SEC v. Jones*, 2006 WL 1084276 (S.D. N.Y. 2006)......................................................55,57

22   *SEC v. Koracorp Industries, Inc.*, 575 F.2d 692 (9th Cir. 1978)......................................60

PLAINTIFF SECURITIES AND EXCHANGE
COMMISSION'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
SEC v. MARK LESLIE, et al., Civil Action No. C 07-
3444 –JF

vi

*SEC v. Levin*, 232 F.R.D. 619 (C.D. Cal. 2005)...................................................... 30,51,52

*SEC v. Lorin*, 869 F. Supp. 1117 (S.D.N.Y. 1994) ........................................................... 57

*SEC v. McCaskey*, 56 F. Supp. 2d 323 (S.D.N.Y. 1999) ................................................ 60

*SEC v. Miller*, 2006 WL 2189697 (N.D. Ga. 2006)....................................................56,63

*SEC v. McNulty*, 137 F.3d 732 (2d Cir. 1998)................................................................ 43

*SEC v. Parnes*, 2001 WL 1658275 (S.D.N.Y. 2001)...............................................31,34,49

*SEC v. Phan*, 500 F.2d 895 (9th Cir. 2007)..................................................................... 47

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993)............................................................ *passim*

*SEC v. Rubera*, 350 F.3d 1084 (9th Cir. 2003)................................................................32

*SEC v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995)........................................................ 52

*SEC v. Sandifur*, 2006 WL 538210 (W.D. Wash. 2006)................................................. 52

*SEC v. Savoy Industrial, Inc.*, 587 F.2d 1149 (D.C. Cir. 1978)...................................... 43

*SEC v. Schiffer*,  1998 WL 226101 (S.D.N.Y. 1998)...................................................... 60

*SEC v. Tambone*, 417 F. Supp. 2d 127 (D. Mass 2006) ................................................. 34

*SEC v. Williams*, 884 F. Supp. 28 (D. Mass. 1995).................................................. >59,60

*Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006)................................. 37

*3M Co. v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994)........................................ 58,56,59, 64

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001)...................................................................... 63

*Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d 162 (4th Cir. 2007).......25,37,50

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007)
 (emphasis in original).................................................................................................35,37

*Tonka Corp. v. Rose Art Industrial, Inc.*, 836 F. Supp. 200 (D.N.J. 1993)...................... 52

*Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir.1973)..........................................23

PLAINTIFF SECURITIES AND EXCHANGE                        vii
COMMISSION'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
SEC v. MARK LESLIE, et al., Civil Action No. C 07-
3444 –JF

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996)......................................................23

*Wenger v. Lumisys*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998)...............................................30,42

*Westlands Water District v. Firebaugh Canal*, 10 F.3d 667 (9th Cir. 1993).....................22

*William Z. Salcer, Panfield, Edelman v. Envicon Equities Corp.*, 744 F.2d 935 (2d Cir. 1984), *vacated on other grounds*, 478 U.S. 1015 (1986)...............................................................52

**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(2)..................................................................................... 30

28 U.S.C. § 2462.............................................................................................50-62

Fed. R. Civ. P. 9(b).....................................................................................*passim*

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

Fed. R. Civ. P. 26(a).............................................................................................3

Section 17(a)(1)............................................................................................... 24

**MISCELLANEOUS**

5A Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 1357 (2d ed. 1990) ...........................................22,52

PLAINTIFF SECURITIES AND EXCHANGE                          viii
COMMISSION'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
SEC v. MARK LESLIE, et al., Civil Action No. C 07-
3444 –JF

1    Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully

2  submits this combined opposition to defendants Mark Leslie's, Kenneth E. Lonchar's, and Paul A.

3  Sallaberry's motions to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b) and Leslie's and Sallaberry's

4  

5  motions to strike under Fed. R. Civ. P. 12(f).

6    While the three defendants filed three separate motions and briefs, with numerous exhibits,

7  each endeavoring to advance a myriad of arguments for dismissal or striking with prejudice, the

8  

9  defendants' submissions boil down to the following:  (1) that the Commission's Complaint does not

10  plead the federal securities violations against each of the defendants with particularity; and (2) that

11  certain of the remedies that the Commission seeks against each of the defendants in its Complaint are

12  time-barred.

13    As shown below, the defendants' arguments have no merit.  The Commission's well-pled

14  Complaint has sufficiently alleged the claims to withstand any motion to dismiss or motion to strike.

15  The Commission has set forth *scienter*-based violations (fraud claims) against each of the defendants

16  

17  with the required particularity under Fed. R. Civ. P. 9(b) and the applicable Ninth Circuit precedents.

18  Even in the non-*scienter* based violations (non-fraud claims) against the defendants, where Rule 9(b)

19  particularity is not required, the Commission has nonetheless alleged the violations with

20  particularity.  The Commission's Complaint adequately identifies the circumstances of the fraud so

21  that the defendants can prepare an adequate answer.

22  

23    To be sure, recognizing that the Commission's Complaint amply satisfies Fed. R. Civ. P. 9(b)

24  and the applicable Ninth Circuit precedents, the defendants attempt to impermissibly impose

25  additional, non-applicable pleading requirements: under the Private Securities Litigation Reform Act

26  ("PSLRA"), which does not apply to the Commission's enforcement actions such as this one; under

27  the more stringent standards outside the Ninth Circuit; or under the theory that the Commission,

28  

PLAINTIFF SEC'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

because of its administrative investigatory powers, should be held to a higher pleading standard

beyond the Ninth Circuit's 9(b) requirements. These arguments should be rejected.

Moreover, the Commission's requests for remedies against each of the defendants are, as a matter of law, available and not time-barred under the Ninth Circuit standard in *SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993), which none of the defendants cites even once, and other persuasive authorities. Put another way, the Commission, acting in its sovereign capacity enforcing securities laws, is not subject to the same time-bars as a private plaintiff.

To the extent that there are factual or legal issues on the timeliness of any remedy sought by the Commission, those issues, which the Commission contends will be resolved in its favor after discovery, should not be prematurely resolved at this pleading stage where there has been no showing of prejudice by the defendants.

Accordingly, the defendants' motions should be denied in their entirety.

## ISSUES TO BE DECIDED

1.    Whether the *scienter*-based fraud violations (part of the First and the Second Claims of the Complaint) against Leslie, Lonchar, and Sallaberry meet the applicable pleading standards under Fed. R. Civ. P. 9(b) and 12(b)(6).

2.    Whether the non-*scienter* based securities violations (part of the First, the Third and the Fifth Claims) against Leslie, Lonchar, and Sallaberry, even assuming *arguendo* that Rule 9(b) is applicable to those violations, meet the pleading standards under Rule 12(b)(6).

3.    Whether the aiding and abetting violations (part of the Fourth Claim) against Lonchar and the aiding and abetting violations (the Sixth  Claim) against Leslie, Lonchar, and Sallaberry, even assuming *arguendo* that Rule 9(b) is applicable to those violations, meet the pleading standards under Rule 12(b)(6).

4.    Whether the materiality element with respect to the AOL transactions has been sufficiently alleged.

5.    Whether any of the remedies challenged by Leslie, Lonchar, and Sallaberry should be stricken under Fed. R. Civ. P. 12(f) or dismissed under Fed. R. Civ. P. 12(b)(6) as time-barred.

## STATEMENT OF THE CASE

### I.    Procedural History

The Commission filed its Complaint against, among others, defendants Leslie, Lonchar, and Sallaberry on July 2, 2007.[1]  The Commission and Leslie, Lonchar, and Sallaberry have exchanged their respective Rule 26 Initial Disclosures, and the Commission has produced documents and electronic databases to the three defendants pursuant to Fed. R. Civ. P. 26(a).  On October 5, 2007, this Court held an Initial Case Management Conference, at which the Court held in abeyance any setting of the discovery schedule, including when fact depositions may begin, or the trial date until a hearing on January 18, 2008.

### II.    The Complaint's Allegations

The Complaint alleges that Mark Leslie was the Chief Executive Officer ("CEO") and Chairman of the board of directors of Veritas Software Corporation ("Veritas"), a publicly-held software company in Cupertino, California.  Complaint ("Compl.") ¶¶ 1, 9, 14.  Leslie resigned as Veritas' CEO on December 31, 2000, but continued to serve on its board of directors until May 31, 2004.  Compl. ¶ 9.  Leslie profited by selling Veritas stock at prices inflated by the misstatement of the revenue related to the AOL transaction and by receiving a bonus from Veritas based on Veritas' artificially inflated financial results.  Compl. ¶ 81 .

---

[1] The other two defendants named in the Complaint, Michael M. Cully and Douglas S. Newton, have already settled with the Commission, and this Court entered final judgments as to them on August 2, 2007.

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    3
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1  Kenneth E. Lonchar was Veritas' Chief Financial Officer ("CFO") from April 1997 until

2  October 2002. Compl. ¶ 10. Lonchar was licensed as a Certified Public Accountant ("CPA") in

3  Idaho. *Id.* Lonchar profited by selling Veritas stock at prices inflated by the misstatement of the

4  financial statements and by receiving a bonus from Veritas based on Veritas' artificially inflated

5  financial results. Compl. ¶ 82.

6

7  Paul A. Sallaberry was Veritas' executive vice president of Worldwide Field Operations from

8  January 2000 through January 2003. Compl. ¶ 11. Sallaberry was Veritas' head of sales. Compl. ¶

9  2. Sallaberry profited by selling Veritas stock at prices inflated by the misstatement of the revenue

10  related to the AOL transaction and by receiving a bonus from Veritas based on Veritas' artificially

11  inflated financial results. Compl. ¶ 81.

12

13  Leslie, Lonchar, and Sallaberry knowingly participated in a fraudulent scheme by artificially

14  inflating Veritas' publicly reported revenues and earnings through a round-trip transaction with

15  America Online, Inc. ("AOL") in 2000 and by lying to Veritas' outside auditors. Complaint

16  ("Compl.") ¶ 1. Further, Lonchar, with the participation and assistance of two other co-defendants,

17  Michael M. Cully and Douglas S. Newton, intentionally manipulated and distorted Veritas' reported

18  earnings through "smoothing" its financial results from at least 2000 through 2002 and that Lonchar

19  lied to and/or failed to disclose to Veritas' outside auditors their fraudulent conduct. Compl. ¶ 1.

20  As a result of the defendants' actions, Veritas reported materially false and misleading financial

21  results in periodic reports filed with the Commission and other public statements from at least 2000

22  through 2003 and in its January 28, 2004 earnings release of fourth quarter and annual results for

23  2003. Compl. ¶ 4.

24

25  **A.     The AOL Transaction**

26

27  The Complaint alleges that in 2000, Veritas artificially inflated reported revenues by

28  approximately $20 million in connection with a software sale to AOL. Compl. ¶ 2. Leslie

PLAINTIFF SEC'S COMBINED OPPOSITION TO          4
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1  authorized the transaction and directed Sallaberry to negotiate the terms and execute the transaction

2  documents.  *Id.*  Lonchar applied an accounting treatment to the transaction that did not comply with

3  generally accepted accounting principles ("GAAP").  *Id.*  All three defendants – Leslie, Sallaberry,

4  and Lonchar -- concealed the true nature of the AOL transaction, which allowed Veritas to artificially

5  inflate its reported revenue, from Veritas' outside auditors. Compl. ¶¶ 2, 50.

6

7      1.    **Leslie and Sallaberry agreed to the AOL round-trip transaction and Lonchar**

8  **improperly booked the revenue from the transaction**: During the summer of 2000, Veritas began

9  negotiating with AOL to sell an unlimited license for all of Veritas' software products as well as

10  certain service, consulting and training commitments (the "License").  Compl. ¶ 16.  Veritas' sales

11  personnel, under Sallaberry's direction and supervision, handled most of the License negotiations.

12  *Id.*  During negotiations in late August and September 2000, AOL proposed that Veritas purchase

13  online advertising from AOL.  Compl. ¶ 17.  At the time, Veritas had no budget or need for AOL's

14  online advertising and rejected the proposal.  *Id.*

15

16      By mid-September 2000, AOL and Veritas had agreed on a $30 million purchase price for the

17  License, which represented a 65% discount.  Compl. ¶ 18.  Veritas and AOL agreed to close the

18  transaction by the end of the third quarter (September 30, 2000).  *Id.*  The $30 million transaction

19  was the largest transaction in Veritas' history.  Compl. ¶ 19.

20

21      On September 29, 2000, just hours before Veritas and AOL were set to execute the License

22  agreement, AOL's lead negotiator telephoned Leslie and asked, as a favor, for Leslie to allow AOL

23  to pay an additional $20 million for the license and Veritas' agreement to purchase a comparable

24  amount of AOL online advertising.  Compl. ¶ 20.  The AOL negotiator explained that AOL would

25  simply take a "shallower" (less favorable) discount on the license.  *Id.*  Based upon his discussion

26  with AOL's lead negotiator, Leslie understood that AOL was asking to pay a higher price for the

27  same license.  *Id.*

28  PLAINTIFF SEC'S COMBINED OPPOSITION TO            5
    DEFENDANTS' MOTIONS TO DISMISS AND/OR
    MOTIONS TO STRIKE
    Civil Action No. C 07-3444 -JF

1  Leslie agreed to the proposal, even though Veritas did not need or want millions of dollars of

2  online advertising from AOL. Compl. ¶ 21. At the time, Leslie had never purchased online

3  advertising and had no idea if Veritas had a campaign in place to use the advertising. *Id.*

4  After his telephone conversation with AOL on September 29, 2000, Leslie directed

5  Sallaberry to contact AOL to work out the details of the transaction. Compl. ¶ 22. Leslie told

6
7  Sallaberry that the License was not to be changed in any way that would increase the real, out-of-

8  pocket costs to Veritas. *Id.*

9  That same day, Sallaberry then telephoned a sales executive at AOL to effectuate the

10  agreement. Compl. ¶ 23. The AOL sales executive repeated the proposal previously made to

11  Leslie: that AOL would pay Veritas $50 million for the License, instead of $30 million, if Veritas

12  would buy $20 million of online advertising from AOL. *Id.* Sallaberry affirmed the AOL proposal,

13
14  after consulting with Lonchar and Leslie. Compl. ¶ 23. The terms of the License remained

15  essentially unchanged despite the $20 million increase in the price. *Id.*

16  Nonetheless, that same day, Lonchar told Sallaberry to document the transaction as if it were

17  two separately negotiated, *bona fide* contracts. Compl. ¶ 25. Moreover, despite his knowledge of

18  the true nature of the AOL transaction, Lonchar improperly booked the entire $50 million as license

19
20  and service revenue beginning in the fourth quarter of 2000 through 2002. Compl. ¶ 30. Lonchar's

21  accounting for the transaction did not conform to GAAP. *Id.*

22  Sallaberry, who had no marketing experience, reviewed and executed the AOL advertising

23  purchase – the largest in Veritas' history – without consulting anyone in the marketing department.

24  Compl. ¶ 24. Sallaberry did not try to negotiate any terms of AOL's standard form advertising

25
26  contract, notwithstanding Veritas' $20 million lump-sum payment for advertising, $6.6 million of

27  which was to begin running within a matter of days. *Id.* The advertising contract gave AOL

28  complete discretion as to where the advertising would be run. *Id.*

1  Still that same day, Sallaberry executed on behalf of Veritas both a contract to sell the

2  License to AOL for $50 million and a contract to buy $20 million of online advertising from AOL.

3  Compl. ¶ 25. The License provided for payment within 30 days from the date of invoice while the

4  advertising agreement required payment within 30 days of the contract date – typical payment terms

5  for each company. Compl. ¶ 26. Sallaberry and his AOL counterpart, however, verbally agreed to

6
7  make simultaneous wire payments of their respective amounts due. *Id.* Sallaberry did not document

8  this agreement. *Id.*

9  On October 2, 2000, Leslie revealed the true nature of the transaction in an email

10  correspondence, explaining: "We closed a $30 million deal with AOL (which will be taken to

11  revenue in Q4). However, at the eleventh hour we got a request from AOL to gross up the deal by

12  $20 million and take back an equal amount of dollars in paid advertising to AOL." Compl. ¶ 27.

13
14  In early October 2000 and in response to Leslie's email, he was warned at least twice of the

15  "sensitive" accounting issues arising from the AOL transaction. Compl. ¶ 28. Leslie was urged to

16  take extra caution in making sure the company's outside auditors agreed with the Company's

17  revenue recognition for the AOL transaction. *Id.*

18
19  In November 2000, when Veritas' $20 million payment pursuant to the terms of the

20  advertising contract was due, AOL had not yet paid the $50 million under the License. Compl. ¶

21  29. Sallaberry insisted that Veritas hold AOL to his verbal agreement with AOL that these

22  payments be made by simultaneous wire transfers. *Id.* On December 1, 2000, Sallaberry and

23  Lonchar were told the companies made these simultaneous wire transfer payments that day. *Id.*

24  **2.** **Leslie, Sallaberry and Lonchar then lied to and withheld material information**

25  **from Veritas' outside auditors about the AOL transaction and obtained an unqualified audit**

26
27  **report on the 2000 financial statements from the auditors**: In December 2000, Veritas' outside

28  auditors reviewed the License as part of their regular review of significant revenue transactions for

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    7
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1   the fourth quarter of 2000. Compl. ¶ 31. Lonchar and Sallaberry did not disclose to the auditors the

2   contingent nature of the advertising deal – namely, that Veritas only agreed to enter into the

3   advertising contract after AOL agreed to fund that "purchase" by inflating the price of the License.

4   *Id.* As a result, the auditors reviewed and treated the License as a "stand-alone" revenue contract.

5   *Id.*

6

7        In January 2001, during its audit, Veritas' outside auditors discovered the concurrent nature

8   of the contracts with AOL and questioned whether Veritas could recognize revenue on the License in

9   the amount of $50 million. Compl. ¶ 32. To determine whether Veritas could substantiate its

10  accounting for the contracts at their gross amounts, the auditors spoke to Leslie, Sallaberry, and

11  Lonchar to understand the business rationales behind the contracts and justify the prices paid. *Id.*

12  Leslie, Sallaberry, and Lonchar each knowingly failed to inform the outside auditors of the true,

13  contingent nature of the AOL contracts, including the last-minute negotiations that resulted in the

14  $20 million inflation of the License price and $20 million advertising deal. Compl. ¶ 33.

15

16       Thus, the outside auditors, based upon the false representations made by Leslie, Lonchar, and

17  Sallaberry, ultimately issued an unqualified audit report on the 2000 financial statements. Compl. ¶

18  48.

19

20       **a.**    <u>**Leslie misrepresented to the auditors**</u>: When the outside auditors discovered the

21  license and advertising contract were executed on the same day, they required that additional

22  procedures be performed. Compl. ¶ 37. The auditors informed Leslie of the accounting literature

23  on point, made inquiries regarding the substance of the transactions, and explained to him the

24  accounting issues implicated by the transactions. *Id.*

25

26       Leslie did not ask whether Lonchar had discussed or cleared the accounting with the auditors.

27  Compl. ¶ 38. Instead, Leslie falsely represented to the auditors, among other things, that: (1) the

28  two AOL contracts were entered into for separate and valid business reasons; (2) the AOL software

sale and advertising purchase were separate and not part of any overall arrangement between the two companies; (3) AOL's commitment to pay the fee for the license was, from its initiation, never contingent upon Veritas entering into the advertising purchase; (4) Veritas needed this online advertising as part of its campaign for stronger brand recognition; and (5) the contracts were fairly priced at $50 million and $20 million, respectively. *Id.*

Leslie did not disclose to the outside auditors the contingent nature of the contracts, including the last-minute negotiations that resulted in the $20 million inflation of the License price and $20 million advertising deal, or his role in the negotiations. Compl. ¶ 38.

During the January 2001 audit committee meeting at which the AOL transaction was discussed with the outside auditors, Leslie again failed to inform the auditors of the contingent nature of the software sale and advertising purchase and the last-minute negotiations that resulted in the $20 million inflation of the License price and $20 million advertising deal as well as his role in the negotiations. Compl. ¶ 46.

b.    **Sallaberry misrepresented to the auditors**: In January 2001, Sallaberry played a critical role in deceiving the outside auditors about the two contracts he signed with AOL. Compl. ¶ 38. As part of Veritas' effort to justify its accounting for the AOL contracts, Sallaberry (1) lied to and misled the outside auditors in discussions with the audit team; (2) participated in, or at least was aware that others were, altering or withholding documents created contemporaneously with the transaction that described it as a $30 million license at a 65% discount and directed the creation of documents to support the $50 million price and 42% discount as being fair and reasonable; and (3) interceded with AOL to have his AOL counterpart sign an audit confirmation for Veritas' outside auditors in time for Veritas' earnings release. *Id.*

Sallaberry spoke with Veritas' outside auditors about the sales process preceding the license agreement, the overall business context for the transaction with AOL, the reason for the size of the

license, the discount percentage, the business reasons and scope of the transaction and AOL's expected deployment of the software. Compl. ¶ 40. The auditors also asked Sallaberry whether the size and scope of the transaction was comparable to prior transactions. *Id.* Instead of being truthful, Sallaberry provided false and misleading responses. *Id.*

In particular, when a member of the audit team asked Sallaberry whether the software sales transaction was contingent upon or connected to the advertising arrangement, Sallaberry falsely represented that it was not. Compl. ¶ 41. Sallaberry concealed the contingent nature of the advertising deal by falsely claiming that the marketing department, not Sallaberry, negotiated the advertising deal. Compl. ¶ 42. Sallaberry did not disclose to Veritas' outside auditors the last minute negotiations that resulted in the $20 million inflation of the License price and $20 million advertising deal. Compl. ¶ 43. Instead, Sallaberry participated in the preparation of and submission to Veritas' outside auditors of documents that justified the $50 million License price and concealed the true nature of the AOL transaction. Compl. ¶ 45. Sallaberry directed his sales team to collect documentation to falsely support the value of the license at $50 million and a 42% discount. *Id.*

Sallaberry did not disclose to the auditors that he and his AOL counterpart agreed to make payments under the contracts by simultaneous wire transfers, contrary to the express terms of the two agreements, and that he later insisted that payments be made simultaneously when AOL pressed for Veritas' payment on the stated contract terms. Compl. ¶ 44.

c.    **Lonchar misrepresented to the auditors**: Lonchar lied to Veritas' auditors, telling them: (1) the License and the advertising contract were entered into for separate and valid business reasons and were not part of any overall arrangement; (2) the transactions were separately negotiated by executives in different functional organizations within Veritas; (3) both contracts were fairly valued; (4) Veritas entered into the advertising contract in order to strengthen brand name recognition; and (5) AOL's commitment to pay the License fee was never contingent on Veritas

PLAINTIFF SEC'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

10