1       The second non-GAAP accounting practice involved improperly cutting off recognition of

2   professional service revenue (Compl. ¶¶ 59-62).  Lonchar knew that Veritas' failure to recognize

3   revenues when they were earned did not comply with GAAP (Compl. ¶ 61).  Nonetheless,

4   Lonchar instructed the finance department to stop accruing and recognizing professional service

5   revenue on services that Veritas had delivered and therefore earned in the current quarter upon

6   reaching Lonchar's targeted revenue (Compl. ¶¶ 59, 60).  Through this practice, Lonchar improperly

7   managed Veritas' quarterly professional service revenues and created false and misleading quarterly

8   financial results (Compl. ¶¶ 63, 65).

9

10      The third non-GAAP accounting practice involved improperly inflating its reported deferred

11  revenue on its balance sheet for the second quarter of 2002 (Compl. ¶¶ 67, 68).  Concerned that

12  Veritas' declining deferred revenue balance would be interpreted by analysts as a sign that Veritas'

13  business was weakening, Lonchar and a subordinate devised a scheme to improperly inflate the

14  deferred revenue balance (Compl. ¶¶ 67, 68).  When the outside auditors questioned him regarding

15  the inflated deferred revenue balance, Lonchar failed to advise the auditors the truth.  (Compl. ¶ 71).

16

17      In 2001 and 2002, Lonchar signed and submitted false and misleading representation letters

18  to the outside auditors by failing to disclose the three non-GAAP accounting practices concerning

19  Veritas' excess and unsubstantiated accruals, professional service revenues, and deferred revenues

20  (Compl. ¶¶ 74-76).

21

22      On August 13, 2002, Lonchar falsely certified the accuracy of Veritas' 2001 annual financial

23  statements and its interim financial statements for the quarter ended March 31, 2002, when he knew

24  or was reckless in not knowing that the Company's financial statements were not prepared in

25  compliance with GAAP  (Compl. ¶ 80).  The next day, on August 14, 2002, Lonchar falsely certified

26  the accuracy of Veritas' interim financial statements for the quarter ended June 30, 2002, when he

27

28

1  knew or was reckless in not knowing that the Company's financial statements were not prepared in

2  compliance with GAAP (*Id.*).

3        Lonchar also profited by selling Veritas stock at prices inflated by the misstatement of the

4  financial statements and by receiving a bonus from Veritas based on its artificially inflated financial

5  results (Compl. ¶ 82) .   In March 2004, Veritas announced a second restatement of its financial

6

7  statements to correct, among other things, the foregoing three improper accounting practices (Compl.

8  ¶¶ 58, 66, 72).

9        Ignoring the express terms of Rule 9(b) and the teaching of *In re GlenFed*, the defendants

10  attempt to impose additional – and inapplicable -- pleading requirements upon the Commission.

11  Defendants appear to desire a pleading of detailed evidence concerning each and every fraudulent act

12  committed by the defendants.  As discussed above, this is not required, as Rule 9(b) does not require

13  nor make legitimate the pleading of detailed evidentiary matter.  Defendants' attempts to require

14  such obligation should therefore be rejected.

15

16        **A.      Leslie's arguments**:  Leslie's principal argument is that the Commission's Complaint

17  is not pled with particularity with respect to (1) falsity and (2) *scienter*.  *See* Leslie Br. at 9-14.

18  Leslie is wrong.

19

20        Beyond what has already been discussed in detail regarding the Commission's allegations

21  against Leslie above, which rebuts his contention, Leslie appears to rely on the Private Securities

22  Litigation Reform Act ("PSLRA") (requiring that the complaint plead both falsity and *scienter* with

23  particularity) and the Second Circuit case law to make the particularity argument.  Leslie, for

24  example, cites numerous cases applying the PSLRA and cases from the Southern District of New

25  York. *See* Leslie Br. at 9-14.

26

27        Even Leslie's co-defendant, Lonchar, however, concedes that the PSLRA is inapplicable to

28  SEC actions.  Lonchar Br. at 11.  Indeed, the PSLRA, which imposes additional pleading

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    29
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1  requirements on private plaintiffs, including a more rigorous *scienter* requirement, 15 U.S.C. § 78u-

2  4(b)(2), which go beyond the Rule 9(b) requirements, does not apply to actions brought by the

3  Commission, such as this one. *SEC v. Levin*, 232 F.R.D. at 623 n.1 (internal citation and internal

4  quotation marks omitted). *See SEC v. ICN Pharmaceuticals. Inc.,* 84 F.Supp.2d at 1099

5  ("Defendants incorrectly argues that the heightened standard of the [PSLRA] should be applied and

6  that the SEC therefore has failed to 'plead specific facts creating a strong inference of *scienter*.'

7  However, the 'more rigorous' pleading requirements under the PSLRA, which go beyond the Rule

8  9(b) requirements, only apply to private securities fraud actions; they do not apply to a case, such as

9  this one, brought by the SEC").

10

11         Thus, Leslie's reliance upon the following decisions applying the heightened PSLRA falsity

12  and *scienter* particularity standard are misplaced: *In re Silicon Storage Technology*, 2006 WL

13  648683, *4 (N.D. Cal. March 10, 2006) ("This case is also controlled by the provisions of the Private

14  Securities Litigation Reform Act"; cited at page 9 of Leslie brief); *Wenger v. Lumisys*, 2 F. Supp. 2d

15  1231, 1251 (N.D. Cal. 1998) (PLSRA standards applied; cited at page 10 of Leslie's brief)[6]; *In re*

16  *Syncor Intern'l Cop. Sec. Litig.*, 327 F. Supp. 2d 1149, 1169 (C.D. Cal. 2004) (PLSRA standards

17  applied; cited at page 11 of Leslie's brief)[7]; *In re CornerStone Propane Partners, L.P. Sec. Litig.*,

18

19

20  ───────────────

21  [6] Leslie, Lonchar, and Sallaberry also take a few phrases out of context from *Wenger v. Lumisys*, 2 F.

22  Supp. 2d at 1250, to suggest a broad proposition that "[a] complaint must provide 'specific references'

23  to 'specific facts' as the basis for an allegation that a statement is false or misleading." Leslie Br. at

24  10; Lonchar Br. at 13; Sallaberry Br. at 9. The *Wenger* court actually addressed a "fraud based on

25  forecasts," which the court there explained had special pleading rules even before the enactment of the

26  PSLRA. *See id.* Nonetheless, as shown above already, the Commission's Complaint alleges the

27  defendants' fraudulent conduct with particularity.

25  [7] Leslie cites *Syncor Int'l*, 327 F. Supp. 2d at 1169, for the proposition that "the SEC must identify

26  each specific statement alleged to be false and misleading in each SEC filing, and specify, with

27  particularity, why each statement was materially false and misleading." Leslie Br. at 10-11. Leslie, of

28  course, fails to discuss the proper context of the court's statement, which the court explained on the

very same page of the decision. The *Syncor Int'l* court explained at 1169: "The generalized

allegations do not support a finding of a PSLRA violation because they fail to plead with particularity

1    355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) (PLSRA standards applied; cited at page 13 of Leslie's

2    brief).[8]

3        Equally inapplicable is the particularity case law from the Second Circuit. The Ninth Circuit

4    in *In re GlenFed*, expressly rejected the Second Circuit's heightened pleading requirement that

5    "plaintiffs in securities fraud cases must plead facts giving rise to a 'strong inference of fraudulent

6

7    intent.'" 42 F.3d at 1545-46.   In fact, one of the Southern District of New York cases cited by Leslie

8    and Lonchar, *SEC v. Parnes*, 2001 WL 1658275, at *5 (S.D.N.Y. 2001), acknowledged that "the

9    Second Circuit sets a higher standard for securities fraud and requires the SEC to 'allege facts giving

10   rise to a strong inference of fraudulent intent.'" *Id.* at * 5.   Accordingly, Leslie's arguments requiring

11   the Commission to plead scienter with particularity is incorrect.  Leslie Br. at 11.

12       Leslie suggests that he "is not alleged to have been knowledgeable about the accounting

13   treatment for the "so-called 'barter transactions' of the type alleged, and therefore cannot have been

14

15   reckless regarding his failure to provide details to the auditors that were not specifically requested by

16   them." Leslie Br. at 11.  Paragraphs 27 and 28 of the Commission's Complaint, however, allege as

17   follows:

18
     - On October 2, 2000, Leslie revealed the true nature of the transaction in an email
19        correspondence, explaining:  "We closed a $30 million deal with AOL (which will be taken
          to revenue in Q4).  However, at the eleventh hour we got a request from AOL to gross up the
20        deal by $20 million and take back an equal amount of dollars in paid advertising to AOL."

21   _____

22   why the statement is misleading. *America West*, 320 F.3d [920] at 932 [another case applying the
     PSLRA standards]. The Court finds that the March 9, 1998 press release fails to satisfy the heightened

23   pleading requirement of the PSLRA."

24   [8] Leslie quotes *In re CornerStone*, 355 F. Supp. 2d at 1091, as stating that "[t]he majority of circuits
     have clearly held that standing alone, allegations of violations of GAAP or SEC regulations do not

25   establish *scienter*." Leslie Br. at 13.  Leslie fails to quote the next two sentences in the case: "This
     rule is underpinned by the strong mandate in the PSLRA to avoid speculation, conjecture, and

26   hindsight.  However, where the allegations of pervasive GAAP violations are accompanied by 'other
     particularized facts' giving rise to an inference that the defendant intended to deceive by reporting

27   false financial data." 355 F. Supp. at 1091 (internal citation omitted).

28
     PLAINTIFF SEC'S COMBINED OPPOSITION TO            31
     DEFENDANTS' MOTIONS TO DISMISS AND/OR
     MOTIONS TO STRIKE
     Civil Action No. C 07-3444 -JF

Compl. ¶ 27.

- In early October 2000 and in response to Leslie's email, <u>Leslie was warned at least twice of the "sensitive" accounting issues arising from the AOL transaction. Leslie was urged to take extra caution in making sure the Company's outside auditors agreed with the Company's revenue recognition of the AOL transaction.</u> Compl. ¶ 28 (emphases supplied).

In addition, paragraph 37 of the Complaint alleges as follows:

- [w]hen the outside auditors discovered the license and advertising contract were executed on the same day, they required that additional procedures be performed. <u>The auditors informed Leslie of the accounting literature on point, made inquiries regarding the substance of the transactions and explained to him the accounting issues implicated by the transactions.</u>" Compl. ¶ 37 (emphasis supplied).

In other words, notwithstanding the accounting advice, warnings, or "red flags" provided to him,

Leslie lied and misrepresented to the auditors about the true nature of the AOL transaction. If there

were any doubt, this is *scienter*.

Leslie also cites two cases, *SEC v. Rubera*, 350 F.3d 1084, 1095-96 (9th Cir. 2003), and *PYR*

*Energy Corp. v. Samson Resources Co.*, 2007 WL 858804 (E.D. Tex 2007), for the proposition that

the Commission's allegations regarding Leslie's *scienter* are not alleged with particularity. *See*

Leslie Br. at 11-12 & 12 n. 8. The facts of *SEC v. Rubera* could not be more different than the

allegations in the Complaint in this case. After a bench trial, the district court in *SEC v. Rubera*

found that Mr. Rubera, the owner, lacked *scienter*, because "Mr. Rubera was an unsophisticated

businessman who managed Alpha [his company] from a distance, delegated decision making to

others, and simply did not comprehend his company's poor financial condition." 350 F.2d at 1095.

To be sure, to the extent that Leslie is raising factual issues through his reliance on *SEC v. Rubera*, a

motion to dismiss is not the appropriate vehicle to do so.

Even more inapposite is *PYR Energy*, 2007 WL 858804, which Leslie cites and quotes

(ostensibly) for the proposition that the Commission's allegations regarding Leslie's *scienter* are not

alleged with particularity. *See* Leslie Br. at 12 n. 8. Aside from the fact that the Ninth Circuit in

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    32
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1   *GlenFed* requires the direct opposite application of Rule 9(b), *PYR Energy Corp.* is a non-securities

2   fraud case (a contract case – a claim for reformation) and the portion that Leslie quotes is an

3   explanation of "elements of fraud based on silence" under Texas law.  2007 WL 858804, * 2.  This

4   has nothing to do with Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and

5   Rule 10b-5.

6           Leslie actually acknowledges that the Commission has satisfied the Ninth Circuit *scienter*

7   standard, as Leslie attempts to advance another unsustainable point:  "The Complaint contains

8   nothing more than <u>general allegations regarding Mr. Leslie's intent</u>, and actually pleads facts

9   inconsistent with intentional misconduct on Mr. Leslie's part."  Leslie Br. at 12 (emphasis supplied).

10  As discussed above, the Commission's general allegations regarding Leslie's intent is sufficient

11  under Rule 9(b).  What Leslie is apparently arguing, in addition, is that his early October 2000 e-mail

12  correspondence revealing the true nature of the AOL transaction (*see* Compl. ¶ 27), sent to Veritas'

13  board of directors, somehow negates or nullifies his *scienter* for making subsequent and repeated

14  lies, misrepresentations and omissions to the outside auditors who inquired specifically about the

15  AOL transaction.  This is a non-sequitur: they are separate events involving different sets of people

16  divided by intervening time.

17          As discussed above, the fact that Leslie always knew of the true nature of the AOL

18  transaction, was twice warned to consult with the auditors about the nature of the transaction because

19  of the "sensitive" accounting issues arising from the transaction, and was advised of the import of the

20  relevant accounting literature, but later decided to deceive the auditors is more damning, not less.[9]

---

[9]  Leslie and Lonchar also argue that the Commission impermissibly "grouped" all the defendants together in the Complaint's allegations of the fraudulent conduct and thus did not apprise each of the particular fraudulent conduct.  *See* Leslie Br. at 13-14; Lonchar Br. 12 n. 9.  Contrary to the defendants' arguments, a recent July 2007 decision from this Court, *SEC v. Baxter*, 2007 WL

1      **B.     Lonchar's Arguments**:  While conceding that the PSLRA standards do not apply to

2   SEC actions, Lonchar still seeks to impose, for this case, heightened pleading requirements, going

3   beyond the Ninth Circuit Rule 9(b) standard set forth in *In re GlenFed*, to make the same arguments

4   that Leslie made with respect to pleading with particularity regarding (1) falsity; and (2) *scienter*.

5   Lonchar Br. at 11-19.

6
       Lonchar's primary vehicle to do this is to construct "super" heightened pleading requirements
7
8   for the Commission, because the Commission has "extensive pre-litigation investigatory powers,"

9   and therefore, Lonchar suggests, the Commission should do more than just comply with Rule 9(b).

10  *Id.* at 11.  There is no applicable legal authority to support this proposition, and Lonchar provides

11  none.

12
       Indeed, the only cases Lonchar cites are inapposite cases from outside the Ninth Circuit,
13
14  where the pleading requirements are different.  For example, Lonchar cites *SEC v. Parnes*, 2001 WL

15  1658275 (S.D.N.Y. 2001) (cited at page 11 of Lonchar brief), where the district court applied the

16  Second Circuit's heightened pleading standards, which the Ninth Circuit rejected.  That standard in

17  *SEC v. Parnes* is the same Rule 9(b) standard applied to all litigants in the Second Circuit.

18  Similarly, in *SEC v. Tambone*, 417 F. Supp. 2d 127 (D. Mass 2006) (cited at page of 11-12 of

19  Lonchar brief), the district court acknowledged that "the First Circuit has been notably strict and

20  rigorous in applying the Rule 9(b) standard in securities fraud actions." *Id.* at 131 (internal quotation

21
22  marks omitted).  The same Rule 9(b) standard also applied to all litigants in the First Circuit.  In

23  short, neither the First nor the Second Circuit applied any "super" heightened pleading requirements

24

25

26  2013958, *6 (N.D. Cal. 2007), allowed such a grouping under Rule 9(b).  In any event, in light of the
27  numerous allegations alleged as to each defendant, including each defendant's role in the fraud and his
     misrepresentations to the auditors, as fully discussed above in the text, the defendants' arguments are
28  meritless.

against the Commission because the agency has "extensive pre-litigation investigatory powers." There is no sound basis to do so here either.[10]

The remainder of Lonchar's particularity arguments (Lonchar Br. at 12-19), like Leslie's and Sallaberry's particularity arguments, is to scrutinize an individual allegation in the Commission's Complaint to suggest that the Complaint is somehow insufficient. Again, beyond what has already been discussed in detail regarding the Commission's allegations against Lonchar's knowing participation in two fraudulent schemes above, which rebuts his particularity arguments, the Supreme Court has eschewed the approach of taking any individual allegation, scrutinized in isolation, to rule on a motion to dismiss, even in a PSLRA case. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) (PSLRA case) ("The inquiry, as several Courts of Appeals have recognized, is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of *scienter*, not whether any individual allegation, scrutinized in isolation, meets that standard.") (emphasis in original).

In any event, Lonchar's arguments are without merit for the following reasons:

**1.    As to the AOL transaction**: Lonchar claims that the Commission has not included the dates or substance of the press release and disclosures with respect to the AOL transaction. Lonchar Br. at 12-13. The Commission alleges numerous false and misleading statements, including in paragraph 49 of the Complaint, where the Commission alleges that "in 2001 Leslie and Lonchar approved the public disclosure of these false and misleading financial results, including approving and signing the 2000 10-K, which contained the artificially inflated results." The next sentence in the same paragraph continues: "Leslie and Lonchar also approved false and misleading press release

---

[10] All defendants suggest (Leslie Br. at 4; Lonchar Br. at 4, 11-12; Sallaberry Br. at 2, 6, 11) that because the Commission investigated the entire AOL matter, which includes this case, for a number of years, there should be a more stringent scrutiny. Defendants are wrong. As discussed above, Rule 9(b) and the Ninth Circuit law govern here.

1   and participated in earnings release teleconferences with analysts in which false and misleading

2   disclosures were made." Reading the two sentences together, it is clear and reasonable that the

3   Commission is alleging that Leslie's and Lonchar's approval of false and misleading press release

4   and participation in earnings release teleconferences, both public disclosures, occurred in 2001. As

5   to the substance of the press release and disclosures, the Complaint in preceding paragraphs 46

6   through 47 allege, in detail, what was false and misleading about Veritas' financial results.

7

8       Lonchar then argues, at length, that the Commission has not alleged falsity of Lonchar's

9   statements, with particularity, because the Commission has not alleged that Lonchar was aware that

10  the AOL transaction was a fraudulent transaction. Lonchar Br. at 13-16. While couching the

11  challenge as whether the Commission has alleged the "circumstances of the alleged fraud," Lonchar

12  Br. at 13, Lonchar is really making a *scienter* argument under the PSLRA or under the Second

13  Circuit law:   Lonchar wants the Commission's Complaint to allege his *scienter* with particularity.

14

15      As discussed, this is not required in the Ninth Circuit under *GlenFed*. The Complaint

16  repeatedly alleges Lonchar's *scienter* with respect to the AOL transaction (*see* Compl. ¶¶ 1, 30, 33)

17  and further alleges that Lonchar, knowing of the true nature of the transaction through his

18  consultation with Sallaberry, then told Sallaberry to document the transaction as if they were two

19  separately negotiated, *bona fide* contracts (Compl. ¶¶ 23, 25). Lonchar then improperly booked (in

20  violation of GAAP) the revenue from the transaction in the fourth quarter 2000 to artificially inflate

21  Veritas' publicly reported revenues and earnings (Compl. ¶¶ 2, 30).   As late as August 2002,

22  Lonchar participated in Veritas' effort to avoid a news story about the AOL transaction to avoid

23  public disclosure (Compl. ¶¶ 77-78), and Lonchar falsely claimed, during the internal review of the

24  AOL transaction in 2002, that Veritas' outside auditors were aware of the last minute change in the

25  price of the License from $30 million to $50 million (Compl. ¶¶ 77, 79).

26

27

28

PLAINTIFF SEC'S COMBINED OPPOSITION TO          36
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1    In other words, Lonchar's assertion (Lonchar's Br. at 15) that the "SEC does not allege a

2   single fact to tie Mr. Lonchar to any discussions, meetings or correspondence indicating that he was

3   aware or recklessly disregarded that the transactions were not legitimate and bona fide" is simply

4   untrue.  From the outset, Lonchar learned of the true nature of the transaction from Sallaberry, who

5   consulted Lonchar before Sallaberry agreed to execute the AOL round-trip transaction (Compl. ¶¶

6
    23).  The Complaint's allegations are more than sufficient for purposes of Rule 9(b).
7

8    Curiously, in the context of a Rule 12(b)(6) motion to dismiss, Lonchar refuses to accept all

9   factual allegations in the complaint as true, claiming that the allegations are "conclusory," and initiates

10  a factual dispute regarding whether the AOL transaction was a "round-trip" or sham transaction, which

11  the Complaint alleges.  Lonchar Br. at 15.  As discussed above, no court can resolve factual questions

12  at this 12(b)(6) stage.  *Jacobson v. Hughes Aircraft Co.*, 105 F.3d at 1292.

13

14   Thus, in an attempt to disguise a fact issue as a legal one, Lonchar claims that "settled case law

15  (including a recent Ninth Circuit decision) establishes that transactions substantially similar, if not

16  identical, to the AOL transaction that the SEC challenges here do have economic substance." *Id.*

17  (emphasis in original).  This is wrong too.  The decisions cited by Lonchar, *Simpson v. AOL Time*

18  *Warner Inc.*, 452 F.3d 1040 (9th Cir. 2006), and *Teachers' Retirement System v. Hunter*, 477 F.3d

19
    162, 178 (4th Cir. 2007), whatever they may have decided about the transactions implicated in those
20

21  cases, have nothing to do with this one and, thus, are not germane to the issues here.[11]  By contrast, *In*

22  *re AOL Time Warner, Inc. Sec. Litig.*, 381 F. Supp.2d 192, 229-30 (S.D.N.Y. 2004), the court there

23  did explain that the AOL-Veritas transaction in this case was engineered as a separate transaction to

24

25

26  _____

    [11]  Lonchar also requests this Court to apply a recent PSLRA decision from the Supreme Court,
27  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, despite his earlier concession that the
    PSLRA did not apply to SEC actions.  *See* Lonchar Br. at 16 (suggesting application of *Tellabs* to
28  support Lonchar's alternative inference theory).

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    37
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

make it appear that AOL was receiving $20 million in advertising revenue, when in actuality it was giving itself its own money.

In addition, Lonchar, as well as Leslie and Sallaberry, argues that GAAP violations or restatements alone do not amount to fraud.[12]  Lonchar's Br. at 16; Leslie Br. at 10; Sallaberry Br. at 8 n. 6. This provides little comfort for the defendants, because courts have also explained that, even under the heightened PSLRA pleading standards, violations of GAAP can provide evidence of scienter, *see, e.g., In re Daou Sys.,* , 411 F.3d 1006, 1016 (9th Cir. 2005) ("Violations of GAAP standards can also provide evidence of scienter."); *Abrams v. Baker Hughes Inc.,* 292 F.3d 424, 432 (5th Cir. 2002) ("[d]efendants' violations of generally accepted accounting principles ('GAAP') in combination with other allegations raise a strong inference of scienter"), and that restatements are sufficient to establish falsity at the pleading stage.  *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,* 324 F. Supp. 2d 474, 486-87 (S.D.N.Y. 2004) (citing *In re Cylink Sec. Litig.,* 178 F.Supp.2d 1077, 1084 (N.D. Cal. 2001)("the mere fact that ... statements were restated at all" is sufficient to establish falsity at the pleading stage).  In other words, Veritas' two restatements, in 2003 and 2004, should be considered as part of the falsity and *scienter* analysis too.

    **2.**    **For the "smoothing" of Veritas' financial results in 2000-2002**: As to the second fraudulent scheme, Lonchar first argues that the allegations regarding the three improper non-GAAP practices in the scheme are insufficient for Rule 9(b).  Lonchar Br. at 17.  For example, Lonchar claims that the Complaint should contain details of "which accrued balances were unsubstantiated or for which reported period(s)" and "what was contained in the 'accrual wish list' or 'cushion

---

[12] It should be noted that as part of its 2004 restatement, Veritas corrected financial statements impacted by the non-GAAP practices alleged in the Complaint and disclosed that these non-GAAP practices had been under the direction of the company's former financial management. *See* Exhibit E of Lonchar's Request for Judicial Notice in Support of Lonchar's Motion to Dismiss.

schedule.'" *Id.* Lonchar also claims that the "SEC nowhere alleges that any misstatement was

material in any reporting period." *Id.* Lonchar's claims are wrong.

As discussed above, the Complaint details the fraudulent accounting manipulation scheme,

which began in at least 2000 to 2002, under Lonchar's knowing direction and direct participation,

and <u>caused Veritas to report materially false and misleading financial results in period reports filed</u>

<u>with the Commission and other public statements from at least 2000 through 2003</u>. *See* Compl. ¶¶

3-4, 52-57, 59-65, 67-71. The circumstances of the two-plus years of fraudulent conduct, involving

three non-GAAP practices affecting Veritas' financial results, including making of false and

misleading statements, are alleged with sufficient details so that the Lonchar can prepare an adequate

answer. *See id.* Further, the specific dates of Lonchar's false and misleading representations

(containing the inaccurate financial results due to the accounting manipulations) made to the outside

auditors and the public are alleged. Contrary to Lonchar's claim, this is sufficient under Rule 9(b).

*See Cooper v. Pickett*, 137 F.3d at 627 (explaining in the context of a revenue recognition case that

under Rule 9(b): "[w]e decline to require that a complaint must allege specific shipments to specific

customers at specific times with a specific dollar amount of improperly recognized revenue; we

cannot make Rule 9(b) carry more weight than it was meant to bear").

Lonchar next argues (at page 18 of his brief) that the Commission "fails in its revenue

manipulation charges to set forth facts showing why any statement by Mr. Lonchar in Veritas'

financial reports or elsewhere was false when made." Lonchar is wrong again. As discussed above,

the Complaint alleges that because of the improper non-GAAP practice during 2000-2002, which

Lonchar knowingly directed and participated, Lonchar's representation letters and his certifications

of the accuracy of Veritas' financial statements from 2001 and 2002 were false when made. Finally,

Lonchar claims that the Commission needs to allege which specific GAAP provisions the non-

GAAP accounting practice violated and whether the GAAP violations were "minor or technical in

PLAINTIFF SEC'S COMBINED OPPOSITION TO          39
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1   nature" under Rule 9(b). Lonchar Br. at 18-19. Contrary to Lonchar's assertion, Rule 9(b) does not

2   require such allegations. Tellingly, the only case that Lonchar cites in support (*see* Lonchar Br. at

3   19) is a PSLRA case: *In re Daou Systems, Inc.*, 411 F.3d 1006, 1014 (9th Cir. 2005) (explaining and

4   applying the PSLRA standards).

5       **C.**   **Sallaberry's Arguments**:   Sallaberry argues that the Complaint fails to satisfy Rule

6
7   9(b) because it does not allege: (1) why his statements or omissions to the auditors were false and

8   misleading; and (2) how he participated in any fraudulent actions. Sallaberry Br. at 7-12. To

9   advance his arguments, Sallaberry selectively picks a few allegations from the Complaint, while

10  ignoring others, and argues that the selected allegations are "neutral facts." *Id.* Sallaberry efforts

11  cannot be sustained.

12      First, the Complaint alleges why Sallaberry's statements or omissions to the auditors were
13
14  false and misleading: because Sallaberry knew of the true nature of the AOL transaction, but

15  decided that either he wanted to tell a lie to or mislead the auditors of what really happened. Compl.

16  ¶ 31. As the Complaint alleges, Sallaberry discussed the transaction with Leslie to work out the

17  details of it; telephoned the AOL sales executive who repeated the proposal previously made to

18  Leslie; and consulted with Lonchar and Leslie, before affirming the AOL proposal. Compl. ¶¶ 22-
19
20  23. Sallaberry reviewed and executed the AOL advertising purchase. Compl. ¶ 24. In short, he

21  knew the real deal.

22      Second, the Complaint also alleges how he participated in fraudulent actions: At Leslie's

23  request, Sallaberry joined the AOL round-trip transaction scheme. Compl. ¶¶ 20, 22-23. Sallaberry

24  worked with Lonchar, who told Sallaberry to document the transaction as if it were two separately

25  negotiated, *bona fide* contracts. Compl. ¶ 25. Sallaberry made an oral side deal with AOL that
26
27  simultaneous wire payments of their respective amounts due from the AOL transaction would be

28  made. Compl. ¶ 26. When asked, Sallaberry did not tell the auditors of the true, contingent nature of

1   the AOL contracts, including the last minute negotiations that resulted in the $20 million inflation of

2   the License price and $20 million advertising deal. Compl. ¶¶ 33, 41 .  In fact, Sallaberry made

3   several misrepresentations relating to the AOL transaction to the auditors, which are alleged in

4   paragraphs 39-44 of the Complaint.[13]  Moreover, Sallaberry participated in preparation of and

5   submission to Veritas' auditors documents that justified the $50 million License price and concealed

6   the true nature of the AOL transaction.  Sallaberry directed his sales team to collect documentation to

7   falsely support the value of the license at $50 million and 42% discount to cover .  Compl. ¶ 45.

8

9        Even if all factual allegations in the complaint were not taken as true, as required in the

10  context of a Rule 12(b)(6) motion, these allegations are not "neutral facts."  A fair reading of the

11  allegations would lead to one inescapable conclusion only:  These are incriminating allegations

12  against Sallaberry, showing falsity and his *scienter* in a fraudulent scheme.

13

14       Sallaberry also argues (Sallaberry Br. at 9) that his misrepresentations to the auditors, as

15  Veritas' executive vice president of Worldwide Field Operations and head of sales who participated

16  in the AOL transaction, do not even matter, because, Sallaberry suggests, the Complaint (at ¶ 32)

17  alleges that the auditors already knew of the "concurrent" nature of the contracts with AOL.  With all

18

19  _____

20  [13]  Sallaberry suggests (Sallaberry's Br. at 9) that paragraph 24 of the Complaint contradicts a
    misrepresentation alleged in paragraph 42.  Paragraph 24 provides that:

21      Sallaberry, who had no marketing experience, reviewed and executed the AOL advertising
22      purchase – the largest in Veritas' history – without consulting anyone in the marketing
        department.  Sallaberry did not try to negotiate any terms of AOL's standard form advertising
23      contract, notwithstanding Veritas' $20 million lump sum payment for advertising, $6.6 million
        of which was to begin running within a matter of days. The advertising contract gave AOL
24      complete discretion as to where the advertising would be run.

25  Paragraph 42 alleges as follows:

26      Sallaberry concealed the contingent nature of the advertising deal by falsely claiming that the
27      marketing department, not Sallaberry, negotiated the deal.

28      Fairly read, these paragraphs are not contradictory.  They are consistent.

1   due respect, regardless of what the auditors may have known at that time, Sallaberry was not free to

2   lie to or mislead the auditors.

3       Finally, like other defendants, Sallaberry relies upon inapplicable PSLRA case law (*see*

4   Sallaberry Br. at 9; citing *Wenger v. Lumisys*, 2 F. Supp. 2d at 1251), and inappropriately injects an

5   outside document – such as an advertising contract – and factual allegations outside the Complaint to

6   attempt to establish "facts" about what "really" occurred regarding the negotiation of the advertising

7   agreement. *See* Sallaberry Br. at 9 ("The specific placement of banner ads and text links was

8   negotiated by Veritas' marketing department after the agreement was signed"). This is inappropriate.

9
10  As previously discussed, no court can resolve factual questions at the 12(b)(6) stage.

11  **III.    The Non-*Scienter* Based Securities Violations (Part of the First, the Third and the Fifth
12          Claims) Against Leslie, Lonchar, and Sallaberry, Even Assuming *Arguendo* that Rule
            9(b) Is Applicable to Those Violations, Meet the Pleading Standards under Rule
13          12(b)(6) Motion**

14      The Complaint alleges a number of non-*scienter* based claims against Leslie, Lonchar, and

15  Sallaberry. These violations are: Section 17(a)(2) and (3) of the Securities Act as part of the First

16
17  Claim; Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1 as the Third Claim;

18  Section 13(b)(5) of the Exchange Act as the Fourth Claim; and Exchange Act Rule 13b2-2 as the

19  Fifth Claim.

20      As discussed above, violations of Sections 17(a)(2) and (3) only require a showing of

21  negligence. *SEC v. Dain Rauscher*, 254 F.3d at 855.

22      Section 13(b)(2)(A) of the Exchange Act requires a reporting company, such as Veritas, to

23
24  make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect

25  its transactions and disposition of assets. Section 13(b)(5) of the Exchange Act provides that "[n]o

26  person shall ... knowingly falsify any book, record, or account described in [Section 13(b)(2)]."

27

28

1   Rule 13b2-1 also provides that: "No person shall directly or indirectly, falsify or cause to be

2   falsified, any book, record or account subject to Section 13(b)(2)(A)."

3       Section 13(b)(2)(B) of the Exchange Act requires every reporting company to devise and

4   maintain an adequate system of internal accounting controls to provide reasonable assurances that

5   transactions are recorded as necessary to permit preparation of financial statements in conformity

6   with GAAP.  Section 13(b)(5) of the Exchange Act also provides that no person shall knowingly

7
8   circumvent or knowingly fail to implement a system of internal accounting controls.

9       Exchange Act Rule 13b2-2 prohibits any director or officer of an issuer from making or

10  causing to be made materially false or misleading statements or omissions to an accountant in

11  connection with an audit, quarterly review, or preparation of any document required to be filed with

12  the Commission.

13
14      No showing of *scienter* is required to establish Section 13 violations. *See Ponce v. SEC*, 345

15  F.3d 722, 737 n. 10 (9th Cir. 2003) ("a plain reading of Section 13(b) reveals that it also does not

16  impose a *scienter* requirement"); *SEC v. McNulty*, 137 F.3d 731, 741 (2d Cir. 1998) (*scienter* is not a

17  prerequisite to civil liability under § 13); *SEC v. Savoy Industries, Inc.,* 587 F.2d 1149, 1167

18  (D.C.Cir.1978) (reporting provisions of § 13 are not intended to be antifraud provisions, and

19  therefore do not require *scienter*).  In addition, the Commission's position is that no showing of

20
21  *scienter* is required to establish Rule 13b2-2 liability either.  *See, e.g., SEC v. Cohen*, 2007 WL

22  1192438, * 19 (E.D. Mo. Apr. 19, 2007) (with respect to Rule 13b2-2, a finding of *scienter* is not

23  required).[14]

24      Nonetheless, the defendants argue that Rule 9(b) applies, because the claims "sound in

25  fraud," and that the allegations relating to all these claims are insufficient under Rule 9(b).  *See*

26

27  ────────────
28  [14]  The Commission, however, recognizes that this Court in *SEC v. Baxter,* 2007 WL 2013958, *8, believed that *scienter* is required.

Leslie Br. at 14-18; Lonchar Br. at 19-22; Sallaberry Br. at 12-14. Even assuming *arguendo* that Rule 9(b) applies here, for the reasons stated for the fraud claims above, the Complaint's allegations against each of the defendants more than amply satisfy Rule 9(b), as the Complaint details how each of them falsified or caused to falsify Veritas' books, records, or accounts by creating false documentation regarding the true nature of the AOL transaction and Veritas' financial statements; made materially false or misleading statements or omissions, including management representation letters, to the outside auditors in connection with an audit, quarterly review, or preparation of any document required to be filed with the Commission, as set forth in the Complaint; and, with regard to Lonchar, in particular, circumvented or failed to implement a system of internal accounting controls to improperly book the AOL transaction and to engage in the improper non-GAAP practices and lied to and withheld material information from internal auditors.

### IV. The Aiding and Abetting Violations (Part of the Fourth Claim) Against Lonchar and the Aiding and Abetting Violations (the Sixth Claim) Against Leslie, Lonchar, and Sallaberry, Even Assuming *Arguendo* that Rule 9(b) Is Applicable to All Those Violations, Meet the Pleading Standards under Rule 12(b)(6)

The Commission's Complaint alleges two aiding abetting claims: (1) the Fourth Claim: that Lonchar aided and abetted in violations of Section 13(b)(2)(B) of the Exchange Act; and (2) the Sixth Claim: that Leslie, Lonchar, and Sallaberry aided and abetted in Veritas' violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, 13a-11, 13a-13 and 13b2-1.

The elements of an aiding and abetting violation are: (1) the existence of an outside primary violation; (2) actual knowledge by the alleged aider and abettor of the primary violation and of his own role in furthering it; and (3) "substantial assistance" in the commission of the primary violation. *SEC v. Fehn*, 97 F.3d 1276, 1288 (9th Cir. 1996).

1   For the detailed reasons stated for the fraud claims above, the Complaint more than amply

2   alleges, even assuming *arguendo* that Rule 9(b) applies to these violations, the aiding and abetting

3   claims.  Nonetheless, Leslie and Sallaberry argue (Leslie Br. at 18-19; Sallaberry Br. at 14-15) that

4   the Complaint does not allege the primary violation by Veritas relating to the reporting of the AOL

5   transaction.  This is incorrect.

6   

7       The Complaint expressly alleges that:  (1) in 2000, Veritas artificially inflated reported

8   revenues by approximately $20 million in connection with a software sale to AOL.  Compl. ¶ 2; (2)

9   as a result of the defendants' actions, Veritas reported materially false and misleading financial

10  results in periodic reports filed with the Commission and other public statements from at least 2000

11  through 2003 and in its January 28, 2004 earnings release of fourth quarter and annual results for

12  2003.  Compl. ¶ 4; (3)  the inflated price of the License materially distorted Veritas' fourth quarter

13  

14  results of operations: fourth quarter revenues were inflated by $19.2 million, representing 5% of total

15  revenues and 6% of license revenues for the quarter, and the net loss for the fourth quarter was

16  improperly reduced by $8.1 million, representing a 6% understatement and booking the $20 million

17  "gross up" caused a material effect, as it allowed Veritas to not only meet, but exceed, Wall Street

18  earnings estimates by two cents in keeping with Veritas' longstanding practice.  Compl. ¶ 50; and (4)

19  

20  on January 17, 2003, Veritas announced that it would restate its financial statements in order to

21  reverse the $20 million of improperly recognized revenue from the AOL round-trip transaction and

22  correct the related over-stated expenses.  Compl. ¶ 51.[15]

23      Leslie, Lonchar, and Sallaberry also argue that the Complaint does not allege the second and

24  third elements:  that the Complaint does not allege Leslie's, Lonchar's, and Sallaberry's knowledge

25  

26  _____

[15]  The Commission also filed its settled enforcement action against Veritas on February 20, 2007 in

27  the district court of the District of Columbia.  *SEC v. Veritas Software Corp.*, 1:07-cv-364-RMU
(D.D.C.)  Lonchar attached a copy of this complaint as Exhibit H of Lonchar's Request for Judicial

28  Notice.