1  of the primary violation or of their own role in furthering it; and Leslie's, Sallaberry's, and Lonchar's

2  "substantial assistance" in the commission of the primary violation.  *See* Leslie Br. at 19-21; Lonchar

3  Br. at 23-24; Sallaberry Br. at 14.

4      This is incorrect again.  The Complaint contains ample allegations as to the two elements.

5  The Complaint alleges that Leslie, Lonchar, and Sallaberry played principal roles in the AOL

6  "round-trip" transaction, and, as a result, each knew the true nature of the transaction; Sallaberry

7

8  falsely documented the AOL transaction as if they were separately negotiated, *bona fide* contracts;

9  Lonchar improperly booked the AOL transaction; Leslie, Lonchar, and Sallaberry made

10  misrepresentations to the outside auditors to sustain Veritas' improper booking of $50 million;

11  Sallaberry participated in, or at least was aware that others were, altering or withholding documents

12  to conceal the true nature of the transaction; Sallaberry caused AOL to sign an audit confirmation for

13  Veritas' auditors in time for Veritas' earnings release, which reported the artificially inflated results;

14  Leslie and Lonchar signed materially misleading representation letters, along with other

15  misrepresentations by Leslie, Lonchar, and Sallaberry, all of which allowed the auditors to provide

16  an unqualified audit report to include the artificially inflated results from the AOL transaction in the

17  2000 financial statements; and Leslie and Lonchar approved the reporting of the false and misleading

18  financial results from the AOL transaction, including approving and signing the 2000 10-K, which

19  contained artificially inflated results, filed with the Commission.  Compl. ¶¶ 20-31; 33, 38-39, 45,

20  47-50.

21

22

23

24

25

26

27

28

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    46
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

## V.    The Materiality Element with Respect to the AOL Transaction Has Been Sufficiently Alleged

Only Leslie moves to dismiss under Rule 12(b)(6) on the basis of failure to plead materiality with respect to the AOL transaction. Leslie Br. at 21-24. As shown below, Leslie's arguments are without merit.

A misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or if the truth had been disclosed. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).

Materiality is typically not a matter for Rule 12(b)(6) dismissal. *See Fecht v. The Price Co.*, 70 F.3d 1078, 1080-82 (9th Cir. 1995). Materiality typically cannot even be determined as a matter of summary judgment because it depends on determining a hypothetical investor's reaction to the alleged misstatement. *SEC v. Phan*, 500 F.3d 895, 908 (9th Cir. 2007). Materiality determination is a "mixed question of law and fact" that has typically been resolved by juries. *Id.* at 908 n. 19.

Thus, determining materiality in securities fraud cases "should ordinarily be left to the trier of fact." *SEC v. Phan*, 500 F.3d at 908. *See also Kaplan v. Rose*, 49 F.3d 1363, 1373 (9th Cir. 1994) (holding that whether certain statements made in prospectus were material is "a question that should have been left to a jury" because "reasonable jurors certainly could differ on whether this information might affect the stock-purchasing decision"). Only if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ are these issues appropriately resolved as a matter of law. *Fecht*, 70 F.3d at 1081.

Here, the Complaint alleges that Veritas restated its financial statements to reverse the $20 million of improperly recognized revenue from the AOL transaction and correct the related overstated expenses. Compl. ¶ 51. Under GAAP, a restatement is made only when errors are material. *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 437 (S.D.N.Y. 2005) ("Pursuant to

PLAINTIFF SEC'S COMBINED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

47

Generally Accepted Accounting Principles ('GAAP'), previously issued financial statements should

be restated only to correct material accounting errors that existed at the time the statements were

issued") (citing *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486

(S.D.N.Y. 2004)).

In addition, the Commission's Complaint pled that, as a result of the fraudulent conduct of

Leslie and his co-defendants, Sallaberry and Lonchar, Veritas artificially inflated its revenues by

approximately $20 million as a result of the AOL round-trip transaction and that, as a result, Veritas'

financial results were materially false though 2003. Compl. ¶¶ 2, 4. Further, the Commission pled

that the inflated price of the License materially distorted Veritas' fourth quarter 2000 results of

operations by 5% of total revenues and 6% of license revenues and the net loss for the fourth quarter

was improperly reduced by $8.1 million, representing a 6% understatement. Compl. ¶ 50.

Importantly, the net impact of the $20 million "gross-up" allowed Veritas to meet and exceed market

expectations for its fourth quarter 2000 earnings, an impact that a trier of fact reasonably can, and the

Commission respectfully suggests, will, find material. Compl. ¶ 50.

At this pleading stage, Leslie wants the Court to hold that "any accounting error here was

immaterial as a matter of law." Leslie Br. at 23. Leslie attempts to support his view with several

paragraphs of manufactured factual arguments, improper in the context of a Rule 12(b)(6), including

that one Veritas financial metric decreased by only 1.6% in the year 2000 (instead of reviewing

quarterly, as alleged in the Complaint), as well as Appendix Exhibits including an accounting

literature and the financial results in Veritas' 2000 10-K and 2001 Form 10-K/A. Leslie Br. at 22-

24. Leslie even proffers a putative expert opinion: that "[a]n analysis pursuant to the Financial

Accounting Standards Board's ("FASB") Statement of Financial Accounting Concepts No. 2,

Qualitative Characteristics of Accounting Information governing 'materiality,' indicates that the

1  effects of the restatement of Veritas 2000 and 2001 financial statements are not material." Leslie Br.

2  at 23.

3      The very accounting literature relied upon by Leslie, FASB, Statement of Financial

4

5  Accounting Concepts No. 2, ¶ 125 (1980), however, provides: "[M]agnitude by itself, without regard

6  to the nature of the item and the circumstances in which the judgment has to be made, will not

7  generally be a sufficient basis for a materiality judgment." Further, the Second Circuit in *Ganino v.*

8  *Citizens Utilities Co.*, 228 F.3d 154, 166 (2d Cir. 2000), rejected a numerical benchmark, declaring:

9  "Following *Basic [Inc. v. Levinson,* 485 U.S. 224 (1988)], we have consistently rejected a formulaic

10

11  approach to assessing the materiality of an alleged misrepresentation." Thus, Leslie's suggestion that

12  there is a "hard-and-fast" numerical cut-off for materiality, through his citations to fact-specific – and

13  distinguishable -- cases, is wrong.[16]  *See* Leslie Br. at 22.

14      The Commission respectfully suggests that discovery will, in fact, demonstrate that revenues

15  and earnings were important metrics to Veritas' investors, a fact that makes them material.  *See, e.g.,*

16  *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 n. 9 (3d Cir. 1997)("earnings reports are

17  among the pieces of data that investors find most relevant to their investment decisions...Thus

18

19  ─────────────────────────

20  [16]  Leslie relies upon the following cases which are factually distinguishable: *Parnes v. Gateway*, 122
F.3d 539, 546-49 (8th Cir. 1997)(dismissal based upon reviewing the totality of the circumstances,
21  including reviewing the percentage of asset overstatement); *Glassman v. Computervision Corp.*, 90
F.3d 617, 622, 633 & n. 26 (1st Cir. 1996)(dismissal granted, after "full discovery," because "plaintiffs
22  have no claim that Computervision's general statement that backlog was usually low, without the
disclosure of specific numbers, was materially misleading as of the effective date of the offering."); *In*
23  *re Convergent Technologies Second Half 1984 Sec. Litig.*, 1990 WL 606271, at *10-11 (N.D. Cal. Jan.
10, 1990) (summary judgment granted, after discovery, because, in the "context of meeting net current
24  operations well above market expectations and then recognizing a huge one time loss, a difference of a
cent or two per share is not material."); In *re Duke Energy Corp. Sec. Litig.*, 282 F. Supp. 2d 158, 160-
25  62 (S.D.N.Y. 2003) (finding that without more, inflation of 0.3% of the company's total revenues for
the relevant period – approximately 17 times smaller than 5% alleged in this Complaint – immaterial);
26  *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, 2006 U.S. Dist. LEXIS 17588, at *9 (S.D.N.Y.
27  Apr. 6, 2006) (decision on the fairness of a class action settlement; no materiality discussion);

28
PLAINTIFF SEC'S COMBINED OPPOSITION TO          49
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

information about a company's past and current earnings is likely to be highly 'material.'"); *SEC v. Caserta*, 75 F.Supp.2d 79, 92-93 (E.D. N.Y. 1999)("Profit statements generally will be of particular interest to investors. After all, by their very nature, financial reports are relevant to investment decisions, with reports of current and past earnings likely to aid in predicting future earnings.") (internal quotation marks and citation omitted); *Carley Capital Group v. Deloitte & Touche*, 27 F.Supp.2d 1324, 1336 (N.D. Ga. 1998) ("Whether earnings are increasing or decreasing is highly material to investors.").

In sum, the Commission has sufficiently pled the materiality of the artificial financial results flowing from Leslie and his co-defendants' conduct in negotiating, structuring, accounting for, and recognizing revenue related to, the AOL round-trip transaction. Further, Leslie's premature determination of materiality at the motion to dismiss stage is improper, and Leslie's attempt to both initiate and conclude expert discovery before the parties have even begun fact discovery should be rejected.

**VI. Whether Any of the Remedies Challenged by Leslie, Lonchar, and Sallaberry Should be Stricken Under Fed. R. Civ. P. 12(f) or Dismissed Under Fed. R. Civ. P. 12(b)(6) as Time-Barred**

No defendant has challenged whether the Commission has timely filed its action on July 2, 2007. In fact, Lonchar acknowledges in footnote 17 of his Br., under the statute of limitations argument section, that the Commission has sufficiently pled that Lonchar's fraud violations continued into August 13 and 14, 2002 by alleging that Lonchar signed false and misleading certifications. Lonchar Br. at 25 n. 17.

Leslie, Lonchar and Sallaberry, however, argue that the statute of limitations under 28 U.S.C. § 2462 bars certain of the Complaint's remedies (prayers for relief) against them. Through a Rule

---

*Teachers' Retirement Sys. v. Hunter*, 477 F.3d 162, 179 (4th Cir. 2007) (decision on particularity and *scienter* under the PSLRA; no materiality discussion).

1   12(f) motion to strike, Leslie argues that the prayers for relief against him for an officer and director

2   bar and civil penalty should be stricken. Leslie Br at 25-25. Also, through a Rule 12(f) motion,

3   Sallaberry argues that the prayers for a civil penalty, permanent injunction and officer and director

4   bar should be stricken. Sallaberry Br. at 15-17. Lastly, Lonchar argues, as part of his motion to

5   dismiss under Rule 12(b)(6), that the "Commission's request for civil penalties, injunctive relief and

6   an officer and director bar are untimely," notwithstanding his admission that the Commission's fraud

7   allegations concerning his false and misleading August 2002 certifications are timely. Lonchar Br. at

8   25.

9

10         These arguments are meritless, but, in an abundance of caution, they should be rejected as

11   being premature at this pleading stage. At this stage of the litigation, it is inappropriate to strike or

12   dismiss any remedy sought by the Commission based on the statute of limitations, not only because

13   the statute of limitations issues appear to be rife with questions of law and fact (though favorable to

14   the Commission), but also because refusal to strike or dismiss will not prejudice any of the

15   defendants.

16

17   **A.    A Rule 12(f) Motion to Strike Is an Improper Vehicle to Consider for**
           **Striking Certain of the Commission's Remedies at This Pleading Stage.**

18

19         Rule 12(f) provides that a party may make a motion to strike from a pleading "any

20   insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

21   P. 12(f). "To be immaterial or impertinent, the challenged material must have 'no possible bearing'

22   on the controversy." *SEC v. Levin*, 232 F.R.D. 619, 624 (C.D. Cal. 2005) (denying a defendant's

23   Rule 12(f) motion to strike the SEC's disgorgement claim). *See Colaprico v. Sun Microsystems,*

24   *Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991) ("Motions to strike should not be granted unless it is

25   clear that the matter to be stricken could have no possible bearing on the subject matter of the

26   litigation") (citing *Naton v. Bank of California*, 72 F.R.D. 550, 551 n. 4 (N.D. Cal. 1976)). In

27

28   PLAINTIFF SEC'S COMBINED OPPOSITION TO     51
    DEFENDANTS' MOTIONS TO DISMISS AND/OR
    MOTIONS TO STRIKE
    Civil Action No. C 07-3444 -JF

1  considering a motion to strike, the court views the pleadings in the light most favorable to the non-

2  moving party, and resolves any doubt as to the relevance of the challenged allegations in favor of the

3  plaintiff.  *SEC v. Levin*, 232 F.R.D. at 625.

4      Motions to strike are regarded with disfavor because they are often used as delaying tactics,

5  and because of the limited importance of pleadings in federal practice.  *SEC v. Sands*, 902 F. Supp.

6  1149, 1165-66 (C.D. Cal. 1995).  Courts often require "a showing of prejudice by the moving party"

7  before granting the requested relief.  *SEC v. Levin*, 232 F.R.D. at 625 (citing *SEC v. Sands*, 902 F.

8
9  Supp. at 1166).

10     A Rule 12(f) motion is not appropriate where there are disputed questions of law and fact.

11  *See, e.g., William Z. Salcer, Panfield, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir.

12  1984) ("'[E]ven when the defense presents a purely legal question, the courts are very reluctant to

13  determine disputed or substantial issues of law on a motion to strike; these questions quite properly

14  are viewed as determinable only after discovery and a hearing on the merits'") (quoting 5 Charles

15
16  Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1381, at 800-01), *vacated on other*

17  *grounds*, 478 U.S. 1015 (1986); *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217-18

18  (D.N.J. 1993) ("Partly because of the practical difficulty of deciding cases without a factual record it

19  is well established that striking a pleading should be sparingly used by courts"; "a motion to strike

20
21  will not be granted where the sufficiency of a defense depends on disputed issues of fact").

22     Here, the Commission's challenged remedies -- for a civil penalty, permanent injunction and

23  officer and director bar – do not constitute "any insufficient defense." Fed. R. Civ. P. 12(f).  Nor are

24  they "immaterial" or "impertinent" matter.  *Id.*  Neither Leslie nor Sallaberry can seriously claim that

25  the challenged remedies pled in the Complaint have "no possible bearing" on the controversy as a

26
27  matter of law.  *SEC v. Levin*, 232 F.R.D. at 625.  After all, these remedies are legally cognizable and

28  available as a matter of law, and form a significant part of the Commission's arsenal of weapons

PLAINTIFF SEC'S COMBINED OPPOSITION TO             52
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1    available to prosecute enforcement actions, such as this one. *See SEC v. Sandifur*, 2006 WL 538210,

2    at *10 (W.D. Wash. 2006) (SEC's claim for disgorgement not stricken at the pleading stage, because

3    "all that is necessary at that stage is that the Court find that disgorgement would be appropriate if the

4    SEC prevails in its case-in-chief").

5        Finally, neither Leslie nor Sallaberry has even attempted to make -- let alone, actually made --

6    a showing of prejudice to each of them to warrant consideration of the motion. To be sure, as further

7

8    discussed below, there appears to be disputed questions of law and fact with respect to the statute of

9    limitations issues in this case. In such a case, a motion to strike should be denied. *Augustus v.*

10   *Board of Public Instruction of Escambia County, Florida*, 306 F.2d 862, 868 (5th Cir.1962) ("A

11   disputed question of fact cannot be decided on motion to strike. It is true, also, that when there is no

12

13   showing of prejudicial harm to the moving party, the courts generally are not willing to determine

14   disputed and substantial questions of law upon a motion to strike").

15       **B.    A Rule 12(b)(6) Motion to Dismiss Is an Improper Vehicle to Consider**
         **Dismissing Certain Remedies at This Pleading Stage.**

16

17       Similarly, Lonchar's Rule 12(b)(6) motion to dismiss remedies should not be considered at

18   the pleading stage. Aside from the apparent factual issues associated with resolving the statute of

19   limitations issues in Lonchar's motion, which are discussed below and which cannot be resolved at

20   the Rule 12(b)(6) stage, *Jacobson v. Hughes Aircraft Co*, 105 F.3d at 1292, his motion is premature

21   for another reason. In the context of SEC enforcement actions, courts have held that motions to

22   dismiss remedies are premature, as liability has not yet been established. *SEC v. Hopper*, 2006 WL

23

24   778640, at * 16 (S.D. Tex. 2006) ("[C]ourt cannot conclude at this stage that it appears beyond a

25   doubt that the SEC can prove no set of facts in support of its claims for relief"); *SEC v. C. Jones &*

26   *Co.*, 312 F.Supp.2d 1375, 1382 (D. Colo. 2004) ("This issue [of whether the facts supported the

27   SEC's request for injunctive relief] must await resolution until after the SEC has had the opportunity

28
     PLAINTIFF SEC'S COMBINED OPPOSITION TO          53
     DEFENDANTS' MOTIONS TO DISMISS AND/OR
     MOTIONS TO STRIKE
     Civil Action No. C 07-3444 -JF

1  to present evidence supporting its claims") (citing *SEC v. Fenster*, 929 F. Supp. 1346, 1349 (D.

2  Colo. 1996)); *SEC v. Buntrock*, 2004 WL 1179423, at *3 (N.D. Ill. May 25, 2004) ("[T]o the extent

3  that the defendants challenge the SEC's 'pleading' of the disgorgement remedy, that challenge is

4  rejected as untimely because none of the defendants have yet been found liable for any securities

5  violation").

6

7       Like Leslie and Sallaberry, Lonchar cannot -- and does not – dispute that the remedies in

8  question are legally cognizable and available as a matter of law.  Rather, Lonchar improperly

9  attempts to advance fact-bound assertions about the applicability of the remedies against him with

10  facts not alleged in the Complaint.  *See, e.g.,* Lonchar Br. at 25 (explaining that no injunctive relief

11  or officer and director bar should issue because, in part, Lonchar "has not been employed by a public

12  company for more than 5 years").

13

14       Indeed, the question of when each defendant in this case committed his last violation as

15  charged in the Complaint appears to involve difficult legal and factual issues and is inappropriate for

16  disposition at the motion to dismiss stage.  *See, e.g., SEC v. Alexander*, 2007 WL 2816195, *15

17  (E.D. N.Y. 2007) (denying a Rule 12(f) motion as to the statute of limitations affirmative defense

18  because the question of accrual "is a difficult legal question and it is the most prudent course for the

19  parties to conduct fact discovery on issues that arise in applying both discovery and violation rules,

20  as well as equitable tolling on the basis of fraudulent concealment."); *Miller*, 2006 WL 2189697, at

21  *10-11 (explaining that questions of notice and due diligence regarding when a securities fraud

22  action accrues are "particularly suited for a jury's consideration.").In addition, Leslie, Lonchar, and

23  Sallaberry took affirmative steps to conceal the discovery of their fraudulent behavior.  First, Leslie,

24  Lonchar and Sallaberry, on the day of the AOL round-trip transaction, documented the deal as if it

25  were two separately negotiated, *bona fide* contracts, when that was not the case. Compl. ¶¶20-23, 25,

26

27  27-28.  Second, despite the fact that the AOL transaction was Veritas' largest in its history, this

28

PLAINTIFF SEC'S COMBINED OPPOSITION TO                    54
DEFENDANTS' MOTIONS TO DISMISS AND/OR
MOTIONS TO STRIKE
Civil Action No. C 07-3444 -JF

1   Court may take judicial notice that the company issued no press release, further concealing the true

2   contingent nature of the license/advertising arrangement with AOL.  Third, Leslie, Lonchar and

3   Sallaberry then lied to and withheld information from Veritas' auditors in December 2000 and/or

4   January 2001 regarding the true nature of the AOL deal.  Compl. ¶¶ 30, 34, 38, 46-48.  Fourth,

5   Sallaberry deceived the auditors by participating in, or being aware of, an effort to alter or withhold

6   from auditors documents describing the license as a $30 million deal at a 65% discount, creating

7   instead documents to support the $50 million price and 42% discount.  Compl. ¶ 39.  Fifth, all three

8   defendants continued to stymie the disclosure of their fraud through at least August 2002 when they

9   were aware of, or participated in, a company effort to mislead a newspaper reporter investigating the

10  AOL transaction and/or did not reveal the truth about the AOL transaction during the company's

11  internal investigation.  Compl. ¶¶ 77-79.  Finally, Lonchar continued to engage further fraudulent

12  conduct by lying during an internal review of the AOL transaction in August 2002 and by falsely

13  certifying the Company's covered reports in August 2002, falsely certifying, among other things,

14  Veritas' 2001 Form 10-K. Compl. ¶ 80.

15          These steps, as explained by cases relied upon by the defendants, would toll the statute of

16  limitations.  *See e.g., FEC v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (explaining that

17  equitable tolling is appropriate where fraudulent conduct by the defendant results in concealment of

18  the operative facts such that a diligent plaintiff fails to discover the operative facts during the

19  limitations period); *SEC v. Jones*, 2006 WL 1084276, *6 (S.D. N.Y. 2006) (equitable tolling is

20  recognized in securities fraud actions as a way to toll the statute of limitations where a defendant

21  takes affirmative steps to prevent the discovery of the fraud or where the fraud is self-concealing).

22  Any factual dispute with regard to the defendants' concealment of their fraudulent conduct presents

23  additional factual and legal issues not appropriately disposed of at this stage of the litigation.

Indeed, the question of when each defendant in this case committed his last violation as charged in the Complaint appears to involve difficult legal and factual issues and is inappropriate for disposition at the motion to dismiss stage. *See, e.g., SEC v. Alexander*, 2007 WL 2816195, *15 (E.D. N.Y. 2007) (denying a Rule 12(f) motion as to the statute of limitations affirmative defense because the question of accrual "is a difficult legal question and it is the most prudent course for the parties to conduct fact discovery on issues that arise in applying both discovery and violation rules, as well as equitable tolling on the basis of fraudulent concealment."); *Miller*, 2006 WL 2189697, at *10-11 (explaining that questions of notice and due diligence regarding when a securities fraud action accrues are "particularly suited for a jury's consideration.").In addition, Leslie, Lonchar, and Sallaberry took affirmative steps to conceal the discovery of their fraudulent behavior.  First, Leslie, Lonchar and Sallaberry, on the day of the AOL round-trip transaction, documented the deal as if it were two separately negotiated, *bona fide* contracts, when that was not the case. Compl. ¶¶20-23, 25, 27-28.  Second, despite the fact that the AOL transaction was Veritas' largest in its history, this Court may take judicial notice that the company issued no press release, further concealing the true contingent nature of the license/advertising arrangement with AOL. Third, Leslie, Lonchar and Sallaberry then lied to and withheld information from Veritas' auditors in December 2000 and/or January 2001 regarding the true nature of the AOL deal.  Compl. ¶¶ 30, 34, 38, 46-48.  Fourth, Sallaberry deceived the auditors by participating in, or being aware of, an effort to alter or withhold from auditors documents describing the license as a $30 million deal at a 65% discount, creating instead documents to support the $50 million price and 42% discount.  Compl. ¶ 39.  Fifth, all three defendants continued to stymie the disclosure of their fraud through at least August 2002 when they were aware of, or participated in, a company effort to mislead a newspaper reporter investigating the AOL transaction and/or did not reveal the truth about the AOL transaction during the company's internal investigation.  Compl. ¶¶ 77-79.  Finally, Lonchar continued to engage further fraudulent