# EXHIBIT 4




Page 1

Slip Copy

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

C
Glenbrook Capital Ltd. Partnership v. Kuo
N.D.Cal.,2007.

United States District Court,N.D. California.
GLENBROOK CAPITAL LIMITED
PARTNERSHIP, Plaintiff,
v.
Mali KUO, et al., Defendant.
No. C07-02377 MJJ.

Sept. 6, 2007.

Marc W. Rappel, Latham & Watkins, Los Angeles, CA, Adrian James Sawyer, Kerr & Wagstaffe LLP, San Francisco, CA, for Plaintiff.
Robert Alan Spanner, Trial & Technology Law Group, Menlo Park, CA, for Defendant.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**
MARTIN J. JENKINS, United States District Judge.

**INTRODUCTION**

*1 Before the Court is Defendants Mali Kuo ("Kuo"), Douglas Watson ("Watson"), and Digital Video Systems, Inc.'s ("DVS") (collectively, "Defendants") Motion to Dismiss.[FN1] Plaintiffs Glenbrook Capital Limited Partnership ("Glenbrook") opposes the motion. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss.

FN1. Docket No. 22.

**FACTUAL BACKGROUND**

The current shareholder action arises from Defendants' alleged act of selling substantially all of DVS's assets-consisting of DVS's entire stake in another company-without holding the necessary shareholder vote, and without sufficiently disclosing the sale or their intent to use the sales proceeds to satisfy the Chief Executive Officer's personal debts. The material allegations of the operative complaint, which are taken as true for purposes of the current motion, are as follows.

**A. The Parties**

Plaintiff Glenbrook is a limited partnership engaged in the investment business. (Compl.¶ 2.) It holds a minority interest in DVS. (*Id.*)

DVS is a Delaware corporation with its principal place of business in Mountain View, California. (*Id.* ¶ 3.) DVS was founded in 1992 to develop components and products using newly-developed digital video technologies. (Defs.' RJN, Ex. 4.) DVS went public on May 14, 1996, in an initial public offering that raised $43.7 million. (Compl.¶ 10.) DVS's shares were originally listed on the NASDAQ, but its shares now trade over-the-counter. (*Id.*) At the time the complaint was filed, DVS's shares traded at $0.14 per share. (*Id.* ¶ 46.)[FN2]

FN2. After 2002, DVS's only significant activity was to act as a holding company for a majority ownership position in DVS Korea, Ltd. ("DVSK"). (*Id.* ¶ 11.) That interest was sold on December 29, 2005, in the transaction that is at the heart of this litigation. (*Id.* ¶ 25.) DVS has not filed a financial report with the SEC since November 21, 2005, but every indication is that DVS is currently a mere "shell corporation" with no or negligible continuing operations. (*Id.* ¶ 12.)

Defendant Kuo is the current Chairman and Chief Executive Officer ("CEO") of DVS. (*Id.* ¶ 4.) She

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 2

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

has signed several of DVS's SEC filings, including the November 21, 2005 Form 10-Q, the December 12, 2005 Form 8-K, the December 30, 2005 Form 8-K, the March 24, 2006 Form 8-K, and the April 18, 2006 Form 8-K. (*Id.*) Kuo lives in Santa Clara County. (*Id.*)

Defendant Watson is the Chief Operating Officer of DVS and a director. (*Id.* ¶ 5.) Watson had previously served as DVS's Chief Financial Officer, before resigning on March 19, 2006. (*Id.* ¶ 45.) He maintains control over DVS's bank accounts. (*Id.*) Watson also lives in Santa Clara County. (*Id.*)

### B. Kuo's Litigation Against DVS and Control of the Board

In June, 2002, DVS sued Kuo and other former officers and directors in Santa Clara County Superior Court for breach of fiduciary duty.[FN3] (Compl.¶ 14.) Kuo filed a cross-claim for unpaid compensation and for securities fraud.(*Id.*) On February 1, 2005, a jury found for Kuo, and on April 8, 2005, the court entered judgment against DVS for $3.42 million. (*Id.*)

> FN3. Although Kuo is currently the CEO and Chairman, she was a former employee at the time of the lawsuit. (Compl.¶ 14.)

On April 29, 2005, following the entry of judgment, DVS and Kuo settled.(*Id.* ¶ 14.) Under the settlement agreement, DVS issued 100,147 shares of Series D convertible preferred stock (the "Series D") to numerous persons and warrant to purchase 100,148 shares of common stock to one holder. (*Id.* ¶ 16.) DVS also entered into a consulting agreement that obligated DVS to issue 11,291 shares of the Series D to two persons. (*Id.*) Glenbrook alleges that the purported recipients of the Series D were Kuo's personal creditors, business partners or nominees. (*Id.*) In all, some 18 creditors of Kuo's received the 100,147 shares of Series D. (*Id.*) The Series D bore an 8% dividend, and each share of Series D was convertible into ten shares of DVS common stock. (*Id.*)

*2 In addition to the Series D issuance, the April 29, 2005 settlement also obligated DVS's directors to elect a slate of Kuo's nominees to the DVS board.(*Id.* ¶ 18.) On May 24, 2005, the DVS Board elected Kuo and two of her nominees to the Board. (*Id.*) Kuo thereby gained effective control of DVS, and was appointed CEO and Chair. (*Id.*) Since that election, all directors other than Kuo and Watson have resigned. (*Id.*)

Following the settlement, on May 18, 2005, DVS, Watson, and Kuo entered into a pledge agreement (the "Pledge Agreement").(*Id.* ¶ 17.) Under the Pledge Agreement, Kuo and her purported creditors were to receive DVS shares, to be registered almost immediately. (*Id.*) If they did not receive the shares, Kuo and the creditors would have the right to foreclose on DVS's shares in DVSK. (*Id.*) The Pledge Agreement was not disclosed to DVS's investors, and only came to light in March 2007 during other litigation between Kuo and a third party. (*Id.* ¶ 22.)

### C. Kuo Engineers the Sale of DVS's Shares in DVSK

Plaintiff has alleged that there was a plan for DVS to satisfy Kuo's creditors by registering the Series D shares, or the common stock into which it was convertible, so that Kuo's creditors could sell their shares on the public markets. (*Id.* ¶ 19.) The Series D registration, however, never occurred, because DVS never filed a Form 10-Q with approved financial statements and so was unable to register its shares. (*Id.* ¶ 20.) DVS was due to file its Form 10-Q for the first quarter of 2005 on May 17, 2005. (*Id.*) Instead, however, DVS filed a "Notification of Late Filing," which bought it an additional six days. (*Id.*) At or about this time, DVS's outside auditors resigned. (*Id.*) On May 22, 2005, DVS filed its Form 10-Q without the auditors' consent.(*Id.*) Absent current financial information, DVS could not register any new shares, either the Series D or new common shares. (*Id.*)

Accordingly, Defendants had to find another way to satisfy Kuo's creditors, and so Defendants turned their attention to DVS's only asset-its shares in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

DVSK. (*Id.* ¶ 22.)On or about December 10, 2005, DVS entered into a two-page stock purchase agreement (the "SPA") with Korea Technology Investment Corp. ("KTIC") under which DVS would sell its entire stake in DVSK-substantially all its assets-for $12 million. (*Id.* ¶¶ 1, 23.)DVS did not retain an investment banker in connection with the sale, or make any public announcements of it, despite the fact that the SPA required DVS to sell its only remaining asset. (*Id.*) The transaction moved so quickly that Kuo's personal attorney has called it a "fire sale." (*Id.* ¶ 26.)On December 29, 2005, the sale of the DVSK stock to KTIC closed. (*Id.* ¶ 25.)

Defendants did not disclose the planned sale of DVSK stock in any public filing prior to the date the SPA was signed. (*Id.* ¶ 23, 25.)Even though it was a sale of substantially all of DVS's assets, no shareholder vote was held and DVS did not transmit to its shareholders any information statement, as required by Section 14(c) of the Securities Exchange Act of 1934 and rules promulgated thereunder. (*Id.* ¶¶ 25, 42, 57.)

*3 The sale was first disclosed in a December 12, 2005 Form 8-K, after the SPA had already been signed. (*Id.* ¶¶ 42, 51; Defs' RJN, Ex. 1 (Form 8-K signed December 12, 2005).) The December 12 Form 8-K claims that DVS obtained written consents for the transaction from the holders of a majority of its shares, but does not identify those holders or describe their interests in the sale. (*Id.* ¶ 42.)It also promised that DVS would seek shareholder ratification of the sale (Compl. ¶ 54; Defs'. RJN, Ex. 1), which, according to Plaintiffs, never happened.

The sale generated $12 million in proceeds for DVS. (*Id.* ¶ 24.)Defendants wasted no time in using the proceeds to pay Kuo's personal creditors. (*Id.* ¶ 27.)On December 30, 2005, DVS issued checks totaling $150,000 to Kuo's personal creditors. (*Id.*) On January 2, 2006, DVS issued another round of checks, totaling $788,000. (*Id.*) In the end, some $1.5 million was paid to Kuo's creditors by DVS. (*Id.*)

**D. DVS Fails to File Required Reports with the SEC**

As a publicly-traded company, DVS is required to file annual and quarterly reports with the SEC on Forms 10-K and 10-Q. *See generally* 15 U.S.C. § 78m. DVS's last such filing was its November 21, 2005 Form 10-Q. (Compl.¶ 46.) Since that date, DVS has not filed either a Form 10-K or a Form 10-Q. (*Id.*) DVS has also failed to file any proxy materials, and has not held an annual meeting of stockholders since November 18, 2004. (*Id.* ¶ 46.)On April 17, 2006, DVS filed a Form 8-K with the SEC stating that it would be unable to file its annual report for the year 2005, claiming an inability to obtain all necessary financial data from DVSK. (*Id.* ¶ 43.)As a result of these failures to file, DVS's shareholders have literally no idea what happened to the $12 million that DVS did not spend paying Kuo's debts.

**E. Procedural History**

Plaintiff filed the Complaint action on May 2, 2007 asserting claims for: (1) Securities Fraud in violation of Section 10(b) and Rule 10b-5 against all Defendants; (2) failure to follow Proxy Disclosure Rules in violation of Section 14(c) of the 1934 Act and SEC Rule 14c-2 against all Defendants; (3) Breach of Fiduciary Duties in violation of the duty of loyalty against all Defendants; (4) Appointment of a Receiver pursuant to 8 Delaware Code § 226(a) (3) against DVS; (5) Appointment of a Receiver pursuant to 8 Delaware Code § 291 against DVS; (6) Appointment of a Receiver or Custodian pursuant to Delaware common law against DVS; and (7) Compelling Annual Shareholder Meeting against DVS. (*Id.* ¶¶ 47-86.)Plaintiff seeks rescission of Defendants' sale of DVSK or for payment due, punitive damages, and an accounting of DVS's losses.

Defendants now seek an order dismissing each of Plaintiff's claims.

**LEGAL STANDARD**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 4
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir.2001). Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir.2002). In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 782 (9th Cir.1996); *Balisteri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). In pleading sufficient facts, however, a plaintiff must suggest his or her right to relief is more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly,* --- U.S. ----, ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

*4 Rule 8(a) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) are typically disfavored; complaints are construed liberally to set forth some basis for relief, as long as they provide basic notice to the defendants of the charges against them. *In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp. 1248, 1257 (N.D.Cal.2000). Where a plaintiff alleges fraud, however, Rule 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud. To meet the heightened pleading requirements of Rule 9(b), the Ninth Circuit has held that a fraud claim must contain three elements: (1) the time, place, and content of the alleged misrepresentations; and (2) an explanation as to why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1547-49 (9th Cir.1994).

In the securities context, the pleading requirements are even more stringent.

### B. Private Securities Litigation Reform Act

In 1995, Congress enacted the PSLRA to provide " protections to discourage frivolous [securities] litigation."H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995). The PSLRA strengthened the already-heightened pleading requirements of Rule 9(b). Under the PSLRA, actions based on allegations of material misstatements or omissions must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."15 U.S.C. § 78u-4(b)(1).

The PSLRA also heightened the pleading threshold for causes of action brought under Section 10(b) and Rule 10b-5. Specifically, the PSLRA imposed strict requirements for pleading scienter. Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."15 U.S.C. § 78u-4(b)(2). To qualify as "strong," an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *Telltabs, Inc. v. Makor Issues & Rights, Ltd.,* --- U.S. ----, ---- - ----, 127 S.Ct. 2499, 2509-10, 168 L.Ed.2d 179 (2007). The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct."*In re Silicon Graphics Inc.,* 183 F.3d 970, 974 (9th Cir.1999). If the complaint does not satisfy the pleading requirements of the PSLRA, upon motion by the defendant, the court must dismiss the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

complaint. *See* 15 U.S.C. § 78u-4(b)(1).

**\*5** The PSLRA's Safe Harbor provision provides that a securities fraud claim may not lie with respect to a statement that is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(I). However, a person may be held liable if the forward-looking statement is made with "actual knowledge ... that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.,* 320 F.3d 920, 936 (9th Cir.2003); *but see In re Seebeyond Technologies Corp. Sec. Litig.,* 266 F.Supp.2d 1150, 1164-65 (C.D.Cal.2003) (disagreeing with the analysis in *America West* and finding that a defendant is immune from liability if it satisfies either 15 U.S.C. § 78u-5(c)(1)(A) or (B)).

## ANALYSIS

### A. Request for Judicial Notice

As a threshold matter, the Court addresses Defendants' requests that the Court take judicial notice of six documents, three of which are expressly referenced in Plaintiff's Complaint. Plaintiff does not object to Defendants' requests.

### 1. Documents Referenced in Complaint

Defendants ask the Court to judicially notice the following documents incorporated by reference in Plaintiff's Complaint: (1) DVS's Form 8-K filed with the SEC on December 10, 2005; (2) State Court Judgment entered on April 5, 2005 in *Digital Video Systems, Inc. v. Mali Kuo, et al.,* Case No.: 1-02 CV 808925; and (3) DVS's Form 10-Q filed with the SEC on November 21, 2005. (Defs.' Request for Judicial Notice.)

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Even where judicial notice is not appropriate, courts may also properly consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleadings." *Branch v. Tunnel,* 14 F.3d 449, 454 (9th Cir.1994).

Here, each of the documents described above is explicitly incorporated by reference in Plaintiff's Complaint. Moreover, the documents are public documents and/or SEC filings, both of which are judicially noticeable in this context. *See In re Homestore.com, Inc. Sec. Litig.,* 347 F.Supp.2d 814, 817 (N.D.Cal.2004) (the court may take judicial notice of press releases); *In re Calpine Corp. Sec. Litig.,* 288 F.Supp.2d 1054, 1076 (N.D.Cal.2003) (the court may take judicial notice of public filings). Accordingly, the Court takes judicial notice of these documents.

### 2. Documents Not Referenced in the Complaint

Defendants ask the Court to take judicial notice of the following forms not referenced in the complaint: (1) DVS's Form 10-K filed with the SEC on April 15, 2005 and exhibits thereto (Defs.' Request for Judicial Notice.); (2) DVS's form 8-K filed with the SEC on August 8, 2007 (Defs.' Supp. Request for Judicial Notice); and (3) DVS's form 8-K filed with the SEC on May 31, 2005 (*id.*).

**\*6** A court may take judicial notice of documents that are "integral to the plaintiff's claims" and whose "authenticity is not disputed", even if they are not explicitly incorporated into the complaint. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998). "In a securities action, a court may take judicial notice of public filings when adjudicating a motion to dismiss ..." *Calpine,* 288 F.Supp.2d at 1076. The SEC Forms at issue here are publicly-available documents filed with the SEC. For these reasons, the Court takes judicial notice of these documents.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 6

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
(Cite as: Slip Copy)

### B Section 10(b) of the Securities and Exchange Act and Rule 10b-5

Plaintiff's first claim is for securities fraud in violation of Section 10(b) and Rule 10b-5. The claim consists of two allegedly materially misleading omissions in the December 12, 2005 Form 8-K. The first omission was that Defendants did not disclose that they intended to use the proceeds from the sale of the DVSK shares to pay Kuo's personal creditors. (Compl.¶ 51.) The second omission was that Defendants did not disclose that their sale of the DVSK shares would constitute a sale of substantially all of DVS's assets.( *Id* .) Defendants contend that Plaintiff fails to satisfy the heightened pleading requirements under the PSLRA. In particular, Defendants argue: (1) that Plaintiff has failed to plead particularized facts to support its allegations that are based on " information and belief"; (2) that Plaintiff has failed to plead particularized facts demonstrating that the omissions were misleading and Defendants' scienter regarding the same; and (3) that Plaintiff has failed to adequately plead loss causation.

Section 10(b) of the Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."15 U.S.C. § 78j(b). Rule 10b-5, promulgated under Section 10(b), makes it unlawful for any person to use interstate commerce: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

For a claim under Section 10(b) and Rule 10b-5 to be actionable, a plaintiff must allege: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss. See *Binder v. Gillespie,* 184 F.3d 1059, 1063 (9th Cir.1999). A complaint must " specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."15 U.S.C. § 78u-4(b)(2). As discussed above, in order to avoid having the action dismissed, a plaintiff must "plead with particularity both falsity and scienter."*Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir.2001). The Ninth Circuit, in *Ronconi,* articulated the rule as follows:

*7 Because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts, we have incorporated the dual pleading requirements of 15 U.S.C. §§ 78u-4(b)(1) and (b)(2) into a single inquiry. In considering whether a private securities fraud complaint can survive dismissal under Rule 12(b)(6), we must determine whether 'particular facts in the complaint, taken as a whole, raise a strong inference that defendants intentionally or [with] 'deliberate recklessness' made false or misleading statements to investors.'Where pleadings are not sufficiently particularized or where, taken as a whole, they do not raise a 'strong inference' that misleading statements were knowingly or [with] deliberate recklessness made to investors, a private securities fraud complaint is properly dismissed under Rule 12(b)(6).

*Id.* (citations and internal quotation marks omitted).

### 1. Plaintiff's Allegations Based on "Information and Belief"

Defendants argue that Plaintiff has failed to plead the required particularized facts to support the allegations that are based on "information and belief." Plaintiff's securities fraud claim is largely based on allegations made on Plaintiff's information and belief. (Compl.¶¶ 47-55.)

Where such allegations regarding a statement or omission are made on information and belief, the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 7
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

complaint must state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u-4(b)(1). The Reform Act's information and belief pleading standard focuses on whether there are "adequate corroborating details" in the complaint. See *In re Silicon Graphics Securities Litigation,* 183 F.3d 970, 985 (9th Cir.1999). The requirement's purpose is to prevent a plaintiff from citing vague reports and unspecified sources in the hopes that discovery will turn up something actionable. *Id.; see also In re McKesson HBOC, Inc. Sec. Litig.,* 126 F.Supp.2d 1248, 1271 (N.D.Cal.2000) (citing *Silicon Graphics,* 183 F.3d at 985). This means that a plaintiff must provide, in great detail, all the relevant facts forming the basis of his belief. *Id.*

In this case, Plaintiff forms its belief that Defendants fraudulently omitted certain material information from the December 12, 2005 Form 8-K on the following information. The complaint first sets forth a time line of DVS's litigation with Kuo culminating in a jury award in favor of Kuo for $3.42 million. (Compl.¶ 14.) This information exists in the public record and therefore provides a sufficient factual basis for this particular allegation. However, the remainder of Plaintiff's allegations are not similarly supported. For example, the complaint next provides allegations surrounding the subsequent settlement under which Kuo allegedly coerced DVS to accede to her settlement demands by threatening to levy upon her judgment and to destroy DVS's business and by promising to raise substantial equity capital needed by the DVS business, even though she had no intent or ability to perform that commitment.(*Id.*) Plaintiff fails to provide any factual support for these contentions. Plaintiff does not identify to whom Kuo made the settlement threats and promises, when Kuo made them, or what Kuo actually said or did. There is no description of the actual settlement negotiations or how Kuo created the alleged duress under which DVS acceded to her settlement demands. Next, the complaint provides a detailed chart reflecting the nominal distribution of 100,147 shares of Series D stock to a number of identified individuals alleged to be Kuo's creditors. (*Id.* ¶ 16.)However, Plaintiff fails to explain how Plaintiff learned the identities of these putative creditors and fails to provide any factual basis as to how these individuals came to be creditors of Kuo. Regarding the alleged Pledge Agreement, Plaintiff again fails to provide any factual detail regarding the existence of the Pledge Agreement, the board of directors' agreement to elect a slate of Kuo's nominees to the board, the identities of those nominees, or the aftermath of Kuo's ascent to the position of DVS's Chief Executive Officer. (*Id.* ¶ 18.)Regarding Plaintiff's allegation that DVS intended to satisfy Kuo's creditors by arranging registration of the Series D stock, Plaintiff similarly omits any factual basis to support such a contention. (*Id.* ¶ 19.)As to Plaintiff's subsequent stock sale and proceed distribution, Plaintiff again fails to provide a supporting factual basis for the allegations. (*Id.* at ¶ 27.)Plaintiff's complaint contains a number of additional allegations based on information and belief without any supporting factual basis. However, because a plaintiff must provide, in great detail, all the relevant facts forming the basis of his belief, the Court finds these allegations to be insufficient. *In re Silicon Graphics Securities Litigation,* 183 F.3d at 985.

**2. Scienter as to the Alleged Omissions from the December 12, 2005 Form 8-K**

*8 Defendants next argue that Plaintiff inadequately pleads scienter by failing to provide specific facts giving rise to a strong inference that Defendants intentionally or consciously omitted material facts from the December 12, 2005 Form 8-K, as required by the PSLRA. As to the first alleged omission-that Defendants did not disclose that they intended to use the proceeds from the sale of the DVSK shares to pay Kuo's personal creditors-Defendants contend: (1) that Plaintiff makes insufficient conclusory allegations that the DVSK stock sale information was "intentionally withheld"; and (2) that Defendants did, in fact, publicly announce the DVSK stock sale in a December 10, 2005 Form 8-K, thereby negating any inference of scienter. (Defs.' Request for Judicial Notice, Ex. 1.) As to the second omission-that Defendants did not disclose that their sale of the DVSK shares would constitute a sale of substantially all of DVS's assets-Defendants argue that Defendants made a previous public disclosure in a November 21, 2005

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 8

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

Form 10-Q that sufficiently disclosed that the DVSK sale would "represent the vast majority of [DVS's] revenues, assets and liabilities" therefore negating any strong inference of scienter. (Defs.' Request for Judicial Notice, Ex. 3.)

Plaintiff responds by insisting that the complaint sufficiently pleads scienter. As to the first alleged omission, Plaintiff contends that once Defendants made a public statement regarding the planned sale of the DVSK shares they had a duty to speak truthfully and not conceal any material facts-such as the fact that the proceeds would be used to pay Kuo's personal creditors. *In re Par Pharmaceutical, Inc., Sec. Lit.,* 733 F.Supp. 668, 675 (S.D.N.Y.1990) (citations omitted). As to the second alleged omission, Plaintiff submits that Defendants' November 21, 2005 Form 10-Q that disclosed that the sale would "represent the vast majority of [DVS's] revenues, assets and liability" did not adequately disclose the material fact that the sale would be "substantially all" of DVS's assets.

In discussing the requisite scienter under the PSLRA, the Ninth Circuit has explained:
[A] private securities plaintiff proceeding under the PSLRA must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless [FN4] or conscious misconduct....
. [A]lthough facts showing mere recklessness or a motive to commit fraud and opportunity to do so may provide some reasonable inference of intent, they are not sufficient to establish a strong inference of deliberate recklessness. In order to show a strong inference of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as opposed to mere motive and opportunity. Accordingly, ... particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA.

FN4. The Ninth Circuit has defined recklessness in this context as: "[A] highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."*S.E .C. v. Rubera,* 350 F.3d 1084, 1094 (9th Cir.2003) (citing *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569 (9th Cir.1990) (en banc)).

*In re Silicon Graphics,* 183 F.3d at 974 (emphasis added). When considering whether a plaintiff has shown a strong inference of scienter, "the court must consider all reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs,"*Gompper v. VISX, Inc.,* 298 F.3d 893, 897 (9th Cir.2002), and "answer the larger question of whether [plaintiffs'] complaint, considered in its entirety, states facts which give rise to a strong inference [of scienter]." *Silicon Graphics,* 183 F.3d at 985. To qualify as "strong," an inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent. *Telltabs, Inc.,* 127 S.Ct. at 2509-10.

*9 Here, as discussed more fully below, Plaintiff fails to plead with sufficient particularity to link Defendants' state of mind with regards to both of the alleged omissions from the December 12, 2005 Form 8-K.

### a. Defendants' omission of their intent to use DVSK proceeds to pay Kuo's personal creditors

Plaintiff does not sufficiently allege a link between the DVSK stock sale and Defendants' alleged intent to use the sales proceeds to pay Kuo's personal creditors. While the complaint presents the framework to establish Kuo's general motive and opportunity to complete the DVSK stock sale, it is devoid of any factual predicate to establish Kuo's then existing purpose to conceal her intended use of the proceeds at the time of the DVSK stock sale. Plaintiff's complaint does not allege any factual basis to conclude that Kuo had a secret intent to use the proceeds to satisfy preexisting creditors.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

Furthermore, there is no factual basis to conclude that Kuo had any creditors at the time of the DVSK sale. While the complaint generally alleges that Kuo had motivation to use the proceeds to satisfy certain identified judgment creditors, there is no alleged information as to when Kuo incurred these debts, when these debts were due, how these debts arose, or why Kuo's supposed need to satisfy her personal creditors arose prior to DVS's decision to sell the DVSK stock. Having failed to plead scienter with sufficient particularity, the Court finds that Plaintiff's allegations regarding Defendants' alleged failure to disclose their intent to use the proceeds from the DVSK stock to pay Kuo's personal creditors cannot survive Defendants' motion to dismiss.

### b. Defendants' omission that the DVSK stock sale constituted "substantially all" of DVS's assets.

Again, Plaintiff fails to allege a sufficient link between the DVSK stock sale and Defendants' alleged intent to unlawfully conceal the relative size of the sale. Defendants' point to their pre-stock sale November 21, 2005 10-Q identifying DVS's Korean subsidiary as "the vast majority of [DVS's] revenues, assets and liabilities" as evidence that Defendants previously disclosed the relative size of the DVSK stock sale. (Request for Judicial Notice, Ex. 3.) Plaintiff asserts essentially a semantics argument. Plaintiff contends that the November 21, 2005 10-Q reference to "the vast majority [of DVS's assets]" did not sufficiently disclose that the sale would constitute "substantially all" of DVS's assets, as alleged in the Complaint. (Compl.¶ 51.) Plaintiff also argues that the timing of the stock sale is evidence of Defendants' scienter. Specifically, Plaintiff points to the fact that Defendants executed the SPA on December 10, 2005, disclosed the sale on December 12, 2005, and began writing checks to Kuo's creditors on December 30, 2005.

Here, the Court finds that Plaintiff does not plead sufficient facts to make out a prima facie violation of Section 10(b) and Rule 10b-5 by Defendants in the current Complaint. Plaintiff fails to sufficiently plead the requisite "strong inference" of scienter and also fails to plead that the omitted statement was "material" in light of Defendants' previous November 21, 2005 disclosure, which has been judicially noticed for purposes of this motion. First, in addressing materiality, the Court finds that Plaintiff has failed to sufficiently allege why Defendants' December 12, 2005 Form 8-K-when read in conjunction with Defendants' November 21, 2005 10-Q-is material, such that there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. *See Basic Inc. v. Levinson,* 485 U.S. 224, 231-32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ("[T]o fulfill the materiality requirement, 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available,' " (quoting *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)); *see also Abromson v. Am. Pacific Corp.,* 114 F.3d 898, 902 (9th Cir.1997). Second, in considering Defendants' scienter, the Court recognizes that the operative complaint raises the specter of improper motivation by Defendants, however it does not provide the detailed recitation of reliable facts necessary to create a strong inference of scienter as required by the PSLRA.

### 3. Loss Causation

*10 Defendants argue that Plaintiff failed to adequately plead loss causation with respect to the alleged omissions, as required by *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (U.S.2005). Defendants point out that before the DVSK stock sale, DVS had a liability to Kuo for a judgment in excess of $3 million, and that after the DVSK stock sale, DVS no longer had the liability. According to Defendants, Plaintiff's generic statement that the sale "caused significant loss" (Compl ¶ 55), without more, is insufficient. The Court agrees.

To sufficiently allege loss causation a plaintiff must allege that the subject of the fraudulent statement or omission was the proximate cause of the actual loss

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy  
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470  
**(Cite as: Slip Copy)**

Page 10

suffered. *Lentell v. Merill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir.2005). Stated differently, a plaintiff must allege both that the loss was foreseeable and that the loss was caused by the materialization of the concealed risk. *Id.* In *Dura,* the Court explained that securities fraud actions were available, "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause ."*Dura Pharm., Inc.,* 125 S.Ct. at 1633. Plaintiffs must provide Defendants with facts demonstrating the causal connection between the alleged misrepresentations and the losses. *Id.*

Here, Plaintiff has not pleaded facts establishing the necessary direct link between particular omissions by Defendants and the decrease in the stock price. True, the DVSK stock sale plausibly caused DVS's shares to drop that day, however Plaintiff has not pleaded how this decrease created a loss caused by a previous omission by Defendants. Rather, Plaintiff has alleged a series of circumstantial facts surrounding Defendants' conduct, without alleging facts sufficient to show a direct connection between specific alleged omissions and the loss caused, as required by *Dura.*

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's first claim for violation of Section 10(b) and Rule 10b-5. The Court **DISMISSES** Plaintiff's first claim **WITHOUT PREJUDICE.** Plaintiff shall have leave to amend this claim not later than 30 days from the filing date of this Order.

### C. Section 14(c)-Information Statement

Plaintiff's second claim is for violation of Section 14(c) of the 1934 Securities Exchange Act, 15 U.S.C. § 78n(c), and SEC Rule 14c-2, 17 C.F.R. § 240.14c-2(a)(1), (b). Plaintiff claims that because Defendants planned to sell substantially all [FN5] of the DVS's assets, they needed shareholder authorization and therefore had to circulate an information statement containing the information specified in Schedule 14C at least 20 days prior to the earliest date on which the action could be taken.

Because Defendants did not file an information statement at all, Plaintiff contends that Defendants' action violated Exchange Act Rule 14c-2, promulgated pursuant to Section 14(c), which requires an information statement prior to corporate action "by the written authorization or consent of security holders."17 C.F.R. § 240.14c-2(a)(1). In their motion to dismiss, Defendants contend that Plaintiff, as a minority shareholder, has no private right of action to assert this claim because no economic harm resulted from Defendants' nondisclosure. Defendants essentially argue that because Plaintiff was a minority shareholder, Plaintiff could not have stopped the transaction anyway. Alternatively, Defendants argue that Plaintiff has failed to satisfy the pleading requirements for securities fraud under 15 U.S.C. § 78u-4(b) and Rule 9(b).

> FN5. A Delaware corporation may only sell substantially all of it assets with authorization of the majority of the outstanding shares. 8 Del.Code § 271.

*11 Section 14(c) mandates the distribution of an "information statement" to certain shareholders prior to an annual or special meeting of shareholders whenever management fails to solicit proxies to the extent necessary to trigger Section 14(a).15 U.S.C.A. § 78n(b)(2). The information statement contains the same information as a Section 14(a) proxy statement and is subject to the same anti-fraud provisions as a proxy statement. In other words, Section 14(c) requires management, when no proxy vote is undertaken, to nonetheless disseminate information statements to shareholders that contain substantially the same information required to be provided in a proxy solicitation. *Ciro, Inc. v. Gold,* 816 F.Supp. 253, 269 (D.Del.1993).

Few courts have addressed the issue of whether Section 14(c) provides for a private right of action. *See id.*Those courts that have addressed the issue, largely rely on the Supreme Court's decision in *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991). In *Virginia Bankshares,* the plaintiffs were 15 percent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                               Page 11

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

minority shareholders offered $42 per share in a freeze-out merger for shares that a jury later determined were worth $60 each. *Virginia Bankshares, Inc.,* 501 U.S. at 1088-89. Although not required to either by law or corporate by-laws, the defendants solicited proxy votes to approve the merger. *Id.* at 1088. The Supreme Court held that although the proxy may have included material misrepresentations within the meaning of § 14(a), plaintiffs could prove no causation entitling them to damages under that section of the Act. *Id.* at 1105-06. Earlier, in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Supreme Court found minority shareholders who could affect the outcome of a merger vote could establish the necessary causation element of their suit-when the misrepresentations were material-because the proxy was an "essential link" in the accomplishment of the transaction. In *Virginia Bankshares,* on the other hand, the minority shareholder's votes were not necessary to authorize the corporate action, which forced the plaintiffs to rely on less direct theories of causation for their loss.

In *Ciro,* the Delaware District Court broadly interpreted *Virginia Bankshares'* prohibition on private right of actions and held that no private right of action under Section 14(c) existed for minority shareholders who had no ability to stop the challenged transaction. *Id.* at 269-70 (citing *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991)). Interpreting the Supreme Court's decision in *Virginia Bankshares,* the *Ciro* court stated,
In *Virginia Bankshares,* the United States Supreme Court held that Section 14(a) of the Securities Exchange Act did not imply a private right of action for minority shareholders seeking to challenge a transaction when those minority shareholders did not have the power to prevent the challenged transaction by voting their shares differently. (citation omitted). As explained by Justice Souter, the rationale for the *Virginia Bankshares* holding is that any injury to the minority shareholders is not caused by the misrepresentation in the proxy materials, but rather, is caused by the mere fact that the minority shareholders were powerless to stop the proposed transaction. Moreover, the Court noted that to permit such private causes of action by minority shareholders under § 14(a) would foster vexatious litigation and place an extraordinary burden on the district courts ....

*12 *Id.* at 269.

Other courts have refused to interpret *Virginia Bankshares* as such a broad prohibition on private rights of action under Section 14. *Wilson v. Great American Industries, Inc.,* 979 F.2d 924, 929 (2d. Cir.1992). In *Wilson,* the Second Circuit interpreted the *Virginia Bankshares* opinion stating,
The Supreme Court in *Virginia Bankshares* did not hold that minority shareholders whose votes number too few to affect the outcome of a shareholder vote may never recover damages under § 14(a) or that no implied private cause of action for such shareholders is provided under that section of the Act. And, it expressly declined to decide whether § 14(a) provides an implied federal remedy for minority shareholders deprived of certain state remedies as a result of deceptive proxy solicitations....
...*Virginia Bankshares* ruled that Congress' silence regarding the creation of implied private rights of action under § 14(a), though fatal in the usual case, did not preclude the recognition of new rights of recovery. Because the Court has recognized certain implied rights under *Mills* and its progeny, it stated courts should rely on policy reasons to determine whether equity demands new implied causes of action be recognized for comparable would-be plaintiffs. Thus, in entertaining plaintiffs' arguments for alternative theories of causation, the Court declared that implied rights outside the contours of that recognized in *Mills* might exist under § 14(a).

*Id.* at 929.

Here, the Court declines to address whether a private right action exists under Section 14(c), and instead finds that Supreme Court's reasoning in *Virginia Bankshares* counsels dismissal of Plaintiff's proxy solicitation claim as currently pleaded. The Court finds that the operative complaint, read in light of the Supreme Court's guidance, militates against the creation of an implied cause of action under Section 14(c) in cases, such as this case, where minority

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

shareholders are seeking relief from a transaction that they apparently could not have prevented. In this case, Plaintiff's alleged injury was not caused by Defendants' failure to send out a timely notice, but rather, was caused by the mere fact that Plaintiff, as a minority shareholder, was powerless to stop the DSVK stock sale. To the extent that Plaintiff, or a critical mass of the other shareholders, could have stopped or otherwise influenced the DSVK stock sale, such facts were not alleged in the Complaint.

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's second claim for violation of Section 14(c). The Court **DISMISSES** Plaintiff's second claim **WITHOUT PREJUDICE.** Plaintiff shall have leave to amend this claim not later than 30 days from the filing date of this Order. The Court now turns to Plaintiff's remaining state law causes of action.

### D. Breach of the Duty of Loyalty

Plaintiff's third claim is a state law cause of action for breach of the duty of loyalty arising from Defendants' alleged misappropriation of corporate assets, waste, and mismanagement. Defendant submit that Plaintiff's third claim is a derivative claim that belongs not to Plaintiff, but instead to the corporation and the shareholders. According to Defendants, because the claim is derivative in nature, Rule 23 requires Plaintiff to "allege with sufficient particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort."Fed. R. Civ. Proc. 23.1; *see also In re Silicon Graphics,* 183 F.3d at 989. In its Opposition to Defendant's motion to dismiss, Plaintiff concedes that its third claim is a derivative claim but argues that its allegations suffice to excuse pre-litigation demand on the board.

*13 Federal Rule of Civil Procedure 23.1 requires that the complaint in a derivative action be verified [FN6], and that it "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders ... , and the reasons for his failure to obtain the action or for not making the effort."Fed. R. Civ. Proc. 23.1 . In other words, a shareholder seeking to vindicate the interests of a corporation through a derivative suit must first demand action from the corporation's directors or plead with particularity the reasons why such demand would have been futile. *See id.*Rule 23.1, however, does not establish the circumstances under which demand would be futile. *See Kamen v. Kemper Fin. Serv., Inc.,* 500 U.S. 90, 96, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991). For these standards, the Court turns to the law of the state of incorporation; in this instance, Delaware. To show futility under Delaware law, a plaintiff must allege particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent, or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. *See Aronson v. Lewis,* 473 A.2d 805, 814 (Del.1984), *overruled on other grounds in, Brehm v. Eisner,* 746 A.2d 244 (Del.Supr. Feb 09, 2000). In this case, Plaintiff argues that the Complaint adequately pleads the first component of futility-that there was reasonable doubt that the directors were disinterested and independent.

> FN6. The purpose of the verification requirement is to discourage suits by plaintiffs who have no reason to believe that the accusations made in their complaints are true. *See Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966).

To create a reasonable doubt that a director is disinterested and independent the complaint must make particularized allegations showing that the director faces a "substantial likelihood" of liability for the wrongdoing alleged in the derivative claim. *Silicon Graphics,* 183 F.3d at 990 (citing *Aronson,* 473 A.2d at 815). And in a two person board, as is the case here, demand may be excused by particularized allegations creating a reasonable doubt that one of the directors is disinterested and independent. *Desimone v. Barrows,* 924 A.2d 908, 943 (Del.Ch.2007) (holding that where particularized allegations created a reasonable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 13
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

doubt that half the board was disinterested, demand was excused); *Beneville v. York,* 769 A.2d 80, 84-87 (Del.Ch.2000) (where one member of a two-person board cannot impartially consider demand, demand is excused).

Here, however, the Court cannot yet reach the merits of whether board demand was futile and whether there was a reasonable doubt as to whether Kuo was disinterested and independent, because Plaintiff has failed to satisfy the procedural prerequisites of Rule 23.1.[FN7] As set forth above, the threshold requirement under Rule 23.1 is the existence of a verified complaint, and that the plaintiff set forth therein, with particularity, the reasons for his failure to obtain the board action or for not making the effort. Because Plaintiff's Complaint is not verified, it cannot meet the initial requirements of Rule 23.1. For this reason, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's third claim for violation of Section 14(c). The Court **DISMISSES** Plaintiff's third claim **WITHOUT PREJUDICE.** Plaintiff shall have leave to amend this claim not later than 30 days from the filing date of this Order.

> FN7. At the hearing in this matter, Plaintiff's counsel conceded that this claim is derivative in nature and therefore must comply with Rule 23.1.

### D. Remaining State Law Claims-Appointment of a Receiver

*14 Plaintiff's fourth, fifth, and sixth claims are for the appointment of a receiver pursuant to Title 8 Delaware Code Sections 226(a)(3), 291, and Delaware common law, respectively. Defendants make three argument against these claims. First, Defendants insist that appointment of a receiver is a form of relief, and is not a claim by itself. Second, Defendants contend that receiver claims are governed exclusively by federal law. Third, Defendants submit that the claims are derivative in nature and therefore fail for the same reasons Plaintiff's third claim-noncompliance with Rule 23.1. Plaintiff responds arguing that its fourth, fifth, and sixth claims are governed by state law and are not derivative in nature.

### 1. The Receivership Claims Are Not Derivative in Nature

At the outset, the Court must consider Defendants' argument about whether Plaintiff's receivership claims are derivative in nature, and whether the claims therefore fail to comply with Rule 23.1. Neither the party nor the Court have located legal authority directly addressing the issue. However, the language of Title 8 Delaware Code Section 291 and Section 226(a) are nearly identical and both provide that an application for an appointment of a receiver may be brought by "any [ ] stockholder." 8 Del. §§ 291, 226(a). Neither statute limits the claims to derivative claims. Because these statutes are clear on their face and because Defendant has adduced no authority the contrary, the Court concludes that the current claims may be brought by an individual stockholder such as Plaintiff.

### 2. The Receivership Claims Exist

Next, the Court addresses Defendants' argument as to whether the receivership causes of action are merely remedies, or whether actual receivership claims exist under the law.

Plaintiff's fifth cause of action is for the appointment of a receiver pursuant to Section 291 of the Delaware Code. That section provides that the Court of Chancery may appoint a receiver "[w]henever a corporation shall be insolvent, ... on the application of any creditor or stockholder."8 Del.Code § 291. The Delaware Court of Chancery has interpreted this statute as creating a new right, not a new remedy. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 120 A. 852, 856 (Del.Ch.1923) (holding that right of a shareholder to have the assets of an insolvent corporation taken charge of by a receiver creates was an equitable right, and not merely an equitable remedy). In *Asmussen v. Quaker City Corp.,* 156 A. 180, 182-83 (Del.Ch.1931), the Court of Chancery reaffirmed that Mackenzie's view of the receivership statute was a correct statement of Delaware law, noting that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 14
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

the statute created a right that equity would not otherwise provide. *Asmussen,* 156 A. at 183. More recent Delaware decisions applying the statute likewise deal with it as a cause of action in its own right. *See Production Resources Group, L.L.C. v. NCT Group, Inc.,* 863 A.2d 772, 782 (Del.Ch.2004) (recognizing that creditor plaintiff had stated a claim for relief under section 291 of the General Corporation Law). Accordingly, the Court concludes that Section 291 does provide for a cause of action, and not just a remedy.

*15 Plaintiff's fourth cause of action is for the appointment of a receiver under Section 226 of the Delaware General Corporation Law, on the grounds that DVS has abandoned its business. The language of section 226 allowing a shareholder to seek the appointment of a receiver is nearly identical to that of section 291. Compare 8 Del.Code § 226(a) with 8 Del.Code. § 291. And, like Section 291, courts deal with the right created by Section 226 as a claim in and of itself, and not merely a remedy for some other claim. *Bentas v. Haseotes,* 769 A.2d 70, 71-72 (Del.Ch.2000) (addressing renewed motion for summary judgment on claim to appoint receiver under section 226). For this reason, the Court similarly concludes that Section 226 provides for a cause action, and not just a remedy.[FN8]

> FN8. Defendants also argue that the Court should dismiss Plaintiff's Section 226 claim because Plaintiff has failed to adequately allege that DVS has "abandoned its business." However, because the Court must take Plaintiff's allegations as true for purposes of this motion, and because Plaintiff has alleged that Defendant abandoned its business, the Court finds Defendants' argument here unpersuasive.

Finally, Plaintiff's sixth cause of action is for appointment of a receiver under Delaware common law. Like the claims for appointment of a receiver under Sections 291 and 226, the claim for appointment of a receiver is a claim in its own right under Delaware law, and not merely a form of relief. *See Vale v. Atlantic Coast & Inland Corp.,* 99 A.2d 396, 400 (Del.Ch.1953) (recognizing that the plaintiff had stated a claim for the appointment of a liquidating receiver of a solvent corporation). The elements of the claim are "fraud, gross mismanagement or extreme circumstances causing imminent danger of great loss which cannot be otherwise prevented."*Id.*

Accordingly, the Court finds that Plaintiff's fourth, fifth, and sixth causes of action are substantive claims under the law.

### 3. Federal Primacy of Receivership Claims

Defendants also contend that appointments of receivers in federal court are governed exclusively by federal law. The Court does not agree.

Defendants' argument is built on the premise that a receivership is never a right in and of itself, but only a remedy. (Defs.' Mot. 8-14 (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945))). The Court has already determined that Defendants' premise is wrong on the current record, and that Plaintiff's action for the appointment of a receiver is a claim in and of itself-a substantive right, not just a remedy. *See Mackenzie Oil Co.,* 120 A. at 856. To the extent Defendants' cited authorities consider questions of receivership, the authorities consider applications for the appointment of *temporary receivers* in the context of diversity actions, and not for the appointment of receivers under substantive claims based on Delaware state law. *See Nat'l Partnership Inv. Corp.,* 153 F.3d at 1291 (considering motion to appoint receiver during the course of a foreclosure action); *Sterling v. Stewart,* 158 F.3d 1199, 1201 (11th Cir.1998) (upholding appointment of receiver in lieu of special litigation committee during course of shareholder's derivative action); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,* 999 F.2d 314, 316-17 (8th Cir.1993) (upholding, in action for breach of contract, appointment of receiver on motion of judgment creditor when it appeared that judgment debtor was hiding assets); *Varsames v. Palazzolo,* 96 F.Supp.2d 361, 363, 365

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 15

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

(S.D.N.Y.2000) (considering motion for appointment of receiver during action for breach of contract and related claims); *Kelleam v. Maryland Cas. Co.*, 312 U.S. 377, 380-81, 61 S.Ct. 595, 85 L.Ed. 899 (1941) (holding that district court erred in appointing ancillary receiver and adjudicating issues regarding property that was the subject of a pending related probate proceeding in state court); *Britton v. Green*, 325 F.2d 377, 380 (10th Cir.1963) (considering application for temporary restraining order and receiver in diversity case for breach of fiduciary duty).

*16 *Mintzer v. Arthur L. Wright Co.*, 263 F.2d 823 (3rd Cir.1959) bests illustrates the distinction between the Delaware claims for receivership made here and a motion seeking a receiver as ancillary relief. In *Mintzer* the claim was by clients of a securities broker for breach of fiduciary duty.*Id.* at 824.Among other things, the plaintiffs sought a receiver *pendente lite* for the purpose of preserving defendant's assets ancillary to the litigation. *Id.* Following a hearing, the district court appointed a receiver, and the defendant appealed the order claiming that the grounds for appointment of a receiver did not exist and that the district court had no authority to appoint a receiver in any event. *Id.* On appeal, one issue considered by the Third Circuit was whether the district court was bound to appoint a receiver in the case if the courts of the state in which the federal district court sat would appoint a receiver. *Id.* at 825.The Third Circuit held that if the right to a receiver was a substantive right under state law, a district court would be bound to afford that right to a plaintiff in a diversity case. *Id.* at 825.

In so doing, the Third Circuit distinguished the case of *Pusey & Jones Co. v. Hanssen*, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763 (1923), a pre-*Erie* decision. *Id.* at 825.*Pusey* relied on the "equitable remedial rights doctrine" and held that a federal court did not need to appoint a receiver under the predecessor to Section 291 of the Delaware Code. *Pusey & Jones Co.*, 261 U.S. at 497-98. That Court held that the statute conferred only a remedy, not a right. *Id.* at 499.The state statute could not, according to the Court, expand the scope of relief that a federal court sitting in equity could award. *Id.* Therefore, the Court reasoned, a federal court sitting in equity did not need to award a receiver under the statute even though a receiver would have been available in Delaware court. *Id.*

However, *Mintzer* later stated that the *Pusey & Jones Co.* holding "can correctly be said to have been vitiated by the implications of *Erie R. Co. v. Tompkins*,... and *Guaranty Trust Co. of New York v. York.*"*Mintzer*, 263 F.2d at 825 (citing *Erie*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188;*Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)). As *Mintzer* stated, "[t]oday under those cases it is likely that the Delaware statute involved in the *Pusey & Jones* case would be regarded as supplying a substantive right which the federal courts in a diversity action would recognize."*Id.*

A review of *Guaranty Trust Co.* also bolsters conclusion. *Guaranty Trust Co.* did not involve an action or motion for a receiver. *Guaranty Trust Co.*, 326 U.S. at 100-01. Rather, the chief question was whether a federal court sitting in equity needed to apply the state statute of limitations to a diversity case before it. *Id.* at 101.In resolving the question, *Guaranty Trust* discussed the *Pusey & Jones* decision and made clear that had the Delaware receiver statute been one creating a substantive right, the district court would have had the power to appoint a receiver under the statute. *Id.* at 107 n. 4. The Court then referred the reader to *Mackenzie Oil* "for Delaware's view as to the nature of the Delaware statute" as conferring a substantive right and not just a remedy. *Id.* at 107 n. 3 (citing *Mackenzie Oil Co.*, 120 A. 852). Therefore, the Court cannot conclude that Plaintiff's current claims for an appointment of a receiver are governed exclusively by federal law.

*17 For these reasons the Court cannot grant Defendants' motion to dismiss the receivership claims on the grounds articulated by Defendants. The Court therefore **DENIES** Defendants' motion to dismiss Plaintiff's fourth, fifth, and sixth causes of action.

**E. Shareholder Meeting**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 16

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

Plaintiff's final claim seeks an order compelling Defendants to hold an annual shareholder meeting pursuant to 8 Delaware Code § 211(c). Defendants suggest that such a claim is moot because they have already scheduled a meeting, and alternatively argue that the claim is a procedural governance matter that is best left to the Delaware Court of Chancery and not this Court. The Court disagrees.

Mootness is a jurisdictional defect that can be raised at any time by the parties or the court *sua sponte. Grove v. De La Cruz,* 407 F.Supp.2d 1126, 1130 (C.D.Cal.2005) (citing *Barilla v. Ervin,* 886 F.2d 1514, 1519 (9th Cir.1989))."[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."*County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969))."Mere voluntary cessation of allegedly illegal conduct does not moot a case; it if did, the courts would be compelled to leave [t]he defendant ... free to return to his old ways."*United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *see also, Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 222, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000). Voluntary cessation of illegal conduct does not render a challenge to that conduct moot unless "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."*Barnes v. Healy,* 980 F.2d 572, 580 (9th Cir.1992); *see also Lindquist v. Idaho State Bd. of Corrections,* 776 F.2d 851, 854 (9th Cir.1985) (quoting *Davis,* 440 U.S. at 631)."The burden of demonstrating mootness 'is a heavy one.' "*Davis,* 440 U.S. at 631 (quoting *W.T. Grant,* 345 U.S. at 632-33).

Here, Defendants have not met their burden of establishing mootness. If Defendants have already executed a corporate resolution calling for an annual meeting, then this claim may likely become moot. However, until the meeting actually convenes, there is little to prevent Defendants from cancelling or postponing it. Because voluntary cessation of certain conduct is not sufficient to render a claim moot, the Court cannot grant Defendants' motion as to this claim. If Defendants intends to convene the meeting, as they have represented to this Court, the Court sees little harm in preserving the current claim. Finally, as to Plaintiff's argument that this claim is best left for the Court of Chancery, Plaintiff has adduced no authority indicating that the current claim is not properly before this Court. For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's seventh claim.

### F. Supplemental Jurisdiction Over the Remaining State Law Claims

*18 As long as the complaint sets forth a claim " arising under" federal law, the district court may adjudicate state law claims that are transactionally related to the federal claim. *See*28 U.S.C. § 1367(a) . The fact that the court rules against plaintiff and dismisses the federal claim prior to trial does not automatically oust the court of supplemental jurisdiction. *See* Judge William W. Schwarzer et al., *Federal Civil Procedure Before Trial,* § 2:145.2 (2006). The dismissal is a factor for the court to consider in deciding whether to decline to exercise its supplemental jurisdiction. A court has discretion to retain the supplemental state law claim and grant relief thereon. 28 U.S.C. § 1367(c)(3); *see United Mine Workers v. Gibbs,* 383 U.S. 715, 728, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Brady v. Brown,* 51 F.3d 810, 816 (9th Cir.1995). The court may decline to exercise supplemental jurisdiction where any of the following factors exist: (1) the state law claim involves a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim on which the court's original jurisdiction is based; (3) the district court has dismissed the claims on which its original jurisdiction was based; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."28 U.S.C. § 1367(c)(1) -(4). Here, because the Court has granted leave for Plaintiff to amend its current claims that arise under federal law, and because this case is its early procedural stages, the Court will continue exercise

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470
**(Cite as: Slip Copy)**

Page 17

supplemental jurisdiction over the remaining state law claims at this point in the litigation.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss, and **DISMISSES** Plaintiff's first, second, and third claims **WITHOUT PREJUDICE**. Plaintiff shall have leave to file an Amended Complaint not later than 30 days from the filing date of this Order.

The Case Management Conference scheduled for October 9, 2007 at 2:00 p.m. is **VACATED** and rescheduled for November 6, 2007 at 2:00 p.m.

**IT IS SO ORDERED.**

N.D.Cal.,2007.
Glenbrook Capital Ltd. Partnership v. Kuo
Slip Copy, 2007 WL 2601260 (N.D.Cal.), Fed. Sec. L. Rep. P 94,470

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.