# EXHIBIT 8



Westlaw.

Slip Copy

Page 1

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
(Cite as: Slip Copy)

**H**
S.E.C. v. Alexander
E.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
SECURITIES and EXCHANGE COMMISSION,
Plaintiff,
v.
Jacob "Kobi" ALEXANDER, David Kreinberg, and William F. Sorin, Defendants.
No. 06-CV-3844 (NGG)(RER).

Sept. 26, 2007.

Suzanne Jeanne Romajas, United States Securities and Exchange Commission, Washington, DC, for Plaintiff.
Jeremy Hugh Temkin, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., New York, NY, for Defendants.

*MEMORANDUM & ORDER*
GARAUFIS, United States District Judge.
*1 Plaintiff Securities and Exchange Commission (" Plaintiff" or "Commission") brings this civil enforcement action for violations of the federal securities laws in connection with the backdating of stock options issued by Comverse Technologies, Inc. ("Comverse"). At this time, the Commission moves to strike three affirmative defenses asserted by Defendant Jacob "Kobi" Alexander ("Alexander" or "Defendant"), namely the second (failure to effectuate proper service of process), third (statute of limitations), and fourth (laches). For the reasons set forth below, the Commission's motion is granted in part and denied in part. The Commission's motion to strike the second affirmative defense is treated as a motion for summary judgment and is granted.

**I. FACTUAL BACKGROUND**

Because the court is considering only the Commission's motion to strike three specific affirmative defenses asserted in Alexander's Answer, it is not necessary to set forth the complete factual and procedural background of this case at this time.

In its Complaint, the Commission alleges that Alexander and others "orchestrated" a scheme in which Comverse granted "undisclosed in-the-money options to themselves and others, by backdating stock option grants from 1991 through 2002 to coincide with historically low closing prices for [Comverse's] stock."(Compl.¶¶ 1-2.) From 1999 through at least 2002, Alexander and at least one other individual allegedly "created a slush fund of backdated options which Alexander ... used to recruit and retain key personnel."(*Id.* ¶ 4.) This slush fund was created by awarding options to fictitious employees. (*Id.*)

Between 1991 and 2001, Alexander allegedly realized a gain of almost $138 million from sales of stock obtained through exercising backdating options.(*Id.* ¶ 7.) Of this amount, at least $6.4 million constitutes the in-the-money portion at the time of the grant. (*Id.*) The Commission seeks: (1) disgorgement of all of the $138 million that Alexander allegedly gained through sale of stock obtained through exercising backdated options; (2) a permanent injunction barring Alexander from committing future violations; (3) an injunction prohibiting Alexander from acting as an officer or director of public companies; and (4) civil monetary penalties. (*Id.* at pp. 9-10.)

**II. DISCUSSION**

**A. Standards of Review**

**1. Rule 12(f)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 2
Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Rule 12(f) of the Federal Rules of Civil Procedure provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."Motions to strike are generally disfavored. *Salcer v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds*478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). In order to prevail on a motion to strike, the plaintiff must show that: "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced by inclusion of the defense."*SEC v. McCaskey,* 56 F.Supp.2d 323, 326 (S.D.N.Y.1999).

*2 With respect to the second prong of this test, motions pursuant to Rule 12(f)"are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts."5C Wright & Miller, Fed. Prac. & Proc. § 1381. That being said, the Second Circuit has noted that " 'courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.'"*Salcer,* 744 F.2d at 939 ( *quoting* Wright & Miller, 5C Fed. Prac. & Proc. § 1381).

With respect to the third prong, "[i]ncreased time and expense of trial may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion."*SEC v. Toomey,* 866 F.Supp. 719, 722 (S.D.N.Y.1992).

**2. Rule 56**

On September 12, 2007, the court issued an Order placing the parties on notice that it may treat the portion of the instant motion addressing Alexander's service of process defense as a motion for summary judgment. In that Order, the court provided the parties an opportunity to submit any additional evidence or briefing that the parties believed was appropriate. In response to the Order, Alexander submitted a Memorandum in Further Opposition to Plaintiff's Motion to Strike His Second Affirmative Defense ("Alexander Supp. Opp.") and a September 20, 2007 Affidavit of Harald Geier (" Supp. Geier Aff.") and the Commission submitted a September 19, 2007 letter-brief ("SEC Supp. Br.").

In a footnote, Alexander states that he "does not consent to the Court's treating the Commission's motion as one for summary judgment .[.]" (Alexander Supp. Opp. at 2 n. 1.) Alexander is correct that, unlike Federal Rules of Civil Procedure 12(b)(6) and 12(c), Rule 12(f) does not explicitly state that a motion to strike should be treated as a motion for summary judgment if matters outside the pleadings are presented to the court. Alexander cites to *Henkin v. Rockower Brothers. Inc.,* 259 F.Supp. 202, 206 (S.D.N.Y.1966), where the court specifically found that "Rule 12(f) of the Federal Rules of Civil Procedure does not contain the phrase that allows Rule 12(b)(6) and Rule 12(c) motions to be converted into motions for summary judgment."

However, the great weight of authority suggests that when both parties have submitted evidence outside the pleadings in briefing a motion to strike, the court may treat the motion as one for partial summary judgment pursuant to Rule 56. *See Liberty Mutual Ins. Co. v. Precision Valve Corp.,* 402 F.Supp.2d 481, 484-85 (S.D.N.Y.2005) (converting a Rule 12(f) motion into a motion for summary judgment where the parties submitted facts outside the pleadings).*Accord Alliance Media Group. Inc. v. Mogul Media. Inc.,* No. 02-CV-5252 (SLT), 2005 WL 1804473, at *1 (E.D.N.Y.2005); *Paretti v. Cavalier Label Co.,* 702 F.Supp. 81, 85 (S.D.N.Y.1988) ("While conversion of a motion to strike into a motion for summary judgment is not explicitly authorized by the Federal Rules of Civil Procedure, where, as here, both parties clearly view the motion, however styled, as a motion for summary judgment, it will be so treated under Fed.R.Civ.P. 56(b)."). As a result, I shall treat the Commission's motion to strike Alexander's second affirmative defense as a motion for partial summary judgment.

*3 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 3
Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

law,"Fed. R. Civ. P, 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,"*Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 69 (2d Cir.2001) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))."A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Holtz,* 258 F.3d at 69 (citations and quotation marks omitted).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. 256 (1986). If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial ."Fed.R.Civ.P. 56(e)."The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture."*W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal quotations and citations omitted); *see also Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. *Glasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F.Supp.2d 569, 574 (S.D.N.Y.2004) (*citing Sarno v. Douglas Elliman-Gibbons & Ives,* 183 F.3d 155, 160 (2d Cir.1999)).

### B. Second Affirmative Defense: Service of Process

The Commission argues that Alexander was properly served when he personally received the Summons and Complaint from the Assistant Deputy Sheriff, High Court of Namibia, District of Windhoek, Namibia. The Commission asserts that this personal service satisfied (1) Fed.R.Civ.P. 4(f)(2)(A) because it was effected in the manner required by Namibian law and (2) Fed.R.Civ.P. 4(f)(2)(C)(i) because it was effected in a manner that is not prohibited by Namibian law. Defendant opposes both of these assertions. The Commission is correct on both grounds as a matter of law.

### *1. Service Under Rule 4(f)(2)(C)(i)*

Rule 4(f) (2)(C)(i) states that, provided (1) "there is no internationally agreed means of service," and (2) "that service is reasonably calculated to give notice, " service may be effected in a foreign country by " delivery to the individual personally of a copy of the summons and the complaint" unless service by such method is "prohibited by the law of the foreign country."Alexander does not argue(l) that Namibia is a signatory to the Hague Convention or any other treaty or agreement that provides for a method for service of process of a United States action upon an individual located in Namibia, or (2) that service by the Assistant Deputy Sheriff was not "reasonably calculated to give notice."

*4 Alexander's only argument that Rule 4(f)(2)(C)(i) was not satisfied is that "service of foreign process by personal delivery will not be valid under Namibian law absent an appropriate request from a state, territory or court outside of Namibia" and there is no evidence of such a request. (Defendant Jacob "Kobi" Alexander's Memorandum of Law in Opposition to Plaintiff's Motion to Strike His Second, Third and Fourth Affirmative Defenses (" Def.Opp.") at 9 (internal quotation marks omitted).) In effect, Alexander is arguing that Rule 4(f)(2)(C)(i) has not been satisfied because personal service by the Assistant Deputy Sheriff is " prohibited" under Namibian law in the absence of a request from the United States for such service. Alexander is mistaken.

When Rule 4(f)(2)(C)(i) is read alongside Rule 4(f)(2)(A), it becomes clear that 4(f)(2)(C)(i) permits any method of service that is not specifically proscribed by the foreign jurisdiction in which the service is effected.Rule 4(f)(2)(A) permits service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction" so long as the same two requirements

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                                         Page 4

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

of Rule 4(f)(2) (C)(i) are met-that there is no international agreement providing for a particular method of service and that the service is " reasonably calculated to give notice." Most courts to have considered the question have held that, when these two provisions are read alongside each other, Rule 4(f)(2)(C)(i) permits personal service so long as the law of the foreign jurisdiction does not specifically forbid personal service:

Thus, if subsection (f)(2)(C) is inapplicable where a form of return receipt mail is not prescribed by the law of a foreign country, then a plaintiff's failure to satisfy subsection (f)(2) (A) would preclude the availability of subsection (f)(2)(C) thereby making the latter subsection useless. In order to give subsection (f)(2)(C) operative effect, the subsection should be interpreted *to permit service of process by the alternative forms of service that, while not specifically prescribed by the laws of a foreign country, are also not prohibited by such laws.*

*Resource Ventures, Inc. v. Resource Mgmt. Int'l, Inc.,* 42 F.Supp.2d 423, 430 (D.C.Del.1999) (emphasis added). Most other courts to have considered the issue have reached the same outcome. *See Stiefel Laboratories, Inc. v. Galenium USA, LLC,* No. 05-23108-Civ., 2006 WL 1548006, at *1 (S.D.Fla. Apr.11, 2006) ("Service upon a foreign corporation via international mail is authorized ... unless expressly prohibited by the law of the foreign state."); *Polargrid LLC v. Videsh Sanchar Nigam Ltd.,* No. 04-cv-9578 (TPG), 2006 WL 903184, at *2-3 (S.D.N.Y. Apr. 7, 2006) (mailing defendant located in India summons and complaint via Federal Express satisfied (f)(2)(C)(ii) even though India did not specifically permit service by Federal Express because Indian law did not prohibit service via Federal Express); *Trueposition, Inc. v. Sunon, Inc.,* No. 05-3023(JED), 2006 WL 1686635, at *3-6 (E.D. Penn. June 14, 2006) (finding that Taiwanese corporation properly served under (f)(2)(C)(ii) via international registered mail because this method was not "expressly prohibited" by Taiwanese law); *Power Integrations, Inc. v. Sys. Gen. Corp.,* No. C-04-02581 (JSW), 2004 WL 2806168, at *1-2 (N.D.Cal. Dec. 7, 2004) (holding same with respect to service upon Taiwanese corporation by Federal Express). Similarly, at least one civil procedure treatise agrees that reading (f)(2)(C) to require that the foreign sovereign specifically provide for the method of service "seems inconsistent with the text on its face, which indicates that personal service and service by mail are permissible so long as they are not forbidden by the foreign country's laws." Wright & Miller, 4B Fed. Prac. & Proc. § 1134 (3d ed.2007).

*5 Alexander cites to *Jung v. Neschis,* No. 01 Civ. 6993(RMB), 2003 WL 1807202 (S.D.N.Y. Apr.7, 2003), in support of the proposition that service in this case was not properly made pursuant to Rule 4(f)(2)(C)(i). In *Jung,* Judge Berman held that international registered mail to a defendant in Liechtenstein did not satisfy subsection (f)(2)(C) because the laws of Liechtenstein did not permit such service. There are two plausible readings of *Jung.* First, Judge Berman may have read (f)(2)(C) to mean that service pursuant to that provision is effective unless it is expressly prohibited by the law of the foreign sovereign and that Liechtenstein expressly forbids service via international mail. *See id.* at *3 ("Having the Clerk of the Court for the Southern District mail service to Defendants is not sufficient, i.e. it is, in these circumstances, ' prohibited by the laws' of Liechtenstein and was, therefore, improper under Rule 4(f)(2)(c)(ii)."). Alternatively, Judge Berman may have read Rule 4(f)(2)(C) to require that the foreign jurisdiction expressly permit service by one of the methods included in 4(f)(2)(C) in order for service under that subsection to be valid. *See id.* (citing cases which appear to hold as such). To the extent Judge Berman concluded the latter, I respectfully decline to follow *Jung.* Most courts to have considered the issue have concluded that the foreign jurisdiction must expressly prohibit the means of service included in (f)(2)(C) in order to preclude service under that subdivision. *See Trueposition,* 2006 WL 1686635, at *4 (collecting cases and concluding that "[m]ore courts" have interpreted (f)(2)(C) in this manner). I agree with this majority position. To the extent that Judge Berman's decision was based on a finding that Liechtenstein expressly prohibited service via international registered mail. *Trueposition* is distinguishable.

Alexander asserts that Namibian law expressly

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

prohibited personal service by the Assistant Deputy Sheriff in this case. Alexander argues that Namibian law states that a request for service of civil process from a foreign country must be received from "any state, territory or court outside Namibia."[FN1] (Harald Geier Affidavit ("Geier Aff.") ¶¶ 9-10; Def. Opp. at 8.) In his supplemental briefing, Alexander points to the following portion of Geier's affidavit

> FN1. Geier also stated that "I noticed that in this instance other shortcomings also exist. For example, proof of service was not furnished in the form of an affidavit as required by Rule 4(13)." (Geier Aff. ¶ 10.) In his brief, however, Alexander does not raise this alleged defect in the proof of service or any other defect in the service of process. Further, a vague and conclusory affidavit is insufficient to defeat summary judgment. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir.1998) ( "Statements [contained in an affidavit] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 78 F.3d 61, 63 (2d Cir.1996) (holding that conclusory statements that "merely assert that there is a dispute over the amount owed under the subcontract.... are not sufficient to satisfy appellants' burden of coming forward with evidence directed to specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted).

The[ ] provisions of Namibian law [that provide that a Deputy Sheriff may personally serve an individual in Namibia only after Namibia receives a request from a foreign state or court] are the only applicable provisions that address the service of civil process originating from a foreign country on persons in Namibia-applicable Namibian law makes no other provision for service of such process. Moreover, the peremptory language contained in those provisions indicates that [1] no other method of service may validly be attempted, or [2] that Parliament, when it enacted these peremptory provisions, intended [no] other methods of service to be of valid application.

\*6 (Geier Aff. ¶ 9.) Alexander asserts that Geier's statement that "no other method of service may validly be attempted" is testimony that Namibian law "prohibits" service by an Assistant Deputy Sheriff in the absence of a foreign government's request for service within the meaning of Rule 4(f)(2)(C)(i). (Alexander Supp. Opp. at 8.) Geier's affidavit is, at best, vague and is not particularly helpful. Geier states that the provisions of Namibian law that provide for an Assistant Deputy Sheriff to effect personal service once the appropriate Namibian authorities have received a request from a foreign state or court *"are the only applicable provisions that address the service of civil process originating from a foreign country on persons in Namibia"* (Geier Aff. ¶ 9 (emphasis added) .) As a result, with the possible exception of the Namibian laws that specifically permit Namibian officials to effect personal service when a request is received from a foreign government, it is clear that Namibia has no criminal, civil, regulatory law that prevents or prohibits an Assistant Deputy Sheriff from personally serving an individual in Namibia with notice of a foreign legal action. Thus, in this case, there is no concern that the service effected by the Assistant Deputy Sheriff violated a Namibian criminal or regulatory law or otherwise endangered the public safety of people in Namibia.

Instead, there is only Geier's statement that the Namibian laws that establish what kinds of service are permissible dictated the only forms of service that "may validly be attempted." (*Id.*) I read this vague statement to mean that Namibian courts would not recognize the service made in this case unless it had been made in response to a request by the United States. When read in context, nothing about Geier's affidavit suggests that Namibian law prohibits Assistant Deputy Sheriffs from effecting personal service of a complaint filed in a foreign court in the absence of a request from a foreign sovereign.

After all, most nations with a modern legal system are going to have laws that authorize specific forms of service and those laws are going to draw a line

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 6

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

between which forms of service are to be recognized by domestic courts and which are not. As discussed above, Rule 4(f)(2)(C)(i) permits personal service in a foreign jurisdiction so long as, *inter alia,* the form of personal service, *"while not specifically prescribed by the laws of a foreign country, [is] also not prohibited by such laws." Resource Ventures,* 42 F.Supp.2d at 430 (emphasis added). As a result, I find that service was valid under Rule 4(f)(2)(C)(i) because nothing about Namibian law expressly prohibits personal service by the Assistant Deputy Sheriff in the absence of a request from a foreign state or court.

### 2. Service Under Rule 4(f)(2)(A)

However, even if service of process were not valid under Rule 4(f)(2)(C)(i) in the absence of a request from the United States because Namibian law " prohibits" such service, the Commission is still entitled to partial summary judgment with respect to the service of process defense.

*7 Rule 4(f) (2)(A) permits service "in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction" so long as the same two requirements of Rule 4(f)(2)(C)(i) are met-that there is no international agreement providing for a particular method of service and that the service is " reasonably calculated to give notice." Alexander's only argument that service was not effected under Rule 4(f)(2)(A) is that there is no evidence that the United States requested Namibia to effect service on Alexander. (Alexander Opp. at 8-9.) Alexander is mistaken. There is no factual question as to whether the United States requested that Namibia effect service upon Alexander and, as a result, service of process was effected in accordance with Rule 4(f)(2)(A) as a matter of law. There are three sources of evidence that the United States did, in fact, request service.

First, the fact that service was made is, in and of itself, evidence that service was requested by the United States. Although the fact that service was made is only circumstantial evidence that service was requested, there is no basis for concluding that the Namibian Ministry of Justice directed that the High Court of Namibia effect process without a request from the United States.[FN2] (*See* Geier Aff. Exh. A.)

> FN2. This court recognizes that this aspect of the Commission's motion to strike is being considered under Rule 56 and, as a result, it is required to draw all reasonable inferences in favor of Alexander. One could debate whether it is "reasonable" to infer that the Ministry of Justice asked the Registrar of the High Court of Namibia to effect service and, in turn, the Registrar directed the Deputy Sheriff of Windhoek to effect service, in the absence of a request by the United States that service be effected. In any event, the court does not rest its finding that there is no factual question as to whether the United States made such a request on the fact that service was effected alone.

Second, Alexander's expert has attached the letter from the Namibian Ministry of Justice to the Registrar of the High Court of Namibia, requesting that notice of this action be served on Alexander. (*Id.*) The letter explicitly states, "kindly receive herewith a process that we received from the Federal Republic of Germany."(*Id.*) Alexander's expert on Namibian law has testified that the letter incorrectly identifies the Federal Republic of Germany as the source of the request for service. (Geier Aff. ¶ 6.) Alexander does not assert that the typographical error carries any legal consequence. Further, as pointed out by the Commission, despite the typographical error, the Registrar of the Namibian High Court and the Assistant Deputy Sheriff understood perfectly well that the United States had requested that service be made.[FN3] (*See* SEC Exh. 7 at 6 ("The original request for service of process received from THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK"), 7 (directing the Certificate confirming that service had been made to this court's attention), 9 (directing a bill for costs of effecting service to the Commission).) I find that the reference to the typographical error in no way

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 7
Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

disturbs the effectiveness of the Ministry of Justice's request or the service of process overall.

> FN3. Although certain Namibian officials may have had different impressions as to whether it was this court or the Commission that requested service be made upon Alexander, any factual questions on this point are immaterial because Alexander's own expert testifies that Namibian law permits the request for service to be made by a foreign state or court. (Geier Aff. ¶ 9.)

Third, the Commission's counsel, Suzanne J. Romajas, has represented to the court that "[o]n November 27, 2006, ... the Commission sent via International Federal Express a letter to the Namibian Central Authority along with the Summons and Complaint requesting service of the Summons and Complaint on Alexander." (Commission Rep. at 5 n. 3.)

*8 In contrast to this significant body of evidence demonstrating that the United States did request that the Namibian authorities serve Alexander with notice of this action, Alexander has not submitted any evidence suggesting that no such request was made. Instead, Alexander makes two arguments in opposition to the Commission's assertion that the United States did request Namibia to effect service on Alexander. First, Alexander argue; that the High Court of Namibia has not certified that service of Alexander was proper. (Alexander Supp. Opp at 4.) The *Registrar* of the High Court has certified that service was proper. (SEC Rep. Exh. 7 at 6.) However, the court does not rely upon the Registrar's certification that service was proper in reaching its finding that the Commission is entitled to summary judgment and, as a result, Alexander's argument on this point warrants no further discussion.

Second, Alexander argues that the Commission has failed to submit the actual request made to Namibian authorities and, as a result, it is impossible for this court to determine whether the request is sufficient under Namibian law. (Alexander Supp. Opp. at 5-8.) In this regard, Alexander asserts that the Commission is not the United States agency responsible for communicating with foreign governments on behalf of the United States and, thus, may not have been authorized to make the request. (*Id.* at 6-7.) However, Alexander has not pointed to any formal or substantive requirement that the request by the foreign court or state must satisfy in order to be valid under Namibian law. To the contrary, Alexander's own expert testifies only that, in order for service to be valid in this case, "a request for service of civil process from a foreign country must first be received from 'any state territory or court outside Namibia.'" (Geier Aff. ¶ 9.) Because this court has determined that there is no factual question as to whether the United States requested that Namibia serve Alexander, and Alexander has failed to create any material factual question as to the sufficiency of the request, I find that, as a matter of law, Alexander was served in a way that conformed to the method explicitly permitted by Namibian law. As a result, even if service of process was not valid under 4(f)(2)(C)(i), service of process was valid under Rule 4(f)(2)(A) and the Commission is entitled to partial summary judgment with respect to Alexander's second affirmative defense.

### C. Third Affirmative Defense: Statute of Limitations

The Commission moves to strike Alexander's statute of limitations defense. Both parties agree that the Commission's claims for civil penalties are governed by the five-year statute of limitations set out in 28 U.S.C. § 2462. (SEC Mem. at 9; Def. Opp. at 11.) This section provides:

Except as otherwise provided by Act of Congress, an action, suit, or proceeding for the enforcement of any civil fine, penalty or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued.

*9 28 U.S.C. § 2462. The Commission's motion raises two legal issues: (1) to what extent are the Commission's claims seeking "penalties" within the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 8

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

meaning of Section 2462? and (2) when did the Commission's claims accrue? Each issue will be considered in turn.

*1. Applicability of Section 2462*

The Commission argues that three forms of relief that it seeks are equitable in nature, and as a result, not subject to Section 2462. (SEC Mem. at 8-9.) Specifically, the Commission argues that its request for an order (1) permanently enjoining Alexander from violating federal securities laws, (2) requiring Alexander to disgorge ill-gotten gains, and, (3) barring Alexander from serving as an officer or director of a public company are all equitable.(*Id.*)

It is clear that equitable claims which do not constitute a "civil fine, penalty, or forfeiture" are not subject to the statute of limitations contained in Section 2462. *See, e.g., SEC v. Jones,* 476 F.Supp.2d 374, 380 (S.D.N.Y.2007) (hereinafter, *Jones II*). Alexander does not dispute this proposition. (Alexander Opp. at 12-16.) What is less clear, however, is whether the three forms of relief at issue here-an injunction, disgorgement, and a director and officer bar-are equitable as a matter of law or may constitute a "penalty" depending on the facts of this case. The District of Columbia Circuit has held that a fact-intensive inquiry is required, finding that "a 'penalty,' as the term is used in Section 2462, is a form of punishment imposed by the government for unlawful or proscribed conduct, which goes beyond remedying the damage caused to the harmed parties by the defendant's action."*Johnson v. SEC,* 87 F.3d 484, 488 (D.C.Cir.1996). Other courts have followed this approach. *E.g. Jones II,* 476 F.Supp.2d at 381 (" the limitations period in Section 2462 applies to civil penalties and equitable relief which seeks to punish, but does not apply to equitable relief which seeks to remedy a past wrong or protect the public from future harm.").

Several courts in the Second Circuit, however, have held that at least some of the forms of relief at issue here are equitable as a matter of law, and as a result, are not subject to the limitation contained in Section 2462. *See SEC v. McCaskey,* 56 F.Supp.2d 323, 325-26 (S.D.N.Y.1999) (finding that injunction prohibiting defendants from future securities laws violations, disgorgement of illegal profits, and order prohibiting defendants from serving as officers and directors are equitable remedies as a matter of law); *SEC v. Lorin,* 869 F.Supp. 1117, 1122 (S.D.N.Y.1994) (finding disgorgement is equitable as a matter of law).

I will not dispose of this issue at this time for two reasons. First, there is a significant difference of opinion as to whether a factual inquiry is required to determine whether the three forms of relief that the Commission asserts are equitable in nature and, thus, not subject to Section 2462. Second, at this stage, it is impossible for the court to foresee every potential factual development in this case. For instance, even if this court were to conclude that an officer or director bar is equitable in this case because it would be designed to avoid future harm, *see Jones II,* 476 F.Supp.2d at 481, the Commission may ultimately present arguments in support of such a bar that transform the bar into a form of punishment.

*2. Accrual of Claims*

*10 The Commission asserts that to the extent its claims are for "penalties" within the meaning of Section 2462, the claims did not accrue until the Commission discovered the fraud or should have discovered the fraud upon which the claims are based (the "discovery rule"). (SEC Mem. at 9-13.) Alexander argues that the Commission's claims accrued at the time the underlying fraud was committed (the "violation rule"). (Alexander Opp. at 16-18.)

Generally, courts have concluded that a claim for penalties subject to Section 2462 accrues at the time the violation giving rise to the penalties occurs. *See 3M Company (Minnesota Mining and Manufacturing) v. Browner,* 17 F.5d 1453, 1460-63 (D.C.Cir.1994); *United States v. Core Laboratories. Inc.,* 759 F.2d 480, 482-84 (5th Cir.1985); *United States v. Witherspoon,* 211 F.2d 858, 862 (6th Cir.1954); *SEC v. Jones,* No. 05 Civ. 7044(RCC), 2006 WL 1082476, at *3-6 (S.D.N.Y.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 9

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Apr. 25, 2006) (hereinafter, *Jones I*);*SEC v. Scrushy,* No. CV-03-J-615S, 2005 WL 3279894, at *2-3 (N.D.Ala. Nov.29, 2005) (concluding that it was bound by *Trawinski v. United Techs.,* 313 F.3d 1295, 1298 (11th Cir.2002)): *United States v. Maillard,* 26 F. Cas. 1140, 1143 (S.D.N.Y.1871); *In re Landsberg,* 14 F. Cas. 1065 (E.D.Mich.1870); *see also Trawinski,* 313 F.3d at 1298. In contrast, there appears to be only one case finding that a claim that falls under the Section 2462 statute of limitations accrues at the time the violation was discovered or should have been discovered by the agency bringing the enforcement action. *See SEC v. Buntrock,* No. 02 C 2180, 2004 WL 1179423, at *11-12 (N.D.Ill. May 25, 2004).

The Commission argues that most of the cases finding that penalties claims accrue at the time the violation occurs are inapplicable because they are not fraud cases. (SEC Rep. at 15-19.) The Commission's position is that penalties claims arising out of violations that constitute fraud accrue under a discovery rule. (*Id.*) In fact, only a few courts have found that penalties claims based on fraudulent conduct accrue at the time of the violation. *See Witherspoon,* 211 F.2d at 862;*Jones II,* 2006 WL 1082476, at *3-6;*Maillard,* 26 F. Cas. at 1143.[FN4]Further, none of these decisions is, in and of itself, particularly persuasive.

> FN4. In *SEC v. Scrushy,* the court held that a claim for penalties governed by Section 2462 accrued at the time the violation occurred.*Scrushy,* 2005 WL 3279894, at *3. In that case, the court "[could not] determine whether the plaintiff [wa]s attempting to allege fraud or not."*Id.* at *1.

*Witherspoon,* the only Court of Appeals decision to reach this outcome, did so without considering the issue. In *Witherspoon,* the Sixth Circuit, in conclusory fashion, stated that "the statute of limitations ran from the time the acts were committed, for a period of five years thereafter, as provided by title 28 U.S.C. § 2462."*Witherspoon,* 211 F.2d at 862. There is nothing in the published decision to suggest that the *Witherspoon* court confronted the issue of whether a Section 2462 claim arising from fraud should accrue pursuant to a discovery rule.

In *United States v. Maillard,* 26 F. Cas. at 1143, the Southern District of New York held that (1) the doctrine of equitable tolling did not apply to an action subject to Section 2462's predecessor, and (2) claims subject to Section 2462 accrue at the time of the violation as opposed to the time of discovery. It appears that the former point is no longer good law. *See Jones I,* 2006 WL 1084276, at *6 (holding that fraudulent concealment doctrine applies to action by SEC governed by Section 2462 limitations period); *see also 3M,* 17 F.3d at 1461 n. 15 ("[I]t may be that in future cases EPA could invoke the fraudulent concealment doctrine to toll the statute of limitations."). With respect to the latter point, the *Maillard* court reasoned that "if they were to prevail, they would require the court to admit fraudulent concealment as an exception to the running of the limitation [.]"*Id.*As a result, this conclusion rests on the same apparently invalid premise.

*11 The most persuasive case finding that a fraud claim subject to Section 2462 accrues at the time the fraud occurred is *Jones I.* In that case, the Southern District of New York court relied upon the District of Columbia Circuit's ("D.C.Circuit") decision in *3M Company (Minnesota Mining and Manufacturing) v. Browner,* 17 F.3d 1453, 1460-63 (D.C.Cir.1994).*See Jones I,* 2006 WL 1084276, at *6 ("The Court [ ] finds *3M v. Browner* instructive." ). In *3M,* which involved a penalties action by the Environmental Protection Agency for violations of environmental laws, the D.C. Circuit held that a claim for penalties subject to the Section 2462 statute of limitations accrues at the time the violation upon which the penalties are based occurred. The *3M* court carefully examined the text of the statute and concluded that (1) prior and subsequent to the time Section 2462's predecessor was enacted by Congress in 1839, the Supreme Court had clearly concluded that claims accrue at the time the cause of action existed as opposed to the time the cause of action was discovered and (2) although the statute has been amended since it was first enacted, those amendments were intended "as changes in phraseology" and, thus, they in no way

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 10
Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

substantively amended the statute. *Id.* at 1458, 1462.

The D.C. Circuit reasoned that the purpose of the "discovery rule" is to protect a plaintiff who has suffered a latent injury and, as a result, could not bring a claim until he discovered the injury. *Id.* at 1460.The court explained that there is no similar justification for delaying the accrual of a claim for violation of environmental laws:
The rationale underlying the discovery of injury rule-that a claim cannot realistically be said to accrue until the claimant has suffered harm-is completely inapposite. The statute of limitations on which EPA would engraft its rule is aimed exclusively at restricting the time within which actions may be brought to recover fines, penalties, and forfeitures. Fines, penalties, and forfeitures, whether civil or criminal, may be considered a form of punishment. In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage. Immediately upon the violation, EPA may institute the proceeding to have the penalty imposed.... Because liability for the penalty attaches at the moment of the violation, one would expect this to be the time when the claim for the penalty "first accrued."
....An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; or because the nature of the statute makes it difficult to uncover violations; or because of some combination of these factors and others. In this case, EPA suggests a remand for an evidentiary hearing on such matters and proposes a test: whether, "in the exercise of due diligence," EPA should have discovered 3M's violations earlier than it did. The subject matter seems more appropriate for a congressional oversight hearing. We seriously doubt that conducting administrative or judicial hearings to determine whether an agency's enforcement branch adequately lived up to its responsibilities would be a workable or sensible method of administering any statute of limitations. Nor do we understand how any of this relates to the reasons why we have a statute of limitations in penalty cases. An agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents in penalty actions brought decades after alleged violations are finally discovered. Most important, nothing in the language of § 2462 even arguably makes the running of the limitations period turn on the degree of difficulty an agency experiences in detecting violations.

*12 *Id.* at 1460-61 (internal citation and footnote omitted).

The Commission argues that *3M*'s reasoning is not applicable in the context of a penalties claim arising from fraud. There is a serious question as to whether the *3M* court's reasoning applies in the fraud context. First, the *3M* court found that in 1839, when Section 2462's predecessor was passed, the Supreme Court had made clear that claims accrue at the time the conduct giving rise to the claim occurs; in 1839, however, case law addressing when fraud claims accrued was far less clear. In *Sherwood v. Sutton,* 21 F. Cas. 1303 (Story, Circuit Justice, C.C.N.H. 1828). Justice Story, sitting as a Circuit Justice, found that a New Hampshire statute of limitations did not bar a claim that the defendant had fraudulently concealed from the plaintiff. The court explained as follows:
The inference deducible from this view of the cases is, that the construction adopted by these courts, that the concealment of the fraud avoids the bar of the statute of limitations, is founded in solid sense, and is a natural limitation upon the language of the statute. *I do not stop to inquire, whether it is to be deemed an implied exception out of the words of the statute, or whether the right of action, in a legal sense, does not accrue until the discovery of the fraud. The authorities present some diversity of judgment in this respect.*

*Id.* at 1305 (emphasis added). Justice Story explained that to permit a defendant found to have engaged in fraud to benefit from a statute of limitations would run counter to the very purpose of enacting statutes of limitations in the first place:The statute of limitations was mainly intended to suppress fraud, by preventing fraudulent and unjust

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 11

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

claims from starting up at great distances of time, when the evidence might no longer be within the reach of the other party, by which they could be repelled. It ought not, then to be so construed, as to become an instrument to encourage fraud, if it admits of any other reasonable interpretation; and cases of fraud, therefore, form an implied exception, to be acted upon by courts of law and equity, according to the nature of their respective jurisdictions.

*Id.* at 1307. In reaching this conclusion, Justice Story carefully reviewed the cases on the subject. *See Exploration Co. v. United States,* 247 U.S. 435, 448, 38 S.Ct. 571, 62 L.Ed. 1200 (1918) (citing *Sherwood* and noting that the cases supporting the *Sherwood* court's decision "were very fully reviewed"). He noted that "courts of law, in at least four states, have adopted" the approach that Justice Story ultimately decided to take in *Sherwood. Sherwood,* 21 F. Cas. at 1308. The parties have not directed the court to any case or secondary source that provides a better description of the state of the law as to the accrual of fraud claims in the period before 1839.

The Commission asserts that four post-1839 cases support the proposition that fraud claims have generally been held to accrue pursuant to a discovery rule: *Holmberg v. Ambrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Exploration Co. v. United States,* 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918); *Bailey v. Glover,* 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636 (1874); and *Carr v. Hinton,* 5 F. Cas. 134 (Curtis, Circuit Justice, C.C. Maine 1852). In *Bailey v. Glover,* the Supreme Court held that a fraud claim brought under a bankruptcy statute did not begin to accrue until the claim was discovered or should have been discovered through due diligence. *Bailey,* 88 U.S. at 349-50. The bankruptcy statute included the following statute of limitations: "no suit at law or in equity shall in any case be maintainable ... in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued[.]" *Id.* at 344. Justice Miller explained the court's reasoning:

*13 We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

....

To hold that by concealing a fraud or by committing a fraud in the manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side.

... [I]n construing *this* statute of limitation passed by the Congress of the United States as part of the law of bankruptcy, we hold that when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

*Id.* at 348-50 (emphasis in original). *See also Holmberg v. Armbrecht,* 327 U.S. 392, 396-97, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (Frankfurter, J.) (holding fraud action in equity under Farm Loan Act accrues under the discovery rule announced in *Bailey*).

Alexander argues that *Bailey* stands only for the proposition that a court should use its equitable powers to toll a statute of limitations when the defendant has fraudulently concealed the claim as opposed to establishing a discovery rule for the accrual of fraud claims. (Sept. 7, 2007 Letter from Jeremy H. Temkin (Docket # 57) ("Temkin Let.") at 2.) The Second Circuit, however, has read *Bailey* to "h[o]ld that in an action to enforce a federally created right to recover for fraud, a federally established period of limitation does not *begin to run* until the fraud is discovered, whether the action was in equity, as it there was, or at law." *Moviecolor*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

Page 12

*Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 83 (2d Cir.1961) (Friendly, J.) (emphasis added).*See also Pearl v. City of Lone Beach,* 296 F.3d 76, 80 n. 3 (2d Cir.2002) ("The [*Bailey* ] Court appears to have considered the matter one of accrual because it went on to note that where a party injured by fraud remains ignorant of the fraud through no fault of his own, 'the statute does not *begin to run* until the fraud is discovered,' even though there has been no concealment of the fraud by the other party.") ( quoting *Bailey,* 88 U.S. at 348) (emphasis added by *Pearl* court).

In *Exploration Co. v. United States,* the Supreme Court held that the rule announced in *Bailey* should govern the statute of limitations contained in a statute governing claims for cancellation of land patents even where the plaintiff is the United States:

*14 When Congress passed the act in question the rule of *Bailey v. Glover* was the established doctrine of this court. It was presumably enacted with the ruling of that case in mind. We cannot believe that Congress intended to give immunity to those who for the period named in the statute might be able to conceal their fraudulent action from the knowledge of the agents of the government. We are aware of no good reason why the rule, now almost universal, that statutes of limitations to set aside fraudulent transactions shall not begin to run until the discovery of the fraud, should not apply in favor of the government as well as a private individual. It is not our belief that Congress intended that the government should be deprived of title to public lands by those who add to the fraud by which they were obtained artifices which enabled them to conceal the fraudulent manner in which they were secured until the action was supposed to be barred by the lapse of six years.

*Exploration,* 247 U.S. at 449-50. Alexander points to the fact that *Holmberg* was an action in equity as opposed to an action at law. (Temkin Let. at 3.) Overall, case law concerning the meaning of "accrue" in the context of fraud cases is far more ambiguous in the period prior and subsequent to the adoption of the Section 2462's predecessor than in the non-fraud context addressed by the *3M* court.

In addition, many of the administrative concerns supporting the *3M* court's conclusion that Section 2462 claims accrue at the time of the violation do not apply in the context of fraud claims. The parties do not dispute that the statute of limitations governing the instant claims is equitably tolled in the event that the elements of that doctrine are satisfied. (SEC Mem. at 11-13; Alexander Opp. at 16.) Although the parties have not briefed the issue of what showing is required in order for equitable tolling to apply, one court has explained that in order for the doctrine to apply the plaintiff must show: "(1) that the [d]efendants concealed the existence of the cause of action, (2) that it did not discover it until some point within five years of commencing this action, and (3) that its continuing ignorance was not attributable to lack of diligence on its part."*Jones I,* 2006 WL 1084276, at *6. Assuming this is an accurate characterization of the equitable tolling doctrine, this court will have to consider the Commission's diligence in discovering the instant claims despite the *3M* court's conclusion. "We seriously doubt that conducting administrative or judicial hearings to determine whether an agency's enforcement branch adequately lived up to its responsibilities would be a workable or sensible method of administering any statute of limitations." *3M,* 17 F.3d at 1460. Irrespective of whether this court ultimately finds that a discovery rule or a violation rule governs the accrual of the Commission's claims that are subject to Section 2462, the court will have to consider the Commission's diligence.

*15 Overall, there are significant reasons for finding that a discovery rule governs the accrual of the limitation period contained in Section 2462. However, given the posture of this motion, and the specific facts of this case, at this time I will not reach the question of when the claims subject to Section 2462 accrue for several reasons. First, this is a difficult legal question and it is the most prudent course for the parties to conduct fact discovery on issues that arise in applying both discovery and violation rules, as well as equitable tolling on the basis of fraudulent concealment. *See Salcer,* 744 F.2d at 939 ("[S]everal courts have noted that a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                              Page 13

Slip Copy, 2007 WL 2816195 (E.D.N.Y.)
**(Cite as: Slip Copy)**

of law.") (internal quotation marks omitted). Because it is a difficult legal question, it is in all parties' interests to develop and preserve a factual record. Although the court aims to streamline discovery whenever possible, and, for that reason, the Commission's motion on this point was entirely appropriate, it would not be prudent to limit discovery on this issue. Second, the Commission has made significant allegations that Alexander fraudulently concealed the alleged backdating scheme. (*See*SEC Mem. at 11-12.) It may very well be that the Commission prevails on the statute of limitations issue even if this court finds that a violation rule governs accrual under Section 2462.

### D. Fourth Affirmative Defense: Laches

The Commission asks this court to strike Alexander's laches affirmative defense. (SEC Mem. at 13-14.) Alexander consents to dismissal of this defense. (Alexander Opp. at 2 n. 1) As a result, the Commission's motion is granted on consent.

### III. CONCLUSION

For the reasons set forth above, the Commission's motion to strike Alexander's fourth affirmative defense is granted and the Commission's motion to strike Alexander's third affirmative defense is denied. The Commission is granted partial summary judgment with respect to Alexander's second affirmative defense.

SO ORDERED.

E.D.N.Y.,2007.
S.E.C. v. Alexander
Slip Copy, 2007 WL 2816195 (E.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.