# EXHIBIT 18

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213  
**(Cite as: Not Reported in F.Supp.)**

Page 1

H  
S.E.C. v. Schiffer  
S.D.N.Y.,1998.

United States District Court, S.D. New York.  
SECURITIES AND EXCHANGE COMMISSION, Plaintiff,  
v.  
Steven H. SCHIFFER, Joann R. Schulz, Gary S. Kramer, Jonathon Solow, Frank Cannata and Peter G. Mintz, Defendants.  
**No. 97 Civ. 5853(RO).**

May 5, 1998.

OPINION and ORDER  
OWEN, J.  
*1 Before me are two motions by the SEC to strike certain defenses asserted in answers by defendants Joann Schulz and Steven Schiffer, as well as a motion to dismiss the SEC's complaint by defendant Peter Mintz.

The complaint alleges that the defendants have been involved in market manipulation, insider trading, sale of unregistered stock in purported off-shore transactions, and false filings with the SEC, in violation of various securities laws.[FN1] All flow from defendants' dealings in connection with Phoenix Laser Systems, Inc. (Phoenix), a company that developed laser workstations to perform eye surgery, which is now defunct.[FN2]

FN1. The SEC's manipulation claims fall under sections 9(a)(2) and 10(b) of the Exchange Act, 15 U.S.C. §§ 78i(a)(2), 78j(b), as well as the corresponding Rule 10b-5 thereunder, 17 C.F.R. § 240.10B-5, while its allegations of insider trading are founded upon section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and, again, section 10(b) of the Exchange Act with its corresponding Rule 10b-5. The purported Regulation S transactions allegedly made by defendants Schiffer and Kramer fall under sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c). The claim involving the alleged false and misleading statements against defendants Schiffer and Schulz falls under section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 10(b) of the Exchange Act, again invoking Rule 10b-5. *Id.* The same claim is repeated as to Schiffer's and Schulz's roles as "controlling persons" under section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rule 13a-1 at 17 C.F.R. § 240.13a-1.

FN2. During all relevant times, the Phoenix stock was registered with the SEC, and was traded on NASDAQ from August 11, 1989 to April 29, 1992, at which time it began trading on the American Stock Exchange (AMEX). AMEX suspended trading in Phoenix stock on January 26, 1995.

The complaint alleges that Schiffer, Phoenix's chairman and chief executive officer, along with Schulz, its president and chief operating officer, submitted false SEC reports on Phoenix's operations, overstating the backlog of its orders while understating the time necessary to meet the backlog, as well as the expected revenue for the backlog. It is also claimed that they misrepresented the status of Phoenix's FDA applications.

Additionally, the SEC claims that Schiffer made "bogus" Regulation S transactions when he caused the issuance of 2,050,000 unregistered shares of Phoenix common stock to three entities located in Curacao, Netherlands Antilles, treating them as offshore entities despite the fact that he owned or controlled all three. Because Regulation S allows

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Page 2

Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213  
**(Cite as: Not Reported in F.Supp.)**

the sale of unregistered securities into the U.S., under certain restrictions, Schiffer (and defendant Gary Kramer) were then able to sell the securities that they otherwise could not sell for $11 million. Specifically, the SEC alleges that, between September 1992 and July 1993, Kramer arranged for their sale into the U.S. market, to institutions or private investors (not broker-dealers) who then sold to others U.S. entities.

Moreover, following from the above, the SEC claims that, from January 1991 through July 1993, Schiffer directly sold approximately 1.5 million Phoenix shares (for approximately $4.2 million) and approximately 2 million shares under Regulation S (for approximately $11 million) while possessed of accurate insider information contrary to the false reporting alleged above. Similarly, between December 1991 and September 1993, Schulz, possessed of insider information, sold a total of 251,050 shares of Phoenix stock for approximately $626,000, avoiding losses of $626,000.

Finally, the complaint alleges that, between May 1992 and August 1992, Schiffer, Mintz and others (evidently *not* Schulz) manipulated Phoenix's stock price in order to maximize the company's sales while counteracting outside sales. Schiffer (though *not* Mintz), with others, monitored the stock's price movements, bid sizes and quotes on a "real time basis". Schiffer and others (again, *not* Mintz) orchestrated purchases, including some in "nominee accounts" funded by Schiffer and Phoenix, and also directed stockbrokers, including Mintz, to execute intra-day purchases in order to cause price increases and to engage in "marking-the-close" transactions, which can raise closing prices.[FN3] At Schiffer's directions, Mintz and others would execute customer purchases near the end of the trading day in order to elevate the closing price beyond where market forces had placed it.

> FN3. "Marking-the-close" is the practice of repeatedly executing the last transaction of the day in a security in order to affect its closing price.

*2 The complaint states that, from May 1992 to August 1992, Mintz and defendant Frank Cannata executed at least twenty-five stock purchases at close of market, with Cannata being responsible for seventeen such transactions (fifteen at the highest daily price) and Mintz executing eight (three at the highest daily price). Together, they also caused at least 48 intra-day price increases. The SEC alleges that Mintz knew or was reckless in not knowing that he was making these manipulative transactions. It claims that 80% of Mintz's at-the-close purchases caused upticks in price and that he subsequently received $30,000 from Phoenix. The SEC asserts this payment to be compensation for his assistance in the manipulation. Mintz asserts that the money was for other services rendered, unrelated to these transactions.

The SEC seeks an injunction against future securities violations and civil penalties against Schiffer, among others, as well as disgorgement of and civil penalties for all losses avoided by he and Schulz on the basis of insider information. It also seeks civil penalties for all other defendants but Schulz on the basis of asserted violations encompassed above.

In connection with the complaint's filing, three motions have been made, two by the SEC pursuant to Fed.R.Civ.P. 12(f) to strike certain defenses asserted by defendants Schulz and Schiffer, and one by defendant Mintz under Fed.R.Civ.P. 9(b) and 12(b)(6), asserting (1) failure to plead fraud with particularity, and (2) failure to state a claim. As noted on the transcript at oral argument, the SEC's motion to strike Schulz's "bespeaks caution" defense was denied from the bench without prejudice.[FN4]

> FN4. This motion to strike was denied because there is nothing currently on the record from which I can assess the viability of Schulz's "bespeaks caution" defense. It is only after discovery and the submission of some proof, be it at trial or on a summary judgment motion, that the defense can be properly measured. As such, the motion to strike the defense is denied without prejudice, with leave to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                    Page 3
Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213
(Cite as: Not Reported in F.Supp.)

move hereafter should the eventual record support it. See Tr. (Apr. 3, 1998) at 50-53.

Schiffer's answer asserts the single affirmative defense of the statute of limitation. In responding to the SEC's motion to strike this defense, he has limited it to apply only to the complaint's request for a future officer/director bar and/or civil penalties that might flow from his conduct prior to August 7, 1992, which is 5 years prior to the complaint's filing.[FN5] The SEC moves to strike under Fed.R.Civ.P. 12(f).

> FN5. The complaint was filed on August 7, 1997. The false statements attributed to Schiffer were made in the June 1990 and May 1991 Registration Statements, as well as Forms 10-K for fiscal years ended December 31, 1989, 1990 and 1991. The direct insider sales attributed to Schiffer took place from January 1991 through January 1992, while the sales under Regulation S took place in September 1992 and July 1993. The alleged price manipulation took place from May 1992 through August 1992.

The case of *Systems Corp. v. American Tel. & Tel. Co.,* 60 F.R.D. 692, 694 (S.D.N.Y.1973) gives guidance. In order to strike a defense, the court must "be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Id*.

As to the officer/director bar, the SEC asserts and Schiffer concedes that the statute of limitation is not applicable to equitable remedies under the securities law, and the SEC contends that the officer/director bar is just such an equitable remedy.

The primary consideration when determining whether the limitation applies is whether the remedy at issue is "punitive" or "remedial" in nature. *See SEC v. Lorin,* 869 F.Supp. 1117, 1122 (S.D.N.Y.1994).[FN6] An additional consideration is whether the remedy operates for private benefit or public good. *Id.* at 1127. The SEC contends that the evidence to be adduced in considering the bar, while encompassing past acts, speaks to a defendant's current ability to serve and the avoidance of future harm, and the Second Circuit has construed the officer/director bar as within the court's "well-established equitable power" and "remedial discretion", framing it as injunctive relief, *SEC v. Posner,* 16 F.3d at 522 (2d Cir.1994). Accordingly, the federal statute of limitations does not apply to consideration of any matters bearing on the officer/director bar sought as to Schiffer.[FN7]

> FN6. Schiffer argues that the officer/director bar is a penalty falling under the "*or otherwise*" language of the limitation statute. In so arguing, he cites to a D.C. Circuit case where it was found that the suspension of a license under securities law was punitive and, thus, subject to the 5-year limit. *See Johnson v. SEC,* 87 F.3d 484, 492 (D.C.Cir.1996). In that case, however, the suspension remedy is explicitly directed at past violations, while the officer/director bar protects against future public harm and is based on a defendant's current competence to serve in that capacity. *Accord, Johnson,* 87 F.3d at 488.

> FN7. I also note that the office/director bar under the Securities Enforcement Remedies Act operates retroactively. *See Drexel Burnham,* 837 F.Supp. at 613-14. Thus, the bar applies as well to any conduct taking place prior to 1990.

*3 Turning to Schiffer's statute of limitation defense as to any civil penalties flowing from the manipulation that allegedly took place from May 1992 through August 1992, the statute authorizing civil penalties for manipulative conduct does not state an applicable statute of limitations,[FN8] so the federal limitation applies. *See* 28 U.S.C. § 2462. As such, absent any other consideration, penalties cannot attach as to any of Schiffer's alleged conduct prior to August 7, 1992. The SEC, however, asserts that the "continuing violation doctrine" applies in the securities context when the action

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                          Page 4
Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213
**(Cite as: Not Reported in F.Supp.)**

carries out a manipulation scheme which continues past the cut-off of the statute of limitations.

> FN8. *See* section 21(d)(3)(B)(iii) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B)(iii).

The doctrine applies only where a violation, occurring outside of the limitation period, is so closely related to other violations, not time-barred, as to be viewed as part of a continuing practice such that recovery can be had for all violations. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 380-81, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). While no court in this district has ruled on the doctrine's application in the securities fraud context, it has been the subject of consideration in discrimination and RICO cases, although not applied in the latter. *See, e.g., Bankers Trust Co. v. Walter Feldesman,* 648 F.Supp. 17, 36 (S.D.N.Y.1986), 676 F.Supp. 496 (S.D.N.Y.1987) (rehearing), *rev'd on other grounds sub. nom. Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988). The SEC argues that these cases' rationale support my applying the doctrine here. Schiffer contends, however, that at this stage even for the doctrine to apply, fact issues must yet be determined. I agree.

Accordingly, I conclude that this branch of the motion to strike is premature. In this connection, I do take note of Schiffer's concession at oral argument that the SEC is entitled to discovery on all of the transactions, whether or not arguably barred by the statute's application. *See* Tr. (Apr. 3, 1998) at 35-36. Thus, as I stated at the hearing, denial of this motion at this juncture will have no impact as to this claim. Accordingly, the SEC's motion is denied without prejudice, with leave to renew as appropriate.

Finally, Mintz responds to the SEC's complaint with a motion to dismiss for failure to plead fraud with particularity under Fed.R.Civ.P. 9(b) [FN9] and for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Mintz is a securities analyst and broker, against whom the SEC asserts primary liability for the manipulation of the Phoenix stock price. Mintz contends that the complaint lacks any factual assertions in support of the allegation. I conclude, however, that the totality of the complaint sufficiently states a claim of fraud and provides Mintz with adequate notice and direction to pursue relevant discovery. Mintz's motion to dismiss under Rule 9(b) is accordingly denied.

> FN9. Securities fraud allegations are subject to the Rule 9(b), which requires fraud to be pleaded with particularity. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994); Fed.R.Civ.P. 9(b). In considering Mintz's 9(b) motion, I accept the facts alleged as true and draw inferences in the SEC's favor. *In re Blech Secs. Litig.,* 961 F.Supp. 569, 579 (S.D.N.Y.1997) (Blech II).

Although Rule 9(b) works to provide a defendant with notice, to safeguard his reputation from unwarranted allegations, and to protect against strike suits, *see* DiVittorio v. *Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987), the Rule also allows state of mind to be averred generally, *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991), and must, as well, be read in conjunction with Rule 8(a), which calls for a "short and plain" statement of the claim. Fed.R.Civ.P. 8(a). *See also Blech Sec. Litig.,* 928 F.Supp. 1279, 1288 (S.D.N.Y.1996) (Blech I). Additionally, a more relaxed pleading standard exists for manipulation claims under Rule 9(b) that allows for "more generalized allegations of the nature, purpose and effect of the fraudulent conduct and the roles of the defendants are sufficient for alleging participation." *In re Blech Secs. Litig.,* 961 F.Supp. 569, 585 (S.D.N.Y.1997) (Blech II) (citations omitted). The complaint meets this standard. It establishes an association between Mintz and the other defendants and states a reasonably inferable claim that Mintz executed a series of intra-day and "marking the close" transactions, knowing or reckless to the fact that he was effecting an illegal manipulative scheme. Moreover, his explanation for the $30,000 payment to him from Phoenix is not controlling. That payment, shorn of his explanation, provides

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.            Page 5
Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213
**(Cite as: Not Reported in F.Supp.)**

sufficient inference of intent that requires exploration at trial.

*4 As to Mintz's motion to dismiss under Fed.R.Civ.P. 12(b)(6), Mintz contends that the complaint fails to state a claim because it has not alleged that he directly participated in the manipulation scheme [FN10] or provided facts supporting the allegation that he knew of the manipulation.[FN11] I disagree for the reasons set forth above. *See Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 795 (2d Cir.1979). Thus, considering the complaint as a whole, I conclude that the SEC allegations state a manipulation claim against Mintz and his motion under Rule 12(b)(6) is denied.

> FN10. The elements of a manipulation claim under Section 9(a)(2) of the Exchange Act are:
> 1. a series of transactions,
> 2. which have the effect of raising or depressing price, or creating actual or apparent volume (sometimes referred to as "manipulative effect"), and
> 3. done for the purpose of inducing others to buy or sell (often referred to as the requirement of "manipulative purpose").
> The elements for a manipulation claim under Section 10(b) of the Act mirror the above for the first two elements, but on the third element, all that is required is a showing that the defendant engaged in acts, practices, or a course of business that operated or would operate as a fraud or deceit on the nature of the market for the security. *See, e.g., United States v. Charnay,* 537 F.2d 341, 346-47 (9th Cir.), *cert. denied,* 429 U.S. 1000 (1976). The SEC has made manipulation claims under both provisions.
> A direct participant is one "who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies" and has emphasized that parties otherwise viewed as "secondary actors" in a manipulation scheme could fall within the definition. *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 190, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

> FN11. Scienter, an element that must be pleaded under securities fraud laws, *see Dymm v. Cahill,* 730 F.Supp. 1245, 1252 n. 1 (S.D.N.Y.1990), is defined as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).
> There are cases, however, that define the requisite scienter as either intent or recklessness. *See, e.g., Lanze v. Drexel & Co.,* 479 F.2d 1277, 1036 (2d Cir.1973) ( *en banc* ). The Second Circuit has approved a formulation of recklessness articulated by the Seventh Circuit as follows:
> Reckless conduct may be defined as highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers and sellers that is either know to the defendant or is so obvious that the actor must have been aware of it.
> *Sundstrand Corp. v. Sun Chem. Corp.,* 553 F.2d 1033, 1047 (7th Cir.1976), *cert. denied* 434 U.S. 875 (1977); *Rolf v. Blythe Eastman Dillon & Co.,* 570 F.2d 38, 46 n. 14 (2d Cir.1978).

In sum, the SEC motion to strike Schulz's "bespeaks caution" defense is denied, as is the SEC motion to strike Schiffer's statute of limitations defense in connection with the manipulation claims (both without prejudice, with leave to renew hereafter). Schiffer's statute of limitations defense as related to the officer/director bar is stricken. Finally, Mintz's motions are denied.

So ordered.

S.D.N.Y.,1998.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                Page 6

Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213
**(Cite as: Not Reported in F.Supp.)**

S.E.C. v. Schiffer
Not Reported in F.Supp., 1998 WL 226101 (S.D.N.Y.), Fed. Sec. L. Rep. P 90,213

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.