Not Reported in F.Supp.    Page 1
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

Baxter v. A.R. Baron & Co., Inc.
S.D.N.Y.,1995.

United States District Court, S.D. New York.
James A. BAXTER, J.A. Baxter Life Investment Trust, Richard Katz, and EGI 1985 Retirement Benefit Trust, Plaintiffs,
v.
A.R. BARON & CO., INC., the Baron Group, Inc., Roman Okin, Jeffrey Weissman, Martin Weissman, Seymour Weissman, Andrew Bressman, Mark A. Goldman, D.H. Blair & Co., Inc., and J. Morton Davis, Defendants.
**No. 94 Civ 3913(JGK).**

Oct. 12, 1995.

Max Folkenflik, Folkenflik & McGerity, New York City, for plaintiffs.
David S. Smith, Smith Campbell & Paduano, New York City, for defendants A.R. Baron, The Baron Group, Roman Okin, Andrew Bressman, and Mark Goldman.
Daniel A. Pollack, Edward T. McDermott, Justin Y.K. Chu, Pollack & Kaminsky, New York City, for defendants J. Morton Davis, D.H. Blair.
Daniel W. Krasner, Eric B. Levine, Jay Auslander, Wolf Haldenstein Adler Freeman & Herz LLP, New York City, for defendants Jeffrey Weissman, Martin Weissman, Seymour Weissman.

*OPINION AND ORDER*
KOELTL, District Judge:
**\*1** The Second Amended Complaint in this action alleging a broad-based securities fraud is brought by two individuals, James Baxter ("Baxter") and Richard Katz ("Katz"), on their own behalf and on behalf of their respective investment trusts, J.A. Baxter Life Investment Trust ("Baxter Trust") and EGI 1985 Retirement Benefit Trust ("Katz Trust"). The plaintiffs name as defendants A.R. Baron & Co., Inc. ("A.R. Baron"), one of its brokers, Roman Okin, its Chief Executive Officer, Jeffrey Weissman, its President, Andrew Bressman, A.R. Baron's parent company The Baron Group, Inc. ("The Baron Group"), and Martin Weissman, alleged to be President of The Baron Group during all or part of the relevant period. Plaintiffs also name as defendants D.H. Blair & Co., Inc. ("D.H. Blair"), and its principal officer, J. Morton Davis. Plaintiffs' claims arise from alleged misrepresentations, omissions, market manipulation and insider trading in certain securities of three companies in the biomedical industry, Health Professionals, Inc. ("HPI"), Cryomedical Sciences, Inc. ("CMSI"), and Cypros Pharmaceutical Corp. ("Cypros"). The alleged violations occurred over about a one-year period beginning in July 1992. Plaintiffs allege violations of § 10(b) and §§ 20(a) and 20(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), (b) (the "1934 Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, § 9 of the 1934 Act, 15 U.S.C. § 78i, and § 12(2) of the Securities Act of 1933, 15 U.S.C. 77*l* (2) (the "1933 Act"). Plaintiffs also bring supplemental claims for common law fraud, breach of fiduciary duty, and negligent misrepresentation under New York law.

All of the defendants have moved to dismiss each of the claims either for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or for failure to plead fraud with particularity under Fed R.Civ.P. 9(b).[FN1] For the reasons that follow, the defendants' motions are granted without prejudice to the plaintiffs' right to replead and file an amended complaint within thirty (30) days of the date of this opinion.

I.

For the purposes of a motion to dismiss, the allegations in the complaint are taken as true. *Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir.1986). Plaintiffs' allegations are organized into four different "causes of action." The first is a claim for securities fraud under § 10(b) of the 1934 Act, the foundation for which are various alleged misrepresentations and omissions made to the plaintiffs. The plaintiffs allege that defendant Roman Okin made these misrepresentations or omissions directly, making Okin the primary violator, and that the remaining defend-

Case 5:07-cv-03444-JF    Document 52-2    Filed 12/17/2007    Page 2 of 9

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

ants are "controlling persons," making them liable under § 20(a) of the 1934 Act. The second cause of action is a claim for securities fraud under § 12(2) of the 1933 Act. The third cause of action is a claim of securities fraud under § 10(b) of the 1934 Act alleging a manipulative scheme by all of the defendants. The fourth cause of action is a claim of fraud under § 9 of the 1934 Act against all but one defendant for manipulation of the price of HPI on the American Stock Exchange. Each cause of action will be considered in turn.

A.

*2 The first cause of action is based on certain misrepresentations and omissions that plaintiffs allege to constitute violations of § 10(b) of the 1934 Act and Rule 10b-5. Plaintiffs allege that defendant Okin is "directly responsible" for the misrepresentations and omissions, (Compl. ¶ 94), while the remaining defendants are liable as controlling persons, both under § 20(a) and § 20(b). (Compl. ¶¶ 94, 95.) Because § 20 liability will only attach if the primary violator is liable, the entirety of plaintiffs' first cause of action depends upon its sufficiency with respect to Okin.

Allegations of securities fraud under § 10(b) and Rule 10b-5 are subject to the requirements of Fed.R.Civ.P. 9(b), specifically that the complaint must identify (1) the statements alleged to be fraudulent, (2) who made the statements, (3) when and where the statements were allegedly made, and (4) why the statements were fraudulent. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1775 (2d Cir.1993); *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990) ( "The time, place, and nature of the misrepresentations must be set forth so that the defendant's intent to defraud ... under the securities laws is revealed."). Rule 9(b) also provides a pleading requirement for scienter, requiring that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." This somewhat more relaxed pleading requirement "must not be mistaken for license to base claims of fraud on speculation and conclusory allegations[,]"*Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990), in light of Rule 9's purpose of providing defendants with fair notice of plaintiffs' claims, safeguarding defendants' reputations from improvident allegations of malfeasance, and protecting defendants against strike suits. *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994); *O'Brien v. Nat'l Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). Consequently, to plead scienter sufficiently, plaintiffs must allege facts giving rise to a strong inference of fraudulent intent. The inference may be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128. *See also In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 268-69 (2d Cir.1993), *cert. denied sub. nomRoss v. ZVI Trading Corp. Employees' Money Purchase Pension Plan,* 114 S.Ct. 1397 (1994).

Moreover, to successfully plead a violation of § 10(b) of the 1934 Act, the plaintiffs must plead that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). *See also Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995) (quoting *Bloor* ).

*3 In an attempt to meet their obligation of pleading with particularity, plaintiffs have compiled an exceedingly long and rambling complaint. But particularity is not to be confused with length. The Complaint[FN2] is very long, consisting of well over one-hundred paragraphs and forty pages. There are numerous descriptions of events having no apparent bearing on the plaintiffs' allegations. (*See, e.g.,* Compl. ¶¶ 78-85.) There are several references to rumors, complaints filed in other lawsuits, and allegations appearing in press reports. (*See, e.g.,* Compl. ¶¶ 46, 72, 86b.) *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[u]nnecessary prolixity in a pleading places an unjustified burden on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-2   Filed 12/17/2007   Page 3 of 9

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."(quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969))); *Pross v. Katz,* 784 F.2d 455, 456 (2d Cir.1986) ("[The Court's] task ... is not made easy by the length of the complaint, ... a prolixity seemingly designed to obscure rather than to illumine the events giving rise to this lawsuit."). The lack of particularized pleading is remarkably egregious in this case because the plaintiffs have had access to extensive documentary discovery since the case was filed in May 1994, nearly a year and a half ago.

For all their prolixity, the vast majority of plaintiffs' allegations with respect to the asserted misrepresentations and omissions by Okin are insufficiently pleaded under Rule 9(b) in that the time, place, speaker, and contents of the allegedly fraudulent statements are lacking. The bulk of the allegations of misrepresentations and omissions by Okin are listed in paragraph 43 of the Complaint. Nowhere in this paragraph is there any mention of a date or time at which any of these alleged statements or omissions took place, or the method by which the alleged misrepresentations were made. There is no indication of the context in which Okin "failed to reveal" certain facts. Furthermore, the person or persons to whom these misrepresentations or omissions were made is not even identified. While this paragraph of the Complaint alleges a great number of things Okin "failed to reveal," it does not indicate to whom, when, and under what circumstances. Such ambiguous and imprecise pleading is plainly inadequate and does not afford the defendants a reasonable opportunity to answer the allegations properly. *See Keenan v. D.H. Blair & Co., Inc.,* 838 F.Supp. 82, 86 (S.D.N.Y.1993) ("An important objective of Rule 9(b) is to apprise the defendant of the transaction(s) involved with sufficient particularity so as to permit adequate responsive pleading.").

Even where the Complaint does offer more detail with respect to some of the alleged misrepresentations, conspicuous deficiencies remain. For example:

Okin called Baxter several times at the beginning of July 1992, and urged him to invest. According to Okin, the aim of A.R. Baron was to open accounts for investors interested in stocks with growth opportunities which were being promoted by A.R. Baron. According to Okin, the A.R. Baron stocks had a proven track record of growth during a 12 to 18-month period. During these early discussions, Okin said he did not want day-to-day traders, but was looking for longer term investors. Baxter said he was interested in medium- to long-term investments, but not high risk. Okin strongly recommended a purchase of HPI.

*4 (Compl. ¶ 21.) While this allegation is relatively specific with respect to when, by whom and to whom the statements were made, there is simply no indication of how these statements were fraudulent. In other instances, rather than pleading that Okin made a false representation, the Complaint alleges that Okin "implied" a false statement. (*See, e.g.,* Compl. ¶ 57.) There are other allegations that the plaintiffs received false information but no source whatsoever is identified. Plaintiffs claim they were offered unregistered stock in February 1993 and that "Baxter was told, falsely, that the only limitation in his right to sell the unregistered stock was the requirement that he held it for three months." (Compl. ¶ 48.) Plaintiffs do not allege who made this statement. Finally, there are instances where plaintiffs allege that Okin made false statements to the defendants but the time such misrepresentations were made is unspecified or narrowed down to a broad range over several months. (*See, e.g.,* Compl. ¶¶ 23, 58, 59, 60.)

Plaintiffs maintain that the Complaint does identify the time, place, and speaker for the specific misrepresentations alleged. Nonetheless, plaintiffs ignore the fact that the specific list of Okin's alleged material misrepresentations and omissions simply is not anchored to specific allegations which allege the time, place, manner, and context of the communication. (*See* Compl. ¶ 43.) Even the other alleged misrepresentations lack sufficient specificity. Plaintiffs claim that Okin made various misrepres-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF     Document 52-2     Filed 12/17/2007     Page 4 of 9

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

entations "in several telephone calls at the beginning of 1992," and "in the period July 1992 through January 1993," citing ¶¶ 22, 23, 32-37, 45-48 of the Complaint. (Pls.' Mem. Opp'n at 24-25.) Yet, the Complaint does not indicate that these statements were made by telephone, nor, except in general terms, when they were made, nor in many cases that they were made to any particular plaintiff. In any event, cryptic references to "the beginning of 1992" or the six months between July 1992 and January 1993, or "[t]hroughout early 1993" simply do not begin to conform to the requirements of Rule 9(b).[FN3]

Moreover, in their discursive complaint the plaintiffs have not even alleged all of the elements of a § 10(b) claim for the alleged misrepresentations and omissions. There is a blanket allegation that plaintiffs relied on the defendants' actions and purchased securities "of HPI, among others." (*See* Compl. ¶ 93.) There are few other instances where plaintiffs specifically allege having relied upon Okin's statements,[FN4] and fewer still where plaintiffs allege having bought or sold securities in connection with Okin's allegedly fraudulent statements or omissions. (*See, e.g.,* Compl. ¶¶ 48, 50, 53, 56, 59.) Where plaintiffs do make such allegations, only purchases of HPI securities are alleged, and the attendant allegations of fraud fall short of the requirements of Rule 9(b).[FN5] (*See, e.g.,* Compl. ¶¶ 22, 23, 57.) The Complaint is inadequate and incomplete and does not afford the defendants a fair opportunity to understand and defend against the case brought against them. The plaintiffs are in possession of the information required to set forth both the specifics of the alleged misrepresentations and omissions made to them and the specifics of the purchases and sales they made in alleged reliance on such misrepresentations and omissions.

*5 Because plaintiffs have failed to plead their § 10(b) claims against Okin with sufficient particularity, and because many of the allegations fail to plead the § 10(b) violations themselves, the claims against defendant Okin must be dismissed. Moreover, because Okin is the only defendant alleged to have made misrepresentations or omissions constituting the primary violations, there is no basis for maintaining plaintiffs' claims against the remaining defendants as controlling persons under § 20.[FN6] *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025 (1984); *Brown v. The Hutton Group,* 795 F.Supp. 1317, 1324-25 (S.D.N.Y.1992); *The Limited, Inc. v. McCrory Corp.,* 645 F.Supp. 1038, 1046 (S.D.N.Y.1986).[FN7] Therefore, the entire first cause of action for securities fraud under § 10(b) and § 20 is dismissed against all defendants. This dismissal is without prejudice to plaintiffs filing an amended complaint alleging fraud with sufficient particularity. *See Acito,* 47 F.3d at 54-55 ("Leave to amend should be freely granted, especially where dismissal of the complaint [is] based on Rule 9(b)."); *Luce,* 852 F.2d at 56-57 ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (citation omitted)).[FN8]

B.

The plaintiffs' second cause of action alleges securities fraud under § 12(2) of the 1933 Act. As the parties agreed at oral argument, this claim should be dismissed for failure to state a claim in light of the Supreme Court's decision in *Gustafson v. Alloyd Co., Inc.,* 115 S.Ct. 1061 (1995) which holds that § 12(2) is only applicable in cases of initial public securities offerings. Because the circumstances of this case involve secondary market trading, the § 12(2) claims are dismissed with prejudice under *Gustafson.*

C.

The plaintiffs' third cause of action is based on market manipulation under § 10(b) of the 1934 Act and Rule 10b-5. Section 10(b) states that it is unlawful for any person to "use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). To set forth a claim for market manipulation under these provisions, plaintiffs must allege: (1) damage to the plaintiffs, (2) caused by reliance on defendants' misrepresentations or omis-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-2   Filed 12/17/2007   Page 5 of 9

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

Page 5

sions of material facts, or on a scheme by the defendants to defraud, (3) scienter, (4) in connection with the purchase or sale of securities, (5) furthered by the defendants' use of the mails or any facility of a national securities exchange. *Cowen & Co. v. Merriam,* 745 F.Supp. 925, 929 (S.D.N.Y.1990) (Patterson, J.). *See also Santa Fe Indus., Inc. v. Green,* 430 U.S. 462, 476 (1977) (market manipulation under § 10(b) "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity"). With respect to market manipulation claims, the Court of Appeals explained:

**\*6** Even where a 10(b) claim is based not on specific misrepresentations or omissions, but rather on a "comprehensive scheme to defraud," the plaintiff must still demonstrate causation in fact by showing that defendant's allegedly fraudulent activities were actually responsible for plaintiff's injuries.

*Bloor,* 745 F.2d at 61. Plaintiffs assert a market manipulation claim against all defendants directly based on both alleged material misrepresentations and omissions and on the use of alleged manipulative and deceptive devices, alleging that each defendant was a primary violator of § 10(b) in this regard. (*See* Compl. ¶¶ 102-05.)

As discussed above, the Complaint does not allege *any* misrepresentations or omissions by a defendant other than Okin. And, as explained above, the pleading is insufficient with respect to Okin himself. Therefore, for plaintiffs' claim for market manipulation to survive the motion to dismiss, the complaint must set forth allegations of a manipulative device or scheme. In this regard, the Complaint is wholly inadequate.

The plaintiffs allege a market manipulation scheme over twenty-six paragraphs. (*See* Compl. ¶¶ 61-86.) These paragraphs are long on innuendo but lacking in factual assertions or specificity with respect to how, when, and under what circumstances the alleged fraud was perpetrated on the plaintiffs. The facts on which the allegation of market manipulation is based are set forth in paragraph 86 of the Complaint. Plaintiffs complain that the defendants inflated the market prices of HPI, CMSI, and Cypros securities by misrepresenting the business condition of these companies and refusing to execute customer sell orders which might depress prices. This contention is apparently based, in part, on reports in the financial press. (*See* Compl. ¶ 86a.) Also, several references are made to "complaints" filed against the defendants. Apparently, the complaints referred to are excerpts from customer complaints and correspondence, attached as exhibits. (*See* Compl. ¶ 86a, Exs. C, D.) The plaintiffs maintain that these customer complaints "reveal a consistent course of conduct" of both misrepresentation of HPI's financial condition, (Compl. ¶ 86c), and unauthorized trading in HPI securities. (Compl. ¶ 86b.) The plaintiffs surmise that defendants A.R. Baron and D.H. Blair "seemed to intentionally time the execution of purchase orders in HPI, CMSI and Cypros stock [in order to] maximiz[e] the manipulation of the market price." (Compl. ¶ 86e.) Plaintiffs also assert that defendant Jeffrey Weissman "placed large orders for HPI stock at the close of the market." (*Id.*) Plaintiffs argue that the trading activities of the defendants are "indicative of market manipulation" and not justified by HPI's business condition. (*Id.*)

The broad strokes with which the plaintiffs have alleged market manipulation do not pass muster under Rule 9(b). A claim of market manipulation under § 10(b) is still a claim of fraud, and, therefore, the claim must be pleaded with particularity under Rule 9(b). *See Rooney Pace, Inc. v. Reid,* 605 F.Supp. 158, 162-63 (S.D.N.Y.1985) (Weinfeld, J.) (applying Rule 9(b) to market manipulation claim under § 10(b)); *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557-58 (2d Cir.1979), *cert. denied,* 446 U.S. 946 (1980). It may be true that the existence of customer complaints of unauthorized trading, failure to respond to customer orders to sell securities, or other trading irregularities may be some evidence of a scheme or device to defraud investors. Indeed, such allegations may not even need to reach the level of specificity ordinarily required by Rule 9(b) because details regarding the workings of a market manipulation scheme are often known only

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Case 5:07-cv-03444-JF    Document 52-2    Filed 12/17/2007    Page 6 of 9    Page 6
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

by defendants. *See Rooney Pace,* 605 F.Supp. at 162-63 (particularity not required where alleged market manipulation involves "clandestine activities knowledge of which would be within defendants' exclusive control") Nevertheless, a complaint based on such allegations must still specify what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue. *Compare Connoly v. Havens,* 763 F.Supp. 6, 13 (S.D.N.Y.1991) (Leisure, J.) (complaint deficient given absence of details of manipulative acts, time performed, shares traded, injuries suffered and what manipulator allegedly gained) *with Cowen,* 745 F.Supp. at 929-30 (Rule 9(b) satisfied where complaint provided details of date, quantity, and price of purchases) *and Rooney Pace,* 605 F.Supp. at 162 (specific purchases and refusals to pay for purchased shares detailed in the complaint).

**\*7** The Complaint in this case is entirely lacking in such detail. The allegations entitled "Third Claim For Relief (Securities Fraud-Section 10b, Rule 10b-5) (Market Manipulation)" are essentially a restatement of the statutory language of § 10(b). (*See* Compl. ¶¶ 102-04.) Conclusory assertions tracking the language of § 10(b) itself with respect to "the defendants" is not an adequate pleading. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557-58 (2d Cir.1979) ("It will not do merely to track the language of Rule 10b-5 and rely on such meaningless phrases as 'scheme and conspiracy' or 'plan and scheme and course of conduct to deceive.' "). Plaintiffs fail to cure this defect elsewhere in the Complaint. There are no specific allegations of market manipulation whatsoever with respect to defendants The Baron Group, Martin Weissman, Mark Goldman, or J. Morton Davis. And, while Martin Weissman and Davis are alleged to have owned securities in HPI, CMSI, and Cypros and therefore may have stood to benefit from any upward price movement, (*see* Compl. ¶¶ 40, 41, 67, 69, 70, 83, 85), this allegation alone does not allege market manipulation. Moreover, there are no such allegations even of this nature with respect to The Baron Group or Goldman.

With respect to the remaining defendants, the Complaint does make sweeping claims of market manipulation by A.R. Baron, D.H. Blair, Jeffrey Weissman, Bressman, and Okin. (*See, e.g.,* Compl. ¶¶ 61, 66, 86a-h.) Nonetheless, the allegation that "[the defendants] had as their purpose the attempt to manipulate the price of [HPI and CMSI] in the secondary market, so that the shares held by D.H. Blair, Davis, Jeffrey Weissman, and his father, Martin Weissman, could be sold at large profits," (Compl. ¶ 67)-indeed, an allegation of an attempt to manipulate-does not suffice.[FN9] This allegation does not reveal, with any particularity, how the market in the securities at issue was manipulated with respect to these plaintiffs or how their specific transactions in HPI, CMSI, and Cypros securities were connected with the alleged manipulative scheme. The Complaint contains generalized allegations of various purchases and sales that the plaintiffs appear to allege were part of the manipulative scheme and which the plaintiffs also appear to contend form the basis for part of their claim for damages. Hence, the plaintiffs assert that "[o]n a number of occasions, Okin actively dissuaded plaintiffs from selling securities and Okin failed to execute direct orders to sell at specified prices." (Compl. ¶ 86a.) *See also supra* note 9. The plaintiffs also allege that they "experienced, on a number of occasions, unauthorized purchases of HPI or other securities, which Okin later convinced plaintiffs to accept." (Compl. ¶ 86b.) These allegations do not identify the transactions at issue, and they do not even indicate the specific securities that were purchased. This is information which is in the plaintiffs' possession and could be particularized in an amended complaint. The Complaint also refers to transactions by other A.R. Baron and D.H. Blair customers, arguing that a review of these complaints "reveals" the defendants' market manipulation. This pleading technique does not plead fraud with particularity-it neither specifies how each defendant participated in the al-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-2   Filed 12/17/2007   Page 7 of 9

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

leged scheme, nor relates how the plaintiffs were injured with respect to the identified transactions of other customers. *Compare Metzner v. D.H. Blair & Co.,* 663 F.Supp. 716, 721 (S.D.N.Y.1987) (Weinfeld, J.) (dismissing 10(b) claims based on scheme to defraud where "[the] allegations also are based on 'subsequent review[s]' of accounts; but, no statement as to dates or other specifics of any such transactions is offered.") *with Metzner v. D.H. Blair & Co., Inc.,* 689 F.Supp. 262, 265 & n. 4 (S.D.N.Y.1988) (Conboy, J.) (denying motion to dismiss the amended market manipulation claim where specific transactions in the plaintiffs' accounts were identified).

**\*8** Because plaintiffs have not pleaded a § 10(b) claim of market manipulation with sufficient particularity, the third cause of action must be dismissed without prejudice to the plaintiffs' right to file an amended complaint.

D.

Plaintiffs' fourth cause of action alleges market manipulation under § 9(a) of the 1934 Act with respect to the stock of HPI, (*see* Compl. ¶ 107), the only security alleged to be registered on a national securities exchange, a prerequisite to an action under § 9 of the 1934 Act. 15 U.S.C. § 78i(a). *See Cowen,* 745 F.Supp. at 930; *Rooney Pace,* 605 F.Supp. at 163. Although the Complaint is inexplicit, plaintiffs appear to bring claims under § 9(a)(1), which prohibits "wash sales" and "matched trades," and § 9(a)(2), which prohibits a "series of transactions" designed to create the appearance of active trading for the purpose of inducing investors to buy or sell. *See Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518, 1530 (S.D.N.Y.1986), *aff'd,* 867 F.2d 776 (2d Cir.), *cert. denied,* 493 U.S. 835 (1989).

The plaintiffs' § 9(a) claims derive from the same alleged manipulative scheme described as the basis for their § 10(b) claims. There are no particulars of the alleged wash sales or series of transactions and no explanation of how these transactions harmed the plaintiffs. As discussed above, that scheme's impact on the plaintiffs' securities transactions is not alleged with particularity as required under Rule 9(b). Accordingly, the fourth cause of action under § 9(a) must also be dismissed without prejudice to the plaintiffs' right to file an amended complaint.

E.

Plaintiffs' fifth, sixth, and seventh causes of action assert claims under New York state law. Because the claims arising under federal law are dismissed, the Court declines supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(3). *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well."); *Block v. First Blood Assoc.,* 988 F.2d 344, 351 (2d Cir.1993) (no abuse of discretion to refuse supplemental jurisdiction over state law claims when federal claims were dismissed before trial).

III.

For the foregoing reasons, the Second Amended Complaint is dismissed in its entirety against all defendants without prejudice to plaintiffs' right to file an amended complaint within thirty (30) days of the date of this opinion.

SO ORDERED.

> FN1. At oral argument, the parties agreed that defendant Seymour Weissman had not been served. (*See* Tr. at 52-54.) Accordingly, with respect to the claims against Seymour Weissman, the Court grants the defendant Seymour Weissman's motion to dismiss on the grounds of failure of service under Fed.R.Civ.P. 4(m), without prejudice to plaintiffs' right to effect service within thirty (30) days of this opinion. The parties suggest that it would be useful to them to review and determine the sufficiency of the allegations against Seymour Weissman. Advisory opinions, however, are always inappropriate-particularly so with respect to a party who has not even

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

Case 5:07-cv-03444-JF   Document 52-2   Filed 12/17/2007   Page 8 of 9

Page 8

been served.

FN2. References to the Complaint refer to the Second Amended Complaint (with ¶ 60a and Exhibit G).

FN3. Plaintiffs' reliance on *Jacquith v. Newhard,* No. 91 Civ. 7503, 1993 WL 127212 (S.D.N.Y. Apr. 20, 1993) (Leisure, J.) is misplaced. In that case, references to specific communications between identified parties about detailed subject matter alleged to have occurred in a particular month were found to comport with Rule 9(b). *Id.,* 1993 WL 127212, at *4. References to statements made "beginning in the fall of 1989," however, were found inadequate. *Id.,* 1993 WL 172212, at *5. Clearly, the present case is similar to the latter.

FN4. Reliance is presumed in cases where nondisclosure of material information is alleged. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 153-54 (1972); *Burke v. Jacoby,* 981 F.2d 1372, 1379 (2d Cir.1992), *cert. denied,* 113 S.Ct. 2338 (1993).

FN5. Plaintiffs offer a schedule of stock transactions involving the securities at issue as an exhibit to the Second Amended Complaint. (*See* Compl.Ex. G.) While this exhibit does appear to be a register of transactions including the dates and amounts of the trades, there is no way to link the indicated trades with the allegations of misrepresentations and omissions in the Complaint itself. The plaintiffs merely allege that the exhibit represents the transactions in HPI, CMSI, and Cypros securities in which they engaged. (*See* Compl. ¶ 60a.)

FN6. The Complaint is replete with allegations of insider trading by various defendants. (*See, e.g.,* Compl. ¶¶ 54, 55.) The plaintiffs conceded at oral argument that these allegations were not intended to create an independent cause of action under § 10(b) and Rule 10b-5. Rather, the alleged insider trading was offered only to create a sufficient factual basis to show scienter. (Tr. at 66-67.)

FN7. Accordingly, the Court does not reach the question of whether status alone is sufficient to plead controlling person liability. *Compare, e.g., Food and Allied Serv. Trades Dep't, AFL-CIO v. Millfeld Trading Co., Inc.,* 841 F.Supp. 1386, 1390-91 (S.D.N.Y.1994) (Sand, J.) (holding that "all that is required to make out a prima facie case of controlling person liability at the pleading stage is an allegation of control status"); *Neubauer v. EvaHealth USA, Inc.,* 158 F.R.D. 281, 284-85 (S.D.N.Y.1994) (Kaplan, J.) (same) *with Morse v. Weingarten,* 777 F.Supp. 312, 318 (S.D.N.Y.1991) (Lasker, J.) (requiring plaintiffs to plead defendant's knowledge of primary violation); *In re Par Pharmaceutical, Inc. Sec. Litig.,* 733 F.Supp. 668, 679 (S.D.N.Y.1990) (Patterson, J.) (requiring plaintiffs to allege defendant's culpable participation in the fraud). Nor does the Court make any determination that the Second Amended Complaint sufficiently pleads control status for the defendants apart from Okin.

FN8. It is unnecessary to reach the question of whether the plaintiffs have pleaded scienter with sufficient particularity because the Complaint must be dismissed for other pleading failures and the plaintiffs have been given leave to replead. It is impossible to determine at this time which alleged misrepresentations and omissions will be repleaded, the details of such allegations which have been found lacking in the present complaint, and the details of scienter that may be alleged with respect to such alleged fraud.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF    Document 52-2    Filed 12/17/2007    Page 9 of 9

Not Reported in F.Supp.
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923
**(Cite as: Not Reported in F.Supp.)**

Page 9

FN9. There is one allegation that Okin refused to execute one sale of HPI stock for one plaintiff at a specified price, after which the price of HPI stock declined. (*See* Compl. ¶¶ 58-59.) Still, this isolated allegation of a disregarded customer order does not even establish when the incident took place, as is required by Rule 9(b). Nor, in fact, does it include even a suggestion that the ignored order was a part of a broader manipulative scheme that harmed the plaintiffs. Moreover, there are no specific allegations concerning how the other three plaintiffs were affected.

S.D.N.Y.,1995.
Baxter v. A.R. Baron & Co., Inc.
Not Reported in F.Supp., 1995 WL 600720 (S.D.N.Y.), Fed. Sec. L. Rep. P 98,923

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.