Not Reported in F.Supp.                                                                                                          Page 1
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

In re Ross Systems Securities Litigation
N.D.Cal.,1994.

United States District Court, N.D. California.
In re ROSS SYSTEMS SECURITIES LITIGATION.
This Document Applies To All Actions.
**No. C-94-0017-DLJ.**

July 21, 1994.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach, Michael A. Sherman, Barrack Rodos & Bacine, San Diego, CA, Robert N. Kaplan, Kaplan Kilsheimer & Fox, New York City, for plaintiffs Richard C. Barrett, Brian Murray.
Terry T. Johnson, Peter P. Chen, Andrew S. Montgomery, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for defendants Ross Systems Inc., Dennis V. Vohs, Selby F. Little, III.
Michael L. Charlson, Heller Ehrman White & McAuliffe, Palo Alto, CA, Douglas M. Schwab, Laurence A. Weiss, Heller Ehrman White & McAuliffe, San Francisco, CA, for defendants Guy L. De Chazal, Henry F. McCance, Andrew M. Paul.

ORDER
*1 On June 29, 1994, the Court heard defendants' motions to dismiss. Theodore J. Pintar of Milberg, Weiss, Bershad, Hynes & Lerach, and Robert N. Kaplan of Kaplan, Kilsheimer & Fox appeared for plaintiffs. Douglas M. Schwab of Heller, Ehrman, White & McAuliffe appeared for defendants Guy de Chazal, Henry F. McCance, and Andrew M. Paul ("director defendants"); Terry T. Johnson and Andrew S. Montgomery of Wilson, Sonsini, Goodrich & Rosati appeared for defendants Ross Systems, Inc., Dennis V. Vohs, and Selby F. Little III ("Ross defendants"). Having considered the papers submitted and the arguments of counsel, the Court hereby GRANTS defendants' motions to dismiss with leave to amend certain allegations.

I. BACKGROUND

A. *Factual Background*

Plaintiffs filed this class action on March 17, 1994, alleging violations of sections 10(b)[FN1] and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. sections 78j(b) and 78t(a), and Rule 10b-5,[FN2] 17 C.F.R. section 240.10b-5. Plaintiffs are all persons other than defendants who purchased the common stock of Ross Systems, Inc. between October 28, 1992 and January 25, 1994. The "Ross defendants" are Ross Systems; Dennis V. Vohs, Chairman of the Board and Chief Executive Officer of Ross Systems; and Selby F. Little, III, Vice President of Finance and Administration, and Chief Financial Officer and Secretary of Ross Systems. The "director defendants" are Andrew M. Paul, Henry F. McCance, and Guy L. de Chazal. Paul, McCance, and de Chazal are members of Ross' Board of Directors and Audit, Compensation and Stock Option committees, and are general partners of the venture capital firms Welsh, Carson, Anderson & Stowe; Greylock Capital Limited Partnership; and Morgan Stanley Venture Partners, respectively.

In their complaint, plaintiffs allege that defendants knowingly and/or recklessly issued a series of misleading statements designed to keep Ross' stock prices artificially high, in order to sell their shares at inflated prices before revealing the true status of the company, which caused stock prices to fall. These allegedly misleading statements appeared in financial reports, press releases, newspaper articles, analyst reports, and SEC filings, and are alleged to be false and misleading based on fraudulent accounting practices and undisclosed adverse information. Plaintiff also alleges liability of the individual defendants based on theories of aiding and abetting, conspiracy, and control person liability.

On April 18, 1994, both the director defendants and the Ross defendants filed motions to dismiss. The Ross defendants seek dismissal on the following grounds: (1) the allegedly fraudulent statements are not actionable because they are "accurately reported historical results," "vague statements of optim-

Case 5:07-cv-03444-JF   Document 52-4   Filed 12/17/2007   Page 2 of 11

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

ism," or "qualified statements of company objectives"; (2) plaintiffs' allegations of accounting fraud were not pleaded with particularity; and (3) the allegedly false statements made by third parties were not adequately attributed to defendants. The director defendants move to dismiss on the ground that plaintiffs have not sufficiently pleaded their individual involvement nor their secondary liability in the alleged fraud.

B. *Legal Standard for Motion to Dismiss*

**\*2** The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether a plaintiff is entitled to offer evidence in support of his claim. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-6 (1957). In the Ninth Circuit, the court making this determination must assume that the plaintiff's allegations are true, must construe the complaint in a light most favorable to the plaintiff, and must resolve every doubt in the plaintiff's favor. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). Therefore, the court will dismiss the complaint or any claim in it without leave to amend only if "it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.' " *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutler Labs.,* 622 F.2d 458, 460 (9th Cir.1980) (per curiam)).

Federal Rule of Civil Procedure 9(b) applies to securities actions brought under Section 10(b) of the Exchange Act and Rule 10b-5. *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Mere conclusory allegations of fraud are insufficient; instead, a plaintiff must plead the time, place and nature of the alleged fraudulent activities. *Id.* at 1439. Pleading is sufficient if it identifies the circumstances of fraud specifically enough for a defendant to prepare an adequate answer, *id.,* and to defend against the charge without just denying that he has done anything wrong, *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985). The rule may be relaxed as to matters peculiarly within the opposing party's knowledge. *Wool,* 818 F.2d at 1439. In such cases, the particularity requirement may be satisfied if the allegations are accompanied by a statement of the facts upon which the belief is founded. *Id.*

C. *Legal Standard for Scienter*

In order to state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege facts establishing scienter, defined as a "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976). In the Ninth Circuit, a plaintiff may establish scienter by showing deliberate fraud or a heightened level of recklessness. *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1569-70 (9th Cir.1990) (en banc), *cert. denied,* 499 U.S. 976 (1991). Allegations of negligence are insufficient. *Ernst,* 425 U.S. at 201. To allege scienter, a plaintiff must: (1) generally aver knowledge or recklessness, and (2) either allege particular facts that give rise to an inference of knowledge of the fraud *OR* allege fraudulent conduct that departs so extremely from ordinary care that the danger of misleading buyers or sellers is too obvious for the actor not to have been aware of it. *In re Network Equip. Technologies, Inc. Litig.,* 762 F.Supp. 1359, 1362 (N.D.Cal.1991).

**\*3** Although Rule 9(b) allows scienter to be pleaded generally, courts have required that the facts pleaded provide a basis for a strong inference of fraudulent intent. *In re Glenfed, Inc. Sec. Litig.,* 11 F.3d 843, 848 (9th Cir.1993), *reh'g granted,* No. 92-55419, 1994 U.S.App. LEXIS 3331 (9th Cir. February 25, 1994) (en banc).

II. DISCUSSION

A. *Plaintiffs Do Not Allege Scienter*

In the instant case, plaintiffs aver generally that defendants "knew or recklessly disregarded" adverse information which they failed to disclose, thus rendering other statements misleading. Yet, plaintiffs'

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 5:07-cv-03444-JF   Document 52-4   Filed 12/17/2007   Page 3 of 11  Page 3
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
(Cite as: Not Reported in F.Supp.)

descriptions of the undisclosed statements are conclusory and are pleaded without a factual basis. Plaintiffs also aver generally that defendants violated Generally Accepted Accounting Principles (GAAP) and thus falsely overestimated their account reserves. However, violations of GAAP resulting in an overvaluation of a company's financial status indicate negligent accounting at most and are not sufficient to support an inference of fraud. *Adam v. Silicon Valley Bancshares,* No. C93-20399 RMW (EAI), 1994 U.S.Dist. LEXIS 2797, at *8-9 (N.D.Cal. February 7, 1994). Moreover, plaintiffs' recitation of the amount of stock sold by defendants and of the decline of Ross' stock prices do not warrant an inference of fraud; rather, these allegations are conclusory statements informed by hindsight.

For these reasons, plaintiffs have failed to allege scienter adequately.

B. *Secondary Liability*

1. *Aiding and Abetting*

1. Complaint, ¶¶ 34, 36, 83

In its recent decision in *Central Bank v. First Interstate Bank,* 511 U.S. 164, 114 S.Ct. 1439 (1994) the Supreme Court considered "the continuing confusion over the existence and scope of the § 10(b) aiding and abetting action." *Id.* at 1444. In order to cut through the confusion the Supreme Court focused directly on the statute at issue and observed that, "the statute prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act," and further that, "the proscription does not include giving aid to a person who commits a manipulative or deceptive act." *Id.* at 1448. The Supreme Court then stated the necessary result of this analysis, holding that, "[b]ecause the text of § 10(b) does not prohibit aiding and abetting, we hold that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Id.* at 1455.

In light of *Central Bank,* plaintiffs concede, as they must, that the claims stating aiding and abetting liability must be dismissed without leave to amend.

2. *Conspiracy*

2. Complaint, ¶¶ 34-35, 83

Defendants, not unexpectedly, contend that the conspiracy liability claims of the complaint must also be dismissed after *Central Bank.* Plaintiffs, not unexpectedly, take the position, inter alia, that the assessment of the majority holding by dissenting Justice Stevens that the Supreme Court has "swe(pt) away" a cause of action for conspiracy under § 10(b), *see id.* at 1460, 1460 n. 12 (Stevens, J. dissenting), is naught but dicta and dissent. That position may be procedurally correct but the difficulty is that on the merits Justice Stevens has it right.

**\*4** In the *Central Bank* opinion the Supreme Court recognizes that "aiding and abetting is a 'method by which courts create secondary liability' in persons other than the violator of the statute." *Id.* at 1452 (quoting *Pinter v. Dahl,* 486 U.S. 622, 648, n. 24 (1988)).

Like aiding and abetting, conspiracy is a form of vicarious liability. Both are generally described in securities law as forms of "secondary" liability. A member of a conspiracy to violate § 10(b) may, of course, be a party who commits a manipulative and deceptive act and is therefore liable as a primary violator. In such a case, a conspiracy claim is simply duplicative pleading of § 10(b) liability. If, however, the member of the conspiracy is not a primary violator, that party is not the violator of the statute and may be held liable only in a theory of secondary liability. Just as "the text of § 10(b) does not prohibit aiding and abetting,"*id.* at 1452, it does not prohibit conspiring with primary violators. Both aiders and abettors and conspirators fall into the conceptual category of those who are "giving aid" to primary violators. It is apparent, then, that the *Central Bank* rationale that prohibits implied aiding and abetting liability is applicable to implied conspiratorial liability and leads to the inevitable conclusion that conspiratorial liability for § 10(b) does not survive *Central Bank.*

This Court notes further support for this conclusion in the discussion by the Supreme Court in *Central Bank* of "controlling persons" liability which is expressly provided for in section 20 of the 1934 Act. The Supreme Court notes that this suggests that "[w]hen Congress wished to create such [secondary] liability, it had little trouble doing so." *Id.* at 1452 (quoting *Pinter v. Dahl,* 486 U.S. 622, 650 (1988)). The Supreme Court reasoned from this circumstance that statutory silence could not support the existence of aiding and abetting liability. Statutory silence as to conspiracy leads to the same result.

Finally, it may be noted that case law has established three elements for aiding and abetting liability: (1) a primary violation of § 10(b), (2) knowledge of the violation on the part of the accused aider and abetter, and (3) substantial assistance by the aider and abetter in the achievement of the primary violation. *See Metge v. Baehler,* 762 F.2d 621, 624 (8th Cir.1985), *cert. denied,* 474 U.S. 1052 (1986).

The crime of conspiracy may be inchoate, but there is no corollary inchoate tort of conspiracy. In civil cases conspiracy is a theory of liability available only when a completed tort exists. It is apparent then that the first element of aiding and abetting liability will always exist in a conspiracy claim. The second element is a "scienter" requirement and the relevant frame of mind must also be present in every conspiracy case.

If the first two elements are found as to any party and that party then provides substantial assistance so as to be an aider and abetter, it is manifest that an overt act has been added to the conspiratorial agreement with the result that proof of aiding and abetting always proves conspiratorial liability. It is beyond logic to maintain that although *Central Bank* prohibits aiding and abetting liability it permits plaintiffs to maintain the same cause of action by labelling it as a conspiracy.

**\*5** Accordingly, plaintiffs' conspiracy claims are dismissed without leave to amend.

3. *Control Person Liability*

3. Complaint, ¶¶ 25-26, 87-88

The director defendants move to dismiss the claims of control person liability, on grounds that plaintiffs have not alleged actual participation or control. Plaintiffs claim that invocation of the status of defendants as stock owners, managers and directors is sufficient to plead control person liability.

Prior to *Hollinger v. Tital Capital Corp.,* 914 F.2d 1564 (9th Cir.1990) (en banc), *cert denied,* 499 U.S. 976 (1991), the Ninth Circuit employed a two-prong test for pleading control person liability: (1) that the individual defendants had the power to control or influence, and (2) that the individual defendants were culpable participants in the illegal activity. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987). *Hollinger* eliminated the second prong of the test, but the first prong still requires a plaintiff to allege actual control.[FN3] *See Arthur Children's Trust v. Keim,* 994 F.2d 1390, 1396 (9th Cir.1993) (status as an officer or director does not create any presumption of control). Accordingly, courts in this District have required plaintiffs to plead more than the status of an outside director in order to survive a motion to dismiss control person claims. *In re XOMA Corp. Sec. Litig.,* [1991-92 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,491, at 92,163 (N.D.Cal. Dec. 27, 1991).

As noted above, plaintiffs have not pleaded anything more than the status of the director defendants as outside directors on the board of directors, members of various board committees, and general partners of venture capital firms. Thus, all claims of control person liability against the director defendants are dismissed with leave to amend to allege facts supporting actual control.

C. *Group Pleading for Director Defendants*

C. Complaint, ¶¶ 22-25, 27-29, 78, 81-82

In the Ninth Circuit, where the fraud alleged is fraud in the internal operation of a corporation, plaintiffs are allowed to plead claims for fraud against officers of the corporation using group pleading presumptions that the fraud was the col-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-4   Filed 12/17/2007   Page 5 of 11

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

lective action of the officers. *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987). In particular, in cases where the allegedly false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, 10-Q filings, or other "group-published information," plaintiffs may plead fraud by officers and executives involved in the day-to-day management of those parts of the corporation involved in the fraud through general averment. *Smith v. Network Equip. Technologies, Inc.,* [1990-91 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,659 at 98,093-94 (N.D.Cal. Oct. 19, 1990).

The rationale for group pleading is that facts about fraud flowing from the internal operation of a corporation are peculiarly, and often exclusively, within the control of the corporate insiders who manage the parts of the corporation involved in the fraud. *Id.* Requiring specific pleading in this context would create a substantial barrier for plaintiffs seeking to allege certain types of corporate securities fraud. *Id.*

**\*6** Under group pleading, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the alleged misrepresentations with particularity and, where possible, the roles of the individual defendants in the misrepresentations. *Wool,* 818 F.2d at 1440.

The director defendants in the instant case argue that the group pleading exception does not apply to outside directors not involved in the day-to-day management of the corporation, and that plaintiffs have not adequately pleaded such involvement. Plaintiffs argue that they have pleaded the director defendants' participation with as much specificity as possible without being privy to inside information.

In their complaint, plaintiffs name the director defendants as members of Ross' Board of Directors, and Audit, Compensation and Stock Option committees, and as general partners of Venture Capital Firms that profited from the alleged scheme to inflate Ross stock prices. Based on these positions, plaintiffs allege that the director defendants had access to adverse non-public information concerning Ross' business and finances, and controlled the contents of Ross' alleged misrepresentations through receiving copies of reports and press releases before distribution. Aside from these allegations of general liability based upon the director defendants' positions, plaintiffs specifically assert that each director defendant "signed the 10-K."

When bringing claims against outside directors, it is not enough to make conclusory allegations that the directors "control the contents" of reports, or received copies of statements prior to their issuance. *In re Quarterdeck Office Sys., Inc. Sec. Litig.,* No. CV-92-3970-DWW (GHKx), slip op. at 16 (C.D.Cal. Mar. 29, 1994). Without some allegation that an outside director participated in the publication of the allegedly false statements, or had any other "special relationship" with the corporation, claims that the director merely signed some of the group published documents are not sufficient to meet group pleading requirements. *In re XOMA Corp. Sec. Litig.,* [1991-92 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,491, at 92,160-61 (N.D.Cal. Dec. 27, 1991). Moreover, even under group pleading, it is generally not enough to base allegations on general job descriptions of corporate positions and allege knowledge or actions flowing primarily from an interpretation of those positions. *See Network Equip. Tech.,* [1990-91 Tr. Binder] Fed.Sec.L.Rep. at 98,094. Therefore, even though plaintiffs argue that the combination of defendants' status as outside directors *and* members of various committees states a claim, plaintiffs' allegations are not specific enough to satisfy group pleading standards. *See Haltman v. Aura Sys., Inc.,* [Current Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,102, at 98,802 (C.D.Cal. March 12, 1993).[FN4]

Thus, plaintiff's claims against the director defendants are dismissed with leave to amend in order to allege day-to-day management.

D. *Statements of Historical Facts*

D. Complaint, ¶¶ 40-43, 46-47, 49-51, 55-60, 65,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF    Document 52-4    Filed 12/17/2007    Page 6 of 11

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

68, 71

**\*7** Defendants claim that statements regarding quarterly financial results, business contracts and agreements, new product lines, recently opened operations abroad, and organizational restructuring are not actionable because they are accurately reported historical facts. Plaintiffs argue only that the periodic financial statements are false due to accounting fraud.

As noted below, *see infra* Section H, to the extent that plaintiffs allege that the financial statements are false due to accounting error, they have failed to plead accounting fraud adequately under Rule 9(b). The other historical fact statements, whose veracity plaintiffs do not contest even while alleging that they are misleading when placed in context, merely report facts such as "the signing of more than 20 contracts," Complaint, ¶ 41, "we just opened operations in Italy," Complaint, ¶ 56, and "the company restructured its North American Sales organization," Complaint, ¶ 57. These statements are not actionable because they are accurate statements of historical fact. *See In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 930 (9th Cir.1993); *Pleasant Overseas Corp. v. Hajjar,* No. C-93-20197-RMW (EAI), slip op. at 8-9 (N.D.Cal. Nov. 18, 1993). Thus, the other historical fact statements alleged are dismissed without leave to amend.

E. *Vague Statements of Optimism*

E. Complaint, ¶¶ 40, 42, 46, 49-50, 52, 54-59, 65-66, 70

Defendants argue that many of the allegedly misleading statements are merely "vague statements of optimism" which are not actionable as "material" misrepresentations.

To state a claim under section 10(b) and Rule 10b-5, a plaintiff must allege that the defendant knowingly or recklessly published an untrue statement of fact or omitted to state a material fact necessary to make its statements not misleading. *In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 926 (9th Cir.1993). In the Ninth Circuit, a projection or statement of belief, including a general expression of optimism, may be actionable under section 10(b) to the extent that one of the three implied factual assertions is inaccurate: (1) that the statement is genuinely believed, (2) that there is a reasonable basis for that belief, and (3) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement. *Wells Fargo,* 12 F.3d at 930; *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied,* 496 U.S. 943 (1990). *See In re Verifone Sec. Litig.,* 11 F.3d 865, 871 (9th Cir.1993). Courts in this District have found that allegations concerning projections or statements of optimism must be dismissed if they are too vague. *In re Caere Corporate Sec. Litig.,* 837 F.Supp. 1054, 1058 (N.D.Cal.1993). *See In re Software Publishing Sec. Litig.,* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,094, at 98,757-60 (N.D.Cal. February 2, 1994).

A sample of defendants' statements of belief, as alleged in plaintiffs' complaint, includes:

**\*8** "We are pleased with the current level of prospective sales, which is particularly high ..." ¶ 40.

"Acceptance of these products in the U.S. has exceeded our expectations.... our rapidly growing prospect base reflects significant opportunity in this market." ¶ 41.

"We are optimistic that these future business prospects ... will continue to secure Ross Systems' position as one of the leading providers ..." ¶ 42.

"Strong North American and PROMIX Sales Contribute to Record Results" ¶ 49.

"The introduction of several new products ... should contribute to further sales growth in future quarters." ¶ 49.

"This quarter was one of the most significant in the company's history.... [and] holds huge growth potential for the company." ¶ 55.

The other statements of belief alleged in the complaint are located in paragraphs 46, 49, 50, 52, 54, 56-59, 65-66, and 70, and can be identified by their use of words similar to the following: "pleased," "strong," "significant," "optimistic," "all-time high," "exceptional," "exceeded our expectations," "well-positioned," "success[ ]," "high," and "well."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-4   Filed 12/17/2007   Page 7 of 11

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

These statements include vaguely worded expectations, found in paragraphs 49, 50, 52, 56, 58, 59 of the complaint.

The above noted statements are similar to those dismissed by other courts in this District as too vague to be actionable. For example, the court in *Caere Corp.* dismissed without leave to amend allegations regarding statements such as " 'well-positioned' for growth," "exciting year," "revenues and earning had reached 'record levels'," and "continuing strong sales." *Caere Corp,* 837 F.Supp. at 1057, 1058. Similarly, in *Software Publishing,* the court dismissed claims including phrases such as "we will be better positioned," "best-of-breed leadership," and "exciting period." *Software Publishing,* [Current Binder] Fed.Sec.L.Rep. at 98,757-60. Since the statements plaintiffs allege to be misleading are similarly vague, plaintiffs' allegations regarding positive characterizations of Ross Systems' current and future situation are dismissed without leave to amend.

F. *Statements of Financial Objectives*

F. Complaint, ¶¶ 44, 56, 61, 67

Defendants also move to dismiss plaintiffs' allegations concerning statements of internal objectives or expectations, such as:
"We've anticipated that we would grow at a rate of up to 30 percent internally ..." ¶ 56.
"For the foreseeable future, the Company believes that funds generated from future operations, together with the bank line of credit, will be sufficient to meet its cash requirements for operations ..." ¶ 44.

To state a cause of action for a projection, a plaintiff must allege sufficient facts to substantiate a claim that the defendant lacked a reasonable basis for the projection or made the projection in bad faith. *Kowal v. MCI Communications Corp.,* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,101 at 98,797 (D.C.Cir. Mar. 1, 1994). It is not sufficient to allege that the projections did not come true. *See Caere Corp.,* 837 F.Supp. at 1060.

**\*9** Plaintiffs have not alleged any facts supporting a conclusion that defendants were acting unreasonably in their projections. Rather, plaintiffs make conclusory allegations about undisclosed information allegedly available to defendants, and state facts about the eventual decline of Ross' stock. These allegations are informed by hindsight and are insufficient to raise an inference of unreasonableness. Therefore, plaintiffs' claims regarding financial objectives are dismissed with leave to amend to allege that defendants made such statements without a reasonable basis.

G. *Non-Disclosure of Internal Projections*

G. Complaint, ¶¶ 73-76

Plaintiffs allege that defendants failed to disclose known adverse information and that this failure rendered their other statements misleading. Plaintiffs point to undisclosed information such as:
"Ross' products were meeting substantial resistance in the marketplace ..." ¶ 74.
"the Company was experiencing the adverse impact of softening demand for its products and services ..." ¶ 74.
"the Company was experiencing declining business prospects ..." ¶ 75.
"Ross was experiencing sharply increasing expenses ..." ¶ 76.

Plaintiffs' allegations are similar to those dismissed in *In re Verifone Securities Litig.,* 11 F.3d 865, 869 (9th Cir.1993). In that case, the Ninth Circuit found no duty to disclose forecasts of adverse information. The court found that "[a]bsent allegations that [defendant] withheld financial data or other existing facts from which forecasts are typically derived" the alleged omissions were not material and did not render other statements misleading. *Id.*[FN5] Accordingly, the court dismissed claims regarding an alleged failure to state that "sales growth ... had slowed substantially," "unit sales ... had materially declined," and the "market was saturated," because these claims were "in substance, failure[s] to make a forecast of future events." In addition, another court in this District has dismissed claims that statements were rendered misleading by a failure to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
(Cite as: Not Reported in F.Supp.)

Page 8

disclose that a product was meeting substantial resistance in the marketplace or was, in general, not encountering great success. *In re Software Publishing Sec. Litig.,* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,094, at 98,757 (N.D.Cal. February 2, 1994).

Plaintiffs' claims that Ross "was experiencing declining business prospects," or "was experiencing sharply increasing expenses" do no differ in substance from the claims dismissed in *Verifone* and *Software Publishing* as forecasts which do not have to be disclosed. Thus, plaintiffs' claims of undisclosed information are dismissed with leave to amend to allege material and specific omissions of facts that existed at the time the allegedly misleading statements were made.

H. *Financial Statements and Accounting Fraud*

H. Complaint, ¶¶ 43, 47, 51, 60, 68, 79

**\*10** Plaintiffs also allege that defendants created false and misleading reports through accounting fraud, thereby overstating Ross' financial position.

To state a claim for accounting fraud, a plaintiff must plead facts supporting a conclusion that a defendant has prepared fraudulent financial statements, and that the alleged financial fraud was material. *Rogal v. Costello,* [1992-1993 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 97,245 at 95,092-93 (N.D.Cal. October 8, 1992). While a plaintiff need not specify the exact dollar amount of each financial error, *In re 3COM Securities Litig.,* 761 F.Supp. 1411, 1415 (N.D.Cal.1990), some level of specificity is required. *In re Wells Fargo Sec. Litig.,* 12 F.3d 922 (9th Cir.1993).

In the instant case, plaintiffs allege that several of Ross' financial statements were rendered materially false by Ross' failure to disclose that its accounts receivable was severely underfunded by specifically identified amounts. Plaintiffs' allegations include the following:
"Ross' reserves of only $1.5 million for total receivables of $33.2 million ... were understated by at least $2 million.... Ross was ... deferring the write-off of these receivables until future quarters when it hopefully would have higher revenues ..." ¶ 47.
"[D]efendants knew that revenues had been recognized where the earnings process was not complete, resulting in Ross having to ultimately report charges in excess of $4 million against accounts receivable ..." ¶ 51.
"Ross improperly recorded approximately $1.0 million ... as a restructuring charge .." ¶ 51.
"Ross improperly recognized revenue from software licensing agreements prior to fulfilling its obligations under the agreements and prior to an exchange occurring, in violation of Statement of Position 91-1 "Software Revenue Recognition," and FASB Statement of Concepts No. 5." ¶ 79.

Unlike the allegations upheld in *Wells Fargo,* where the plaintiff identified nine specific loans not reflected in the company's report of its loan loss reserves, the allegations here do not specify particular transactions underlying defendants' alleged accounting deficiencies. *See Wells Fargo,* 12 F.3d at 927-8. To survive a motion to dismiss, plaintiffs cannot simply allege that specific accounting practices were violated without also providing specific underlying facts to support the allegations. *Adam v. Silicon Valley Bancshares,* No. C93-20399 RMW (EAI), 1994 U.S.Dist. LEXIS 2797, at \*5 (N.D.Cal. February 7, 1994). Thus, plaintiffs' claims regarding accounting fraud are dismissed with leave to amend to allege specific fraudulent transactions.

I. *Third Party Financial Analyst Statements*

I. Complaint, ¶¶ 30-33, 45, 48, 53, 62-64, 69

The complaint also alleges that defendants are liable for misleading statements contained in financial analyst reports.

To state a cause of action against a company for statements made by third party analysts, a plaintiff must allege facts supporting the conclusion that the company adopted or endorsed the analyst reports. *In re Software Publishing Sec. Litig.,* [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,094 at 98,762 (N.D.Cal. Feb 2, 1994). A company is liable for third party statements only if it "places its imprim-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-03444-JF   Document 52-4   Filed 12/17/2007   Page 9 of 11

Not Reported in F.Supp. Page 9
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

atur on the reports" by expressly or impliedly representing that the information is accurate or coincides with the company's views. *Id.* A defendant has not adopted an analyst's report unless he has sufficiently entangled himself with the report to attribute its content to him. *In re Caere Corporate Sec. Litig.,* 837 F.Supp. 1054, 1059 (N.D.Cal.1993).

**\*11** To state a cause of action against an individual insider of a corporation for statements made by third party analysts, a plaintiff must demonstrate (1) that the insider adopted the third party report, and (2) that the insider knew that the forecasts were unreasonable when made and failed to disclose the unreasonableness to investors. *Id.* at 1057. To show adoption by an individual, a plaintiff must plead (1) specific reports and the name of the insider who adopted them; (2) specific interactions between the insider and the analyst; and (3) dates on which the interactions occurred. *Id.; In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259 (2d Cir.1993), *cert. denied,*--- U.S. ----, 114 S.Ct. 1397 (1994). A plaintiff may not use group pleading to attribute third party financial analyst reports to individual defendants because such reports are not "group published information." *In re Network Equipment Technologies, Inc.,* 762 F.Supp. 1359, 1367 (N.D.Cal.1991).

Plaintiffs make the following allegations concerning third party analysts:
Reports were "based on information supplied by defendants ..." ¶¶ 45, 48, 53, 62-64, 69.
Defendants "used their communications to analysts to allay concerns over Ross' future prospects and to fuel artificial inflation ..." ¶ 31.
Defendants "communicate[d] with securities analysts on a regular basis ..." ¶ 32.
Ross "provide[d] detailed 'guidance' to analysts" through "telephone calls, meetings, and briefings ..." ¶ 32.
Defendants had these communications with analysts in order to cause them to issue favorable reports on Ross and used these communications to falsely present the success ... of Ross ... and to artificially inflate the market price of Ross' common stock." ¶ 32.
Ross "approved," "knew of these reports," "endorsed these reports, adopted them as its own and placed its imprimatur on them ..." ¶ 33.

Plaintiffs' allegations do not adequately attribute these third party statements to Ross. To allow such conclusory allegations to state a claim against a corporation would subject corporations to continuous litigation arising from the statements of countless others who provide analyse's in the financial world. *See Caere Corp.,* 837 F.Supp. at 1059. Thus, plaintiffs' claims regarding Ross' connection to third party statements are dismissed with leave to amend, in order to plead more specific entanglement.

For claims of individual defendant liability for third party analyst statements, plaintiffs have clearly failed to allege the specific interactions necessary to plead each individual defendant's endorsement. To the extent that plaintiffs can plead specific individual entanglement, their claims regarding third-party statements are dismissed with leave to amend. To the extent that plaintiffs wish to employ group pleading to attribute third party statements to the individual defendants, their claims are dismissed without leave to amend.

### III. CONCLUSION

**\*12** For the foregoing reasons, the Court ORDERS:

1. Plaintiffs' claims of aiding and abetting liability and conspiracy are DISMISSED WITHOUT LEAVE TO AMEND.

2. Plaintiffs' claims of control person liability are DISMISSED WITH LEAVE TO AMEND to allege actual control.

3. Plaintiffs' claims against the director defendants are DISMISSED WITH LEAVE TO AMEND to allege the directors' involvement in the day-to-day management of Ross Systems.

4. Plaintiffs' claims regarding defendants' statements of accurately reported historical facts, vague statements of optimism, and third party analyst re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Case 5:07-cv-03444-JF  Document 52-4  Filed 12/17/2007  Page 10 of 11 Page 10
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

ports attributed to the director defendants through group pleading are DISMISSED WITHOUT LEAVE TO AMEND.

5. Plaintiffs' claims regarding defendants' statements of financial objectives are DISMISSED WITH LEAVE TO AMEND to allege that defendants had no reasonable basis for their statements.

6. Plaintiffs' claims regarding defendants' non-disclosure of adverse information are DISMISSED WITH LEAVE TO AMEND to allege existing material facts that were not disclosed.

7. Plaintiffs' claims regarding accounting fraud are DISMISSED WITH LEAVE TO AMEND to allege specific transactions underlying each alleged fraud.

8. Plaintiffs' claims regarding third party reports are DISMISSED WITH LEAVE TO AMEND to adequately allege entanglement.

9. Any amended complaint in conformance with this Order must be filed on or before August 19, 1994.

IT IS SO ORDERED.

> FN1. Section 10(b), 15 U.S.C. § 78j(b), makes it "unlawful for any person, directly or indirectly ...:
> "(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

> FN2. Rule 10b-5, 17 C.F.R. § 240.10b-5, forbids the making of "any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

> FN3. *Hollinger* did hold that alleging the status of "broker-dealer" is sufficient to allege control person liability. Yet, *Hollinger* specifically limited this status allegation to the position of broker-dealer on the grounds that broker-dealers have, by law, a duty to supervise their registered representatives, and that, therefore, their relationship is "necessarily one of controlled and controlling person." *Hollinger,* 914 F.2d at 1573. Such status is not implicated by the present action.

> FN4. The Court notes that plaintiffs misleadingly characterize the holdings in *In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 795 (S.D.Cal.1990), and *In re Genentech, Inc. Sec. Litig.,* [1989 Tr. Binder] Fed.Sec.L.Rep. (CCH) ¶ 94,544 (N.D.Cal. July 7, 1989). Far from extending the group pleading presumption to directors without day-to-day control, these decisions actually dismissed the plaintiffs' claims with leave to amend in order to allege greater detail demonstrating collective responsibility.

> FN5. Plaintiffs argue that Item 303 of Regulation S-K imposes a duty to disclose "trends or uncertainties." *See* Plaintiffs' Memorandum of Points and Authorities in Opposition to the Ross Defendants' Motion to Dismiss, at 15 n. 15; Complaint, ¶ 77(a). To the extent that this argument applies to statements of future projections, it was rejected in *In re Verifone Sec. Litig.,* 11 F.3d 865, 870 (9th Cir.1993). The court there noted that another SEC regulation which expressly addresses forecasts provides that forward-looking information need not be disclosed. *Id.*

N.D.Cal.,1994.
In re Ross Systems Securities Litigation
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

Page 11

END OF DOCUMENT

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 583114 (N.D.Cal.), Fed. Sec. L. Rep. P 98,363
**(Cite as: Not Reported in F.Supp.)**

Page 11

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.