LEXSEE 2006 U.S. DIST. LEXIS 45853



Analysis
As of: Dec 17, 2007

SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. JEFFREY A. RICHIE and FORTRESS FINANCIAL GROUP, INC., Defendants.

Case No. EDCV 06-63-VAP (SGLx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

2006 U.S. Dist. LEXIS 45853

May 9, 2006, Decided
May 9, 2006, Filed

**SUBSEQUENT HISTORY:** Reconsideration denied by *SEC v. Richie,* 2006 U.S. Dist. LEXIS 57258 (C.D. Cal., Aug. 14, 2006)

**COUNSEL:** For Securities and Exchange Commission, Plaintiff: John B Bulgozdy, Michele Wein Layne, Michael A Piazza, David M Rosen, LEAD ATTORNEYS, SEC - Securities & Exchange Commission, Los Angeles, CA.

For Fortress Financial Group Inc, Jeffrey A Richie, Defendants: Robert C Rosen, John B Wallace, LEAD ATTORNEYS, Rosen & Associates, Los Angeles, CA.

**JUDGES:** [*1] VIRGINIA A. PHILLIPS, United States District Judge.

**OPINION BY:** VIRGINIA A. PHILLIPS

**OPINION**

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT OR ALTERNATELY, TO DISMISS CERTAIN OF PLAINTIFF'S FOUR CLAIMS FOR RELIEF OR ALTERNATELY FOR A MORE DEFINITE STATEMENT, OR ALTERNATELY, TO STRIKE PORTIONS OF THE**

**COMPLAINT**

Defendants' Motion to Dismiss Complaint or Alternately, to Dismiss Certain of Plaintiff's Four Claims for Relief or Alternately, for a More Definite Statement, or Alternately, to Strike Portions of the Complaint came before this Court for hearing on May 1, 2006. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing the Court DENIES Defendants' Motion.

**I. BACKGROUND**

Plaintiff Securities and Exchange Commission filed a Complaint on January 19, 2006, alleging that Defendants Jeffrey Richie ("Richie") and Fortress Financial Group, Inc. ("Fortress") (collectively, "Defendants") made material misrepresentations or omissions of fact in the sale of unregistered securities. Plaintiff alleges the following four claims:

    (1) Violation of *Sections 5(a)* and *5(c)* of the [*2] Securities Act of 1933 ("Securities Act");

    (2) Violation of *Section 17(a)* of the Securities Act;

Case 5:07-cv-03444-JF   Document 52-14   Filed 12/17/2007   Page 2 of 13

Page 2
2006 U.S. Dist. LEXIS 45853, *2

(3) Violation of *Section 10(b)* of the Securities Exchange Act of 1934 ("Exchange Act") and *Rule 10b-5*; and

(4) Violation of *Section 10(b)* of the Exchange Act and *Rule 10b-9*.

Plaintiff seeks an injunction, civil penalties, and disgorgement.

**A. Plaintiff's Allegations**

Defendant Richie controls Defendant Fortress; he is the president, chief executive officer, and 90% shareholder of Defendant Fortress. [Complaint ("Compl.") at P 3.] During the approximate period of March 2000 though April 2001, Defendants were involved in the fraudulent and unregistered offering of Defendant Fortress's preferred stock; the initial offering raised approximately $ 2.9 million. [*Id.* at PP 3, 4, 13, 15.]

Defendant Richie told potential investors the money would fund Defendant Fortress's business operations, including its business of providing 401(k) services to employees of corporations and clients of financial institutions. [*Id.* at P 5.] Defendants lied to and deceived investors, ignored legal advice, and disregarded securities registration and antifraud provisions. [*3] [*Id.* at P 18.]

Defendant Richie sold Defendant Fortress's stocks to approximately eighty-five investors nationwide through a "private placement." [*Id.* at PP 7, 15.] No registration statement was on file or in effect, and Defendant Fortress was not exempt from the registration requirements. [*Id.* at PP 7, 16, 17, 41.] Defendant Fortress did not qualify for an exemption because it offered its shares nationwide to "unaccredited" investors. [*Id.*]

Defendants' material misrepresentations and omissions to investors concerned the following aspects of Defendant Fortress's business:

(1) Financial projections,

(2) Undisclosed liabilities in excess of $ 1 million,

(3) Plans to conduct an initial public offering ("IPO"), and

(4) Defendant Fortress's promise not to spend any of the offering proceeds until it raised $ 2 million.

[*Id.*]

**1. Financial Projections**

Defendant Richie distributed Defendant Fortress's business plan, which was written in April 2000 and covered the five year period between 2000 and 2004. [Id. at P 19.] The business plan consisted of fifteen pages of narrative and thirty-nine pages of financial projections. [*4] [*Id.*] The following projections were made in Defendant Fortress's business plan:

|      | Revenue        | Net Income     |
|------|----------------|----------------|
| 2000 | $ 25,341,640   | $ 797,889      |
| 2001 | $ 159,542,531  | $ 28,287,653   |
| 2002 | $ 299,260,992  | $ 60,829,881   |
| 2003 | $ 435,000,128  | $ 91,681,050   |
| 2004 | $ 546,483,408  | $ 119,993,262  |

[*Id.*]

Defendant Richie knew, or was reckless in not knowing, that Defendant Fortress was not going to achieve these projections because Defendant Fortress had no operating history, lacked experienced management, and the projections were based on unreasonable assumptions. [*Id.* at PP 20, 21.] The projections were unreasonable because Defendant Fortress did not have a single client, assumed it would contract with a certain number of financial institutions each quarter, and

contracted with no clients in 2000 and only one client in 2001. [*Id.* at P 22.] Certain investors viewed the financial projections as an important factor in deciding to purchase Defendant Fortress's stock. [*Id.* at P 24.]

In September 2000, Defendant Fortress's former CFO knew that the financial projections were unreasonable, and by January 1, 2001, Defendant Richie knew the 2001 financial projections [*5] were not going to be achieved. [*Id.* at P 25.] Knowing that the financial projections were unreasonable, Defendant Richie continued to distribute the business plan to potential investors. [*Id.*]

Before beginning the offering, Defendant Fortress's attorney advised Defendant Richie to disclose in the business plan the assumptions upon which the financial projections were made. [*Id.* at P 26.] Disregarding this advice, Defendants failed to disclose any assumptions underlying the financial projections in the business plan. [*Id.*] This constitutes evidence that Defendants acted with scienter. [*Id.*]

In September 2000, Defendant Richie amended the financial projections by lowering the revenues and profits for 2000 through 2002, and increasing the revenues and profits for 2003 through 2004. [*Id.* at P 24.]

**2. Undisclosed Liabilities**

During the offering period, Defendant Fortress's current liabilities increased as indicated in the following table:

| June 2000 | $ 205,000 |
| July 2000 | $ 317,000 |
| August 2000 | $ 389,000 |
| September 2000 | $ 562,000 |
| October 2000 | $ 641,000 |
| November 2000 | $ 738,000 |
| December 2000 | $ 1,139,000 |
| January 2001 | $ 1,186,000 |
| February 2001 | $ 1,208,000 |
| March 2001 | $ 1,250,000 |
| April 2001 | $ 1,300,000 |

[*6] [*Id.* at P 29.] In April 2001, the current liabilities constituted 45% of the funds raised with the offering. [*Id.* at P 30.] During the offering, Defendants did not disclose to current and potential investors Defendant Fortress's liabilities; they also failed to disclose that a substantial portion of the funds raised would be used to pay off these liabilities. [*Id.*] Defendant Fortress's assets never exceeded $ 74,000 during the offering period. [*Id.*] At least seven investors considered Defendant Fortress's existing liabilities important and would have considered this information before investing in Defendant Fortress. [*Id.* at P 31.]

Moreover, Defendants did not provide an audited balance sheet to its unaccredited investors, which would have had the current liabilities in it. [*Id.* at P 32.]

Defendant Richie was aware of the need to disclose Defendant Fortress's current liabilities. [*Id.* at P 32.] The former CFO and Defendant Fortress's attorney asked that Defendant Richie disclose the current liabilities on two different occasions, but Defendant Richie refused. [*Id.* at P 33.] Defendant Richie also did not disclose that Defendant [*7] Fortress was planning on paying off Fortress's current liabilities with the money raised from the offering. [*Id.*] Defendant Richie knew, or recklessly disregarded, that the current liabilities were not disclosed to potential or current investors. [*Id.* at P 34.]

Case 5:07-cv-03444-JF   Document 52-14   Filed 12/17/2007   Page 4 of 13

Page 4
2006 U.S. Dist. LEXIS 45853, *7

### 3. The Expected IPO

Defendant Richie told at least six investors that he expected an IPO to occur "within 12 months" or "one year or so." [*Id.* at P 35.] Defendant Richie told one investor that he expected Defendant Fortress's shares to trade between $ 15 and $ 30, a substantially higher price than the $ 1 price at which the stock was eventually offered initially. [*Id.* at PP 15, 35.] Defendant Fortress's attorney warned Defendant Richie before the offering not to make statements concerning the likelihood or timing of an IPO. [*Id.* at P 36.]

### 4. Using Investor Funds Before Reaching Minimum Amount

The offering here was a so-called "mini-max" offering; it offered a minimum of $ 2 million and a maximum of $ 10 million of stock. [*Id.* at P 37.] Defendants represented that the funds raised in the offering would be placed in escrow until $ 2 million was raised, which occurred [*8] on August 31, 2000. [*Id.*] Defendant Fortress's financial records indicate that Defendant Fortress had spent $ 1 million of the funds raised by June 22, 2000. [*Id.*] By August 22, 2000, only $ 125,000 of the $ 1.3 million raised from the offering remained in escrow. [*Id.*]

### B. Proceedings

On March 22, 2006, Defendants filed a Motion to Dismiss Complaint or Alternately, to Dismiss Certain of Plaintiff's Four Claims for Relief or Alternately, for a More Definite Statement, or Alternately, to Strike Portions of the Complaint ("Mot."). Defendants' Motion argues that (1) Plaintiff's Complaint fails to allege facts entitling it to the relief requested, (2) Defendants did not make any material misrepresentations or omissions because they did disclose the current liabilities of Defendant Fortress and the underlying assumptions in the financial projections, (3) Defendants did qualify for an exemption from registering because it only sold securities to fewer than thirty-five unaccredited investors, and (4) the fraud allegations lack specificity. [Mot. at 2-3, 16.]

Plaintiff filed a Memorandum of Points and Authorities in Opposition to Defendants' Motion ("Opp'n") [*9] on April 10, 2006. Defendants filed a Reply ("Reply") on April 24, 2006.

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure 12(b)(6)*

Under *Rule 12(b)(6)*, a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. *See Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000)*; *Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1101 (9th Cir. 1999)*.

The Court must view all allegations in the complaint in the light most favorable to the non-moving party and must accept all material allegations -- as well as any reasonable inferences to be drawn from them -- as true. *See Big Bear Lodging Ass'n, 182 F.3d at 1101*; *Am. Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002)*.

The scope of review under *Rule 12(b)(6)* is generally limited to the contents [*10] of the complaint. *Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994)*. Nevertheless, "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1993), overruled on other grounds by Galbraith v. Santa Clara, 307 F.3d 1119, 1125-27 (9th Cir. 2002)*. The Court may also consider exhibits submitted with the complaint, *Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990)*, and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988)* (quotation marks omitted).

### B. Motion for More Definite Statement Pursuant to *Federal Rule of Civil Procedure 12(e)*

*Rule 12(e) of the Federal Rules of Civil Procedure* states:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, [*11] the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and

the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

"[A] motion for a more definite statement must be considered in light of the liberal pleading standards of *Rule 8(a)* (a Complaint need only be a 'short and plain statement of the claim showing that the pleader is entitled to relief[.]')." *Bureerong v. Uvawas, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996)* (citing *Sagan v. Apple Computer, Inc., 874 F. Supp. 1072, 1077 (C.D. Cal. 1994)* ("Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules.")). "A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance [*12] of the claim asserted against him or her." *San Bernardino Public Employees' Ass'n v. Stout, 946 F. Supp. 790, 804 (C.D. Cal. 1996)* (citing *Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F. Supp. 940, 949 (E.D. Cal. 1981))*. "Thus, a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading." *Bureerong, 922 F. Supp. at 1461* (citing *Boxall v. Sequoia Union High Sch., 464 F. Supp. 1104, 1114 (N.D. Cal. 1979))*.

"A *Rule 12(e)* motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Sagan, 874 F. Supp. at 1077* (citing *Famolare, 525 F. Supp. at 949*). "Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." *Id.*, see also *Famolare, 525 F. Supp. at 949* ("where the information sought by the moving party is available and/or properly sought through discovery the motion should be denied.").

"A *Rule 12(e)* motion is more likely to be granted where the complaint is so general [*13] that ambiguity arises in determining the nature of the claim or the parties against whom it is being made." *Sagan, 874 F. Supp. at 1077* (citing *Van Dyke Ford, Inc. v. Ford, 399 F. Supp. 277, 284 (E.D. Wis. 1975))*. "Such a motion is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Id.* (citing *Boxall, 464 F. Supp. at 1113-14*).

**C.** *Federal Rule of Civil Procedure 9(b)*

The Ninth Circuit has held that a "pleading is sufficient under *Rule 9(b)* if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987)* (quotations and citation omitted). The plaintiff must state the "time, place and specific content of the false representation." *Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)*. "Mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)*.

### III. DISCUSSION

[*14] **A. Motion to Dismiss Pursuant to** *Federal Rule of Civil Procedure 12(b)(6)*

**1. Violation of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rules 10b-5 and 10b-9.**

*Section 17(a)* of the Securities Act, [1] *Section 10(b)* of the Exchange Act, [2] and *Rules 10b-5* [3] and *10b-9* [4] prohibit fraudulent conduct in the sale or offering of securities. *S.E.C. v. Dain Rauscher, Inc., 254 F.3d 852, 855-56 (9th Cir. 2001)*. To establish a violation of these statutes, Plaintiff must allege the following: (1) a material misrepresentation or omission of fact, (2) in connection with the purchase or sale of a security, (3) scienter, and (4) that the sale involved interstate commerce. *See, e.g.*, *id.*, *S.E.C. v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir. 1993)*.

> [1]  *Section 17(a)* of the Securities Act states as follows:
>
> > It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly

> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

*15 U.S.C. § 77q(a).*

[*15]

2  *Section 10(b)* of the Exchange Act states as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange- . . .
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

*15 U.S.C. § 78j*

3  *Rule 10b-5* states as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the

statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*17 C.F.R. § 240.10b-5.*

[*16]

4  *Rule 10b-9* states as follows:

It shall constitute a manipulative or deception device or contrivance, as used in section 10(b) of the Act, for any person, directly or indirectly, in connection with the offer or sale of any security, to make any representation:

(1) To the effect that the security is being offered or sold on an "all-or-none" basis, unless the security is part of an offering or distribution being made on the condition that all or a specified amount of the consideration paid for such security will be promptly refunded to the purchaser unless (i) all of the securities being offered are sold at a specified price within a specified time, and (ii) the total amount due to the seller is received by him by a specified date; or

(2) To the effect that the security is being offered or sold on any other basis whereby all or part of the consideration paid for any such security will be refunded to the purchaser if all or some of the securities are not sold, unless the security is part of an offering or distribution being made on the condition that all or a specified part of the consideration paid for such security will be promptly refunded to the purchaser unless (i) a specified number of units of the security are sold at a specified price within a specified time, and (ii) the total amount due to the seller is received by him by a specified date.

*17 C.F.R. § 240.10b-9.*

Case 5:07-cv-03444-JF    Document 52-14    Filed 12/17/2007    Page 8 of 13

Page 8
2006 U.S. Dist. LEXIS 45853, *16

[*17] Plaintiff has alleged that Defendants violated *Section 17(a)* of the Securities Act, *Section 10(b)* of the Exchange Act, and *Rule 10b-5* by making material misrepresentations and omissions of fact to investors concerning the following areas: (1) financial projections, (2) undisclosed liabilities, (3) plans to conduct an IPO, and (4) promising not to spend any of the proceeds from the offering until it raised $ 2 million. [Compl. at PP 5, 18-38.]

### a. Non-Disclosure of Defendant Fortress's Current Liabilities

Defendants assert that they disclosed Defendant Fortress's current liabilities in the business plan. [5] [Mot. at 16.] In its Opposition, Plaintiff contends its Complaint alleges sufficiently Defendants' non-disclosure of a material fact, i.e., Defendant Fortress's current liabilities, as well as Defendants' scienter. [Opp'n at 7.]

> 5   Pursuant to *Federal Rule of Evidence 201*, the Court grants Defendants' Request for Judicial Notice Number 5.

Plaintiff alleges that [*18] Defendants' current liabilities were never disclosed to potential investors and it was never disclosed that Defendants were using a large portion of the revenue from the offering to pay for the liabilities already incurred. [Compl. at PP 29-34.] Plaintiff also alleges that these misrepresentations and omissions were material and Defendants acted or failed to act with scienter. [*Id.* at PP 31, 33-34.] Thus, Plaintiff has alleged a prima facie claim for a violation of *Section 17(a)* of the Securities Act, *Section 10(b)* of the Exchange Act, and *Rule 10b-5*.

Defendants assert that they did in fact disclose their current liabilities and relied upon their quarterly balance sheets in their business plan to support such an assertion. [Mot. at 2 n.6, 16.] That some of the financial documents in Defendant Fortress's business plan have a category for current liabilities does not necessarily disprove Plaintiff's allegation that there were current liabilities that were undisclosed. [Compl. at P 29.] The Court cannot, as a matter of law, conclude that since Defendants' business plan included a statement of current liabilities, that all of Defendant Fortress's current liabilities were disclosed. [*19] It is possible that the current liabilities disclosed in the business plan did not accurately reflect its actual liabilities.

Moreover, Plaintiff avers that Defendants never disclosed that the revenue from the offering was going to be used to cover Defendant Fortress's expenses. [*Id.* at PP 30, 33.] Even if Defendants did disclose their current liabilities, Plaintiff would be entitled to relief if it is proven that Defendants misrepresented or omitted to disclose the liabilities compared to the current assets. Accordingly, Defendants have not satisfied their burden of establishing that Plaintiff has not alleged facts that, if proven, would entitle it to relief.

In light of the Court's ruling that Plaintiff has alleged facts that, if proven, would entitle it to relief for its claims that Defendants violated *Section 17(a)* of the Securities Act, *Section 10(b)* of the Exchange Act, and *Rule 10b-5*, the Court need not address Defendants' other arguments that Plaintiff cannot state a claim under these statutes. [6] *See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996), De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).* [*20] That Defendants did not disclose their current liabilities, however, does not establish a violation of *Rule 10b-9*.

> 6   The Court need not address Defendants' argument that its forward-looking statements are protected under the "bespeaks caution" doctrine at this time.

### b. Early Withdrawal of Escrow Funds

Defendants assert that breaking the escrow agreement is a breach of contract and not fraud. [Mot. at 22.] Plaintiff counters that violating the escrow agreement can constitute fraud. [Opp'n at 15.]

Plaintiff alleges that Defendants knew or should have known that their statements concerning the "mini-max" offering were false because they were not going to keep the revenue from the sale of the securities in an escrow account until $ 2 million was raised. [Compl. at PP 37-38.] Defendants seek dismissal of the *Rule 10b-9* claim on the ground that their early withdrawal of escrow funds was not actionable fraud. [Mot. at 22.]

Defendants' argument lacks merit. Defendants rely upon *Poth v. Russey, 99 Fed. Appx. 446, 454 (4th Cir. 2004),* [*21] an unpublished case; there, the Fourth Circuit held that fraudulent intent cannot be inferred through a mere breach of contract. *Id.* Such a holding does not establish that a statement contained in a contract,

which is knowingly false and later breached, cannot constitute fraud. Plaintiff alleges that Defendant Richie knew or should have known that Defendant Fortress was in such a dire financial condition that issuing business plans that stated the revenue from the offering would be held in escrow was materially false. [Compl. at PP 35-36.] Thus, Plaintiff's allegations, if proven, would entitle it to relief for a violation of *Section 10(b)* of the Exchange Act and *Rule 10b-9*.

**2. Violation of Sections 5(a) and 5(c) of the Securities Act**

Defendants contend that Plaintiff's conclusory allegations that Defendants sold securities to unaccredited investors without a registration statement, and that Defendants were not eligible for an exemption, are insufficient because (1) Plaintiff failed to allege how many unaccredited investors Defendant Fortress's securities were sold to, and (2) it would have been an idle act to present unaccredited investors with an "audited" balance [*22] sheet of a start-up company with no operational history. [Mot. at 23-24.]

Plaintiff responds that a prima facie claim for a violation of *sections 5(a)* and *5(c)* of the Securities Act requires Plaintiff to allege that Defendants sold unregistered securities in interstate commerce. [Opp'n at 4-5.] Plaintiff contends that Defendants bear the burden that they are exempt from the registration requirements. [*Id.* at 5.]

Defendants counter that since Plaintiff pled that Defendants were not eligible for an exemption, normally an affirmative defense, it "assumed the burden of correctly pleading the issue." [Reply at 21.] Defendants argue that Plaintiff did not adequately plead the exemption issue because Plaintiff's allegations are conclusory and do not set forth facts establishing why Defendants had no exemption.

*Sections 5(a)* and *5(c)* of the Securities Act forbid the sale of unregistered securities in interstate commerce. *S.E.C. v. Murphy, 626 F.2d 633, 640 (9th Cir. 1980)*. Here, Plaintiff has alleged that Defendants sold unregistered securities through interstate commerce. [Compl. at PP 40, 41.] Moreover, Plaintiff also has alleged that Defendants are not [*23] exempt from registration. [*Id.* at P 17.] Accordingly, Plaintiff has averred facts that, if proven, would establish a violation of *Sections 5(a)* and *5(c)* of the Securities Act.

Defendants' argument that Plaintiff has assumed the burden of pleading that Defendants were not exempt from the registration requirements lacks merit. [Reply at 21.] The authority Defendants cite does not support such a proposition. [7] That Plaintiff averred that Defendants were not exempt from the registration requirements does not place an extra burden on it in establishing its overall claim that Defendants sold unregistered securities in interstate commerce in violation of *Sections 5(a)* and *5(c)* of the Securities Act. Thus, Plaintiff does not need to allege that Defendant sold securities to over thirty-five unaccredited investors.

> 7 In *United States v. One 1949 Model Ford Coach Auto., Motor No. 98BA-876874, 101 F. Supp. 492 (D. S.C. 1951)*, the court held that if a party pleads a fact in its complaint, it should have the burden of proving it. *Id. at 494*. Not only is the Court unpersuaded by the holding of this case, it is irrelevant to the facts here; this is not a motion for summary judgment where Plaintiff has to prove its allegations.

[*24] **3. Failure to Plead Facts Entitling Plaintiff to an Injunction**

Defendants contend that Plaintiff fails to allege a present threat; there are "no facts that the conduct was repeated or continued during the five intervening years or that the conduct is being repeated at this time or in the near future." [Mot. at 9.] Defendants argue that if there is no continuing harm, there needs to be a "cognizable danger of recurrent violation, something more than the mere possibility. . . ." [*Id.* at 10 (citing *United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953))*.] Defendants assert that Plaintiff is not authorized to bring this action because it has failed to allege an imminent violation of the law. [*Id.* at 12.]

Plaintiff responds that because it has stated a claim under federal securities laws, Defendants' argument regarding the relief sought in this action is premature. [Opp'n at 9.] Plaintiff argues that its Complaint alleges the following facts establishing its right to an injunction:

> (1) Defendants' violations were serious, repeated, and committed with scienter;
>
> (2) material misrepresentations and omissions were made in the original [*25] private placement memorandum, and in

the revised memorandum, issued one-year later;

(3) Defendants disregarded their counsel's advice to comply with the antifraud provisions;

(4) Defendants have not revised the private placement memorandum;

(5) Defendants have failed to recognize their wrongful conduct or provide assurances of future compliance; and

(6) Defendant Richie is still associated with a regulated entity.

[*Id.* at 9-11.]

Injunctive relief is used to deter future violations of securities laws, not to punish past violations. *S.E.C. v. Koracorp Indus., Inc., 575 F.2d 692, 697 (9th Cir. 1978)* (citing *Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S. Ct. 587, 88 L. Ed. 754 (1944))*. Thus, injunctions against securities law violations are proper only if the wrongs are ongoing or likely to recur. *F.T.C. v. Evans Prods Co., 775 F.2d 1084, 1087 (9th Cir. 1985)*. In other words, the SEC must establish "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *W. T. Grant Co., 345 U.S. at 633*. There must be a reasonable likelihood of future violations [*26] of securities law. *Murphy, 626 F.2d at 655*.

Past violations of securities laws may give rise to an inference of future violations, however. *Id.* The Court shall consider the totality of the circumstances surrounding the securities violations, specifically, "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *Id.*

Defendants have not met their burden of establishing that, taking all of Plaintiff's allegations as true, the Complaint does not state a claim for injunctive relief. Plaintiff has alleged that (1) Defendants' violations occurred over a one year period, [Compl. at P 13]; (2) the violations were committed with a great amount of scienter, [*id.* at PP 25, 26, 27, 33, 35, 37]; and (3) Defendant Richie currently holds several securities licences. [*Id.* at P 10.] Using the *Murphy* factors, these alleged facts, if proven, could entitle Plaintiff to injunctive relief.

Defendants argue [*27] that the phrase "is engaged or is about to engage," as commonly used in other areas of the law and ordinary usage, would not support an inference of imminent future action from past conduct; in a securities context, however, there is clear authority that permits the Court to do just that. *See Murphy, 626 F.2d at 655*. Indeed, the *Murphy* Court held that a defendant's present compliance with securities laws does not preclude the issuance of an injunction. [*Id.*]

Defendants argue that Plaintiff's enabling legislation should be interpreted as confining Plaintiff's standing to sue only if there is an imminent violation. This contention is equally unfounded. *Murphy* establishes that injunctive relief is proper only if there is a likelihood of future securities violations, and evidence of past conduct may be sufficient to establish that there is a reasonable likelihood of future violations. [*Id.*] Thus, under *Murphy*, Plaintiff has standing to bring this suit.

To interpret the phrase "is engaged or is about to engage" as creating a higher standard than the reasonable likelihood of future violations standard would be illogical because this would create [*28] situations when the S.E.C has made a showing that it could obtain injunctive relief but does not have standing to sue for such relief. In concluding that the standard "is engaged and is about to engage" is similar to the reasonable likelihood standard, the Court finds that Defendants' past conduct can be used to infer that they are about to engage in securities fraud. [8]

 8 The Court is not disregarding Congress's intent that Plaintiff establish that Defendants be about to engage in securities violations, it is merely considering Defendants' past conduct as circumstantial evidence that Defendant are indeed about to engage in securities violations. The dispute between the parties is not what the relevant standard is, but what evidence can be considered to satisfy this standard. The decision in *Murphy* forecloses Defendants' position, however.

Defendants' Motion would have the Court engage in the level of scrutiny required to determine if Plaintiff is

entitled to injunctive relief. Such an undertaking is, of [*29] course, premature at the Motion to Dismiss stage. Plaintiff's allegations are sufficient to defeat Defendants' Motion. In light of this ruling, the Court finds that Plaintiff has standing to bring this action as well.

### 4. Failure to Plead Facts Entitling Plaintiff to Disgorgement

Defendants assert that to obtain disgorgement from Defendant Richie, Plaintiff must allege that the monies Defendant Richie received "exceeded a reasonable salary for his services," which it has not done. [Mot. at 13.]

Plaintiff counters that it can obtain disgorgement from Defendant Richie because (1) he was the president and CEO of Defendant Fortress, (2) he was responsible for selling Defendant Fortress's stock, and (3) he co-wrote the business plan that contained the material misrepresentations and omissions. [Opp'n at 12.]

Pursuant to the Court's equity powers, it may order a defendant to disgorge all "ill-gotten gains" from its violation of securities laws. *S.E.C. v. First Pacific Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998)*. "The purpose of disgorgement is to deprive a person of 'ill-gotten gains' and prevent unjust enrichment." *Hateley v. S.E.C., 8 F.3d 653, 655 (9th Cir. 1993)*. [*30] The disgorgement amount should not exceed the actual amount of "ill-gotten gains." *See id. at 655-56* (finding that when $ 50,000 was assessed against another defendant out of $ 55,000 of total disgorgement, any amount exceeding $ 5,000 in disgorgement assessed against the remaining defendant would be excessive.) "[W]here two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds." *First Pacific Bancorp, 142 F.3d at 1191* (holding that it was appropriate to find the individual defendant jointly and severally liable because the individual defendant, as a high ranking officer of the corporate defendants, enjoyed a sufficiently close relationship.)

Plaintiff has sufficiently alleged facts that, if proven, would authorize an order of disgorgement from Defendant Richie. Plaintiff has alleged that Defendants enjoyed a close relationship by alleging that Defendant Richie was responsible for the illegal sale of Defendant Fortress's preferred stock and he co-wrote the business plan [*31] containing the allegedly material misrepresentations and omissions. [Compl. at PP 3, 4, 5, 7, 9, 11.]

Defendants incorrectly assert that Plaintiff must allege that Defendant Richie received funds above a reasonable salary for his services. Defendants cite no authority for this proposition and rely only on authority that stands for the general principle that disgorgement is not punitive in nature. Defendants request the Court extend this authority to the point that disgorgement could not be ordered from a high ranking corporate officer unless it was shown that he or she received more than a reasonable salary. Such an extension of the law is not only unsupported by existing case law, it is unwarranted. Defendants' proposed rule, for example, does not take into account the situation when a struggling business is only able to pay a "reasonable" salary of the high ranking officers because of the illegal securities transactions. *See First Pacific Bancorp, 142 F.3d at 1192*. Moreover, Defendants' proposed pleading requirement directly contradicts the authority that permits joint and several liability when the individual defendant and the corporate defendant jointly [*32] undertake to violate securities laws. *Id.*

Hence, as Plaintiff has properly alleged that Defendant Richie enjoyed a close relationship with Defendant Fortress, such that he could be jointly and severally liable for the "ill-gotten gains" received by Defendant Fortress, the Court denies Defendants' Motion as to this remedy.

### 5. Time-Bar to Plaintiff's Request for Civil Penalties

Defendants aver that Plaintiff's allegations establish that their alleged material misrepresentations and omissions were made more than five years before the Complaint was filed and thus are barred by the five year statute of limitations on civil penalties. [Mot. at 14-15.] Defendants contend that there is no exception to the five year time period because it is not subject to the same equitable considerations as a statute of limitations. [*Id.* at 15.]

Plaintiff contends that it did file this action within the five year period because Defendants did not cease selling securities until April 2001 and this action was filed in January 2006. [Opp'n at 13.] Plaintiff argues that Defendants sold securities within the time period, January 2001 through April 2001, which gives the Court authority

to [*33] assess penalties for all of Defendants' illegal conduct. [*Id.*] Plaintiff asserts that the five year time period should not begin to run until it knew or should have known of Defendants' illegal conduct, which was April 2002. [*Id.* at 14.]

*28 U.S.C. § 2462* states as follows:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon. [9]

---

[9] Neither party disputes that this is the applicable statute of limitations for civil penalties pursuant to a violation of *Sections 5(a)*, *5(c)*, and *17(a)* of the Securities Act, *Section 10(b)* of the Exchange Act, and *Rules 10b-5* and *10b-9*.

A claim first accrues on the date the defendant [*34] allegedly violated the statute and not when the plaintiff knew or should have known of the alleged violation. *Fed. Election Comm'n v. Williams, 104 F.3d 237, 240 (9th Cir. 1996)* ("We hold that an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty. We reject the discovery of violation rule [respondent] advocates as unworkable; outside the language of the statute; inconsistent with judicial interpretations of *§ 2462*; unsupported by the discovery of injury rule adopted in non-enforcement, remedial cases; and incompatible with the functions served by a statute of limitations in penalty cases.") (quoting *3M Co. v. Browner, 305 U.S. App. D.C. 100, 17 F.3d 1453, 1462-1463 (D.C. Cir. 1994)*).

Here, Plaintiff alleges that Defendants sold securities in violation of securities laws during the period of March 2000 through April 2001. [Compl. at PP 4, 15.] Plaintiff filed its Complaint January 19, 2006. Therefore, a portion of the alleged wrongful conduct occurred within the limitations period: Defendants' alleged sale of securities during the period of January 19, 2001, through [*35] April 2001. Plaintiff has alleged facts that, if proven, would entitle it to civil penalties; this is sufficient to survive Defendants' Motion. *See Conley, 355 U.S. at 45-46*, *Cahill, 80 F.3d at 338*, *De La Cruz, 582 F.2d at 48*; *Cf. Doe v. United State Dept. of Justice, 243 U.S. App. D.C. 354, 753 F.2d 1092, 1104 (D.C. Cir. 1985)* ("[I]t need not appear that the plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted. . . . A district court should not grant a *Rule 12(b)(6)* motion to dismiss for failure to seek the technically appropriate remedy when the availability of some relief is readily apparent on the face of the complaint."), *Doss v. South Cent. Bell Tel. Co., 834 F.2d 421, 425 (5th Cir. 1987)*. For the purposes of a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, it is immaterial that *§ 2462* might limit the civil penalties Plaintiff may be entitled to.

It is premature for the Court to address the parties' arguments concerning whether the alleged wrongful [*36] conduct outside of the limitations period can be considered in assessing civil penalties. Accordingly, Plaintiff has stated facts that, if proven true, would entitle it to civil penalties.

**B. Specificity of Plaintiff's Fraud Allegations**

**1. Financial Projections**

Defendants contend that Plaintiff merely alleges that their projections were premised on faulty assumptions, which does not satisfy the specificity requirement because (1) Plaintiff does not allege which of the assumptions are unreasonable, (2) Plaintiff does not allege how the assumptions are unreasonable, and (3) an allegation of unreasonableness is not sufficient to allege actionable fraud. [*Id.* at 20-21.]

Plaintiff responds that the Complaint alleges adequately the "time, place, persons, statements, and explanations of why" the assumptions were unreasonable. [Opp'n at 15.] Plaintiff argues that in reading Defendants' Motion as a whole, it is obvious that they understood which assumptions are alleged to be unreasonable. [*Id.* at 15-16.]

Plaintiff premises its claim for a violation of *Section 17(a)* of the Securities Act, *Section 10(b)* of the Exchange Act, and *Rule 10b-5* on multiple theories, [*37] one of which is that the financial projections in the business plan

were misrepresented. Defendants' Motion argues in vain that Plaintiff's Complaint lacks specificity as to unreasonable assumptions; Plaintiff has specifically alleged how the financial disclosures were misrepresented. [Compl. at PP 19-27.] Plaintiff need not then specifically allege why the assumptions were unreasonable.

### 2. The IPO Allegations

Defendants assert that it is unclear what was false about Defendant Richie's statements concerning the IPO, and how Defendant Richie knew the statements were false. [Mot. at 21.] Defendants argue that Defendant Richie's statement was a "vague statement of optimism," or an "unfulfilled promise of a future event," which is not actionable. [*Id.* at 22.]

Plaintiff contends that it has alleged adequately the "time, place, persons, statements, and explanations [for] why" Defendant Richie's statements concerning the IPO were improper. [Opp'n at 15.]

Plaintiff's IPO allegations are sufficiently specific. Defendants' argument that Plaintiff does not allege why the statement is false is unpersuasive. The Complaint alleges that Defendant Richie made statements concerning [*38] an IPO and was told by his attorneys that he should not make such statements. [Compl. at P 35.]. Plaintiff alleges that Defendant Fortress was a start-up company, had a poor record of accomplishment, had inexperienced management, and was in a deteriorating financial condition; Defendant Richie knew or should have known that his statement that there would be an IPO for Defendant Fortress within a year, was false. 10 [*Id.* at PP 35-36.]

> 10   Defendants' other assertion, that Defendant Richie's statements are not actionable, is immaterial to whether the allegations are specific. [Mot. at 22.] This assertion should have been in the section concerning why Plaintiff did not allege actionable fraud. The Court need not address this assertion in light of the Court's ruling that Plaintiff alleged facts that would entitle it to relief on its Second, Third, and Fourth Claims on a theory that Defendants broke the escrow account early and did not disclose Defendant Fortress's current liabilities.

### 3. Timing of Misrepresentations

[*39] Defendants contend that Plaintiff fails to allege the date of the misrepresentations. [Mot. at 22.] Plaintiff responds that it alleged sufficiently the "time" of the misrepresentations. [Opp'n at 15.]

While Plaintiff has not alleged the exact date and time of the misrepresentations, it is clear that all of the misrepresentations and omissions occurred during the period of March 2000 to April 2001. [*See* Compl. at 4.] This is a sufficient allegation as to the time of the misrepresentations and omissions.

### C. Request to Strike Certain Allegations

Defendants move this Court to strike certain allegations from the Complaint. [Notice of Motion at 3-4.] In the body of their Motion, however, Defendants neither state the legal standard for a Motion to Strike nor argue why the allegations should be stricken. Apparently, Defendants request the Court to strike these allegations as an alternative remedy to their request to dismiss the Complaint.

A motion to strike does not have the same standards as a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, however. *Compare* section II.A with *Federal Rule of Civil Procedure 12(f)* [*40] *and Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993) rev'd on other grounds* in *Fogerty v. Fantasy, Inc., 510 U.S. 517, 534-535, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)*. It is insufficient to argue that a claim should be dismissed under *Federal Rule of Civil Procedure 12(b)(6)* and, without arguing the legal elements, request the Court to strike portions of the Complaint.

Accordingly, Defendants did not satisfy their burden that certain allegations in Plaintiff's Complaint should be stricken.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is denied.

Dated: *May 9, 2006*

VIRGINIA A. PHILLIPS

United States District Judge